UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR 1 9 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| **JOHN B. BERRY, TRUSTEE** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. H-05-1101** |
| | § | **JURY** |
| **WPS, INC., ET AL** | § | |
| **Defendants** | § | |

## DEFENDANTS' 12(b)(6) MOTION

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Defendants, WPS, Inc. and Seth Williamson, and file this, their 12(b)(6) Motion and in support thereof would show the following:

I.

1.     This 12(b)(6) motion is filed after the Notice of Removal and Defendant, Seth Williamson's 12(b)(2) Motion to dismiss for lack of jurisdiction[1] but before Defendants have filed any pleadings or answers in this federal court proceeding.

II.
INTRODUCTION

2.     The factual allegations asserted by Plaintiff in his original petition are as follows:

> 4.     *Facts.*[2] Attached to this petition as Exhibit "A" is a copy of the Sale and Leaseback Agreement executed by Plaintiff and Defendants.  The agreement is incorporated in this petition by reference.  Plaintiff has fully complied with the agreement.   Defendants are guilty of anticipatory breach of the contract on or about December 30, 2004 (Exhibit "B" hereto), and complete breach of the contract on January 26, 2005.

---

[1] This 12(b)(6) Motion is filed by Seth Williamson subject to and without waiving his 12(b)(2) motion and his objection to jurisdiction of Texas courts.

[2] Defendants deny these allegations, but for the purpose of this motion, Defendants will show that even based on the allegations in Plaintiff's pleadings, Plaintiff has failed to plead any claims upon which relief can be granted.

3.       Plaintiff incorrectly states the title of the document attached as Exhibit "A" to his original petition.   Paragraph 4, quoted above, states a "Sale and Leaseback Agreement" agreement was executed by Plaintiff and Defendant.   However, even a cursory examination of the document attached as Exhibit "A" to Plaintiff's Original Petition reveals that the document is actually entitled "Letter of Agreement" and contemplates other undertakings before a final agreement is entered into.   (*See* Paragraph 4 of Exhibit "A" of Plaintiff's Original Petition attached as Exhibit "A").

4.       Notwithstanding this discrepancy, it is apparent that in reviewing Plaintiff's Original Petition and the purported "Letter of Agreement"[3] attached to Plaintiff's petition, there is no set of facts under which Plaintiff can recover from either Defendant in this suit.   Therefore, Defendants are entitled to a dismissal pursuant to Rule 12(b)(6).

III.
STANDARD FOR 12(b)(6) MOTION

5.       Dismissal for failure to state a claim can be granted in two situations which are as follows:

1)       lack of a cognizable legal theory, or

2)       absence of sufficient facts alleged under a cognizable legal theory.

*Meador v. Oryx Energy Co.*, 87 F.Supp.2d 658 (E.D. Tex. 2000); *Stewart Glass & Mirror, Inc. v. U.S.A. Glass, Inc.*, 940 F.Supp. 1026 (E.D. Tex. 1996).   If the court can determine with certainty that the Plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint then dismissal pursuant to Rule 12(b)(6) is warranted.   *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct.

---

[3] By calling this document a "Letter of Agreement", Defendant is merely citing the title of the document and is using this title for purposes of brevity so as to avoid using phrases such as "the document entitled 'Letter of Agreement'." In using this name for brevity purposes, Defendant is not admitting, agreeing, conceding or stipulating that the document entitled "Letter of Agreement" is an agreement, contract, enforceable agreement, enforceable contract or any other type of legally binding document.

99, 102 (1957); *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003). Although a court evaluating a 12(b)(6) motion must assume all material facts contained in the complaint are true, conclusory allegations of law and inferences unsupported by facts in the complaint will not defeat a 12(b)(6) motion. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Moffett v. Halliburton Energy Srvs.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

6.      The complaint lacks an arguable basis in law, so as to be subject to dismissal, if it is based on an indisputably meritless legal theory such as if the complaint alleges the violation of a legal interest which does not exist. *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998).

7.      To avoid a dismissal for failure to state a claim based on the manner in which factual allegations are pleaded, a complaint must contain either direct allegations on every material fact necessary to sustain recovery or contain allegations from which inferences may fairly be drawn that evidence on these material points will be introduced at trial. *Keane v. Fox Television Stations, Inc.*, 297 F.Supp.2d 921 (S.D. Tex. 2004). Dismissal of a claim is appropriate if the complaint lacks allegations regarding elements required to obtain relief. *Id.* Conclussory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss for failure to state a claim. *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995). A court will not accept as true conclusory allegations or unwarranted deductions of fact. *Loofbourrow v. C.I.R.*, 208 F.Supp.2d 698 (S.D. Tex. 2002).

IV.
ARGUMENT & AUTHORITY

A.      Plaintiff's Alleged Breach of Contract Claim.

8.      In deciding a motion to dismiss for failure to state a claim, courts generally must limit their inquiry to the facts stated in the complaint and documents either attached to or incorporated into the complaint. *Meador v. Oryx Energy Co.*, 87 F.Supp.2d 658 (E.D. Tex. 2000). All exhibits attached to the complaint are part of the pleadings, and thus, the court may

also consider exhibits attached to the complaint in determining whether a claim upon which relief can be granted has been stated. *Sheppard v. Texas Dept. of Transp.*, 158 F.R.D. 592 (E.D. Tex. 1994). Furthermore, if it is apparent that plaintiff's claims are premised on a particular document not attached to a plaintiff's pleadings, a court may consider that document in ruling on a motion to dismiss for failing to state a claim upon which relief can be granted. *Steinhardt Group, Inc. v. Citicorp*, 126 F.3d 144 (3rd Cir. 1997). The Fifth Circuit Court of Appeals has dismissed cases for failing to state a claim upon which relief can be granted based upon the pleadings and alleged contractual documents that are attached to the pleadings. *See e.g., Case v. State Farm Mutual Automobile Insurance Company*, 294 F.2d 676 (5th Cir. 1961).

9.      In the instant case, Plaintiff has attached a document entitled "Letter of Agreement" to his original petition. Plaintiff's pleadings indicate that this document serves as the basis of Plaintiff's alleged breach of contract claim. (See Paragraph 4 of Plaintiff's Original Petition). Defendant denies that the document entitled "Letter of Agreement" rises to the level of an enforceable contract or agreement, but at most, may or may not be a proposal to possibly enter into a contract at a later date. Such a proposal is not enforceable under the law.

10.     A review of the document entitled "Letter of Agreement" (Attached to Plaintiff's Original Petition which is attached hereto as Exhibit A) demonstrates that no final or enforceable contractual agreement had been entered. This is evidenced by a number of passages in the "Letter of Agreement" including but not limited to the following:

- Paragraph 4 states that the Plaintiff will deliver to seller a Purchase and Sale Agreement and a Leaseback Agreement which is to memorialize the terms of the transaction. The fact that such an agreement was necessary proves that the "Letter of Agreement" was never intended to be a complete reflection of the agreement (if any) between the parties;

- In Paragraph 16 of the "Letter of Agreement", the Plaintiff acknowledged that Defendant, WPS, Inc. has the right to negotiate with others during the term of the "Letter of Agreement" to solicit, offer, or hold discussions "regarding the sale of Seller's Equipment Property" by providing that Plaintiff was paying $1,000 to buy an exclusivity right under which Defendant, WPS, Inc., would agree not to do

these things.  Obviously, such a provision would not be necessary if the "Letter of Agreement" was intended to be binding on both parties to lease-purchase the same equipment solely on the terms of the "Letter of Agreement";

- The document entitled "Letter of Agreement" and the subsequently issued documents entitled "Purchase and Sale Agreement" and "Leaseback Agreement" contained different terms.  The purported "Purchase and Sale Agreement" is attached as Exhibit "B".  The purported "Leaseback Agreement" is attached as Exhibit C."  Neither the purported "Purchase and Sale Agreement" nor the purported "Leaseback Agreement" was signed by any Defendant.

- Terms were not in the "Letter of Agreement" including but not limited to the following:

  (a)   a provision regarding insurance requirements during the proposed lease and on renewals or relets;
  (b)   provisions to address maintenance;
  (c)   the source of funding for the replacement of component parts;
  (d)   the provisions regarding accounting for the transaction.

11.     In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations.[4]  *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).  "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain."  *Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831 (Tex. 2000).

12.     Based on this reasoning, an agreement to make a future contract is enforceable only if it is "specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations."  *Foster v. Wagner*, 343 S.W.2d 914, 920-21 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.).  It is well settled law that when an agreement leaves material matters open for future adjustment and agreements that never occur, it is not binding upon the parties and merely constitutes an agreement to agree.   *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 244 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.) (*citing O'Neil v. Powell*, 470 S.W.2d

---

[4]  There has been no ruling as to whether Texas or Louisiana law will govern this suit.  However, for the purposes of this motion, Defendant will show that the Plaintiff cannot recover under Texas law or Louisiana law.

775, 779 (Tex.Civ.App.-Fort Worth 1971, writ ref'd n.r.e.); *Gasperson v. Madill Nat'l Bank*, 455 S.W.2d 381, 387 (Tex.Civ.App.-Fort Wroth 1970, writ ref'd n.r.e.)).  *See also Central Texas Micrographics v. Leal*, 908 S.W.2d 292, 297 (Tex.App.-San Antonio 1995, no writ) ("[T]he general rule is that no enforceable contract exists 'where the agreement of the parties leaves an essential term for later determination *and it is never determined.* "') (quoting *Mooney v. Ingram*, 547 S.W.2d 314, 317 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.) (*emphasis added*)).

13.     The reasoning for this rule is explained in the case of *Weitzman v. Steinberg*, 638 S.W.2d 171 (Tex. App. – Dallas 1982).  There, the appellate court, in refusing to enforce a purported contract found nothing more than "an agreement to agree" and stated as follows:

> Courts cannot make contracts for the parties and an agreement to enter into negotiation in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced.  Thus, the trial court has no authority to ask a jury to supply essential terms in the contract which the parties were unable to complete by mutual agreement.

14.     In *Betty Lee Shoes, Inc. v. Karl's Shoe Stores, Ltd.*, 293 F.2d 429 (5th Cir. 1961), the Fifth Circuit Court of Appeals held that a purchase and sale agreement stating that the parties would enter into a contract for employment of seller for five years at a salary of $1,000.00 per month under terms satisfactory to both parties was not a binding agreement to make an employment contract.  The Court stated that for such an agreement to be binding, it would have been necessary for the agreement to contain all essential terms that would have been incorporated into the document.  *Id.*  The Court noted that if the document or contract that the parties agreed to make is to contain any material term that is not already agreed on, no contract has yet been made, and the so called "contract to make a contract" is no contract at all.  *Id.* *Citing* 17 C.J.S. CONTRACTS § 49.  Instead, to be enforceable, a contract to enter into a future contract must specify all of its material and essential terms, and leave none to be agreed upon as the result of future negotiations.  *Id.*

15.    In analyzing the contract between the plaintiff and the defendant in the *Betty Lee Shoes* case, the Fifth Circuit Court of Appeals concluded the writing did not satisfy the requirement of containing all material and essential terms, citing the following deficiencies:

- it was noted that the employment contract was to be entered into only if the parties should consummate the agreement of purchase and sale bearing the same date;
- the writing did not describe the duties which the seller was to perform for a period of five years at a salary of $1,000.00 per month;
- the writing did not state whether the employment was to be full time or only part time;
- the character of duties the seller was to perform was not contained in the purported agreement;
- the place of performance was not set forth in the purported agreement;
- it was not stated whether the seller's expenses were to be paid if he was absent from his home;
- the purported agreement did not contain any other details of the work the seller was to do for the $60,000.00 mentioned in part of the contract;
- the purported agreement stated that the contract of employment was to have been drawn to be "satisfactory to both parties".

16.    Based on this, the Fifth Circuit Court of Appeals concluded that "many of the most important portions of the proposed contract had not yet been defined or agreed to". *Id.* at 433.  In reaching this conclusion, the Fifth Circuit Court of Appeals said that there was no fact issue as to whether the essential terms were embraced in the employment contract. *Id.* at 436. Instead, in deciding that issue, the Court merely looked to the wording of the two writings upon which the parties relied.  An examination of the writings upon which the action was predicated demonstrated that as a matter of law, they did not express an enforceable contract because they showed on their face that an agreement had not been reached by the parties on essential elements, or in any event, that the writings did not include those terms.

17.    Louisiana courts[5] similarly hold that a valid contract is only established after all essential terms are agreed upon by the parties. *Chemical Cleaning, Inc. v. Brindell-Bruno, Inc.,* 214 So.2d 215 (La. App. 4th Cir. 1968), attached as Exhibit "D"; *See also, Reimann Const. Co.*

---

[5] There has been no ruling as to whether Texas or Louisiana law will govern this suit.  However, for the purposes of this motion, Defendant will show that the Plaintiff cannot recover under Texas law or Louisiana law.

*v. Heinz*, 137 So. 355 (La. App. 1st Cir. 1931), attached as Exhibit "E". Additionally, where parties have agreed to most of the essential conditions and one party prepares a written document containing most of the terms agreed on, but also containing others, no contract exists until the later written document is executed. *McIntire v. Industrial Securities Corp.,* 158 So. 849 (La. App. 1935), attached as Exhibit "F". Further, under Louisiana law, where the understanding of the parties is that their contract of shall be reduced to writing, the reduction to writing is a condition precedent to the perfection of the contract, and either party is at liberty to retire from the contract so long as the reduction to writing has not taken place. *Kaplan v. Whitworth, 116 LA. 337,* 40 So. 723 (La. 1905), attached as Exhibit "G".

18.   In the instant case, it is apparent that the "Letter of Agreement" is not an enforceable contract. This is evidenced by the fact that final documentation was required that was to have superceded the "Letter of Agreement". (Paragraph 4 of "Letter of Agreement" attached to Plaintiff's Original Petition; said petition is attached hereto as Exhibit A). It is also evidenced by the fact that Plaintiff, for all practical purposes, admitted in the "Letter of Agreement" that Defendant, WPS, Inc. had the right to negotiate with others during the term of the "Letter of Agreement" to solicit, offer, or hold discussions "regarding the sale of Seller's Equipment Property" by providing that Plaintiff was paying $1,000 to buy an exclusivity right under which Defendant, WPS, Inc., would agree not to negotiate with other parties. (Paragraph 16 of "Letter of Agreement, attached to Plaintiff's Original Petition; said petition is attached to this Motion as Exhibit A). Obviously, such a provision would not be necessary if the "Letter of Agreement" was intended to be binding on both parties to lease-purchase the same equipment solely on the terms of the "Letter of Agreement". Furthermore, in examining the document entitled "Purchase and Sale Agreement" attached as Exhibit "B" it was apparent that it was necessary to add several additional terms and that several material terms were missing from the "Letter of Agreement". That these terms are not contained in the purported "Letter of

Agreement", is further proof that the purported "Letter of Agreement" is merely an agreement to possibly enter into a contract in the future and does not constitute an enforceable contract. These additional terms were not in the "Letter of Agreement", were never agreed to, and as such negate the idea that there was any mutual assent or agreement. Plaintiff by seeking enforcement of this purported "Letter of Agreement" has failed to state a claim upon which relief can be granted and therefore, this case must be dismissed.

B.   Plaintiff's Alleged "Attempted Fraud Claim".

19.   In Paragraph 8 of Plaintiff's Original Petition, Plaintiff has alleged "Defendants have attempted to defraud Plaintiff and Plaintiff seeks his damages and exemplary damages". There is no cause of action for "attempted fraud" either under Texas law or Louisiana law. In making this allegation, Plaintiff has failed to state a claim upon which relief is granted. Defendant is therefore entitled to the dismissal of this claim. In the alternative, Plaintiff has failed to plead facts necessary to support his claim to relief and dismissal is proper. *Keane v. Fox Television Stations, Inc.*, 297 F.Supp.2d 921 (S.D. Tex. 2004).

C.   Plaintiff's Alleged Claims Against Seth Williamson.

20.   As evidenced by the "Letter of Agreement" attached to Plaintiff's petition, and attached hereto as Exhibit "A", the document was signed by Seth Williamson as President of WPS, Inc. Therefore, he cannot be sued in his individual capacity. *Pace v. Garcia*, 631 F.Supp. 1417 (W.D. Tex. 1986). See also affidavit of Seth Williamson attached as Exhibit "H".

V.
CONCLUSION

21.   Plaintiff has failed to state a claim upon which relief can be granted in this lawsuit. Plaintiff is seeking enforcement of a purported letter agreement which is not a contract under the law. Furthermore, Plaintiff is seeking damages for "attempted fraud" which is not

recognized as a viable cause of action.  Also, Plaintiff has failed to plead an actionable case against Defendant, Williamson.

WHEREFORE, PREMISES CONSIDERED, Defendant, WPS, Inc., prays that its 12(b)(6) motion for Plaintiff's failure to state a claim upon which relief can be granted is granted.  Defendant, Seth Williamson prays that if Plaintiff's claims are not dismissed for want of jurisdiction over Defendant, Williamson, or his property, then that this 12 (b) (6) motion is granted dismissing Plaintiff's claims against Defendant, Seth Williamson.  Defendants also pray for such other further relief, general and special, at law and at equity to which they may show themselves justly entitled.

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
Post Office Box 4915
Beaumont, Texas 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Telecopier

**James R. Old, Jr.**
**Attorney In Charge**
State Bar No. 15242500
Southern Dist. No. 10751
**James W. Henges**
State Bar No. 00790860

**ATTORNEYS FOR DEFENDANT, WPS, INC. AND SETH WILLIAMSON**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the *19th* day of April, 2005.

Mr. Thomas G. Bousquet                    **VIA CERTIFIED MAIL, RRR**
BOUSQUET & JACKSON, P.C.
5718 Westheimer #700
Houston, Texas  77057

**James R. Old, Jr.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), a movant is not required to confer with opposing counsel regarding motions filed under Rule 12(b) of the Federal Rules of Civil Procedure.

**James R. Old, Jr.**

# APPENDIX

# APPENDIX

## DEFENDANTS' 12(b)(6) MOTION

Exhibit "A"   (Plaintiff's Original Petition with exhibits and "Letter of Agreement") ............ A

Exhibit "B"   (Purported Purchase and Sale Agreement) ............................................... B

Exhibit "C"   (Purported Leaseback Agreement) ....................................................... C

Exhibit "D"   (*Chemical Cleaning, Inc. v. Brindell-Bruno, Inc.*, 214 So.2d 215 (La. App. 4th Cir. 1968)).................................................................................. D

Exhibit "E"   (*Reimann Const. Co. v. Heinz*, 137 So. 355 (La. App. 1st Cir. 1931)) ............ E

Exhibit "F"   (*McIntire v. Industrial Securities Corp.*, 158 So. 849 (La. App. 1935)) ........... F

Exhibit "G"   (*Kaplan v. Whitworth, 116 LA. 337*, 40 So. 723 (La. 1905)) ....................... G

Exhibit "H"   (Affidavit of Seth Williamson) ......................................................... H

# EXHIBIT A

2005-08446

NO. _____

| | |
|---|---|
| JOHN B. BERRY, TRUSTEE<br>Plaintiff, | IN THE DISTRICT COURT |
| | OF HARRIS COUNTY, TEXAS |
| V. | |
| WPS, INC., ET AL<br>Defendants. | 152 JUDICIAL DISTRICT |

## ORIGINAL PETITION FOR SUIT ON WRITTEN CONTRACT

1.    *Discovery Level.*    Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure.

2.    *Parties.*

        A.    Plaintiff, JOHN B. BERRY, TRUSTEE, is an Individual whose residence is in Harris County, Texas.

        b.    Defendant, WPS, INC., a Corporation based in Louisiana, is organized under the laws of the State of Louisiana, , and service of process may be effected upon said Defendant by serving Seth Williamson, President of the corporation at 1110 Unifab Road, Suite A, New Iberia, Louisiana.  Service of said Defendant as described above can be effected by personal delivery.

        c.    Defendant, SETH WILLIAMSON, may be served  by serving him at corporation at 1110 Unifab Road, Suite A, New Iberia, Louisiana.  Service of said Defendant as described above can be effected by personal delivery.

3.    This court has jurisdiction over the parties because Defendants contracted with Plaintiff in Texas and agreed to suit in Harris County, Texas.

4.    *Facts.* Attached to this petition as Exhibit "A" is a copy of the Sale and Leaseback Agreement executed by Plaintiff and Defendants.  The agreement is incorporated in this petition by reference.  Plaintiff has fully complied with the agreement. Defendants are guilty of anticipatory breach of the contract on or about December 30, 2004 (Exhibit "B" hereto), and complete breach of the contract on January 26, 2005.

5.    Venue in Harris County is proper in this cause under Section 15.035(a) of the Texas

Civil Practice and Remedies Code because this lawsuit involves a written contract that expressly names said county for performance.

6.     *Default.*         Defendants defaulted in the performance of the Agreement. Plaintiff seeks specific performance of the contract and/or his damages and attorney's fees..

7.     *Conditions Precedent.*         All conditions precedent have been performed or have occurred.

8.     *Fraud.*         Defendants have attempted to defraud Plaintiff and Plaintiff seeks his damages and exemplary damages.

9.     *Attorney's Fees.*         Defendants' default has made it necessary for Plaintiff to employ the undersigned attorney to file suit. This claim was timely presented to Defendants and remains unpaid. Reasonable fees for the attorney's services rendered and to be rendered are at least $100,000.00.

10.     This is an attempt to collect a debt. Any information obtained will be used for that purpose.

11.     *Prayer.*         Plaintiff prays that-

    a.     Defendants be cited to appear and answer;

    b.     Plaintiff be granted judgment for specific performance of the contract;

    c.     Plaintiff be granted judgment for his damages and exemplary damages;

    d.     Plaintiff be granted judgment for prejudgment and postjudgment interest on the matured, unpaid debt at the highest legal or contractual rate allowed by law;

    e.     Plaintiff be granted judgment for at least $100,000.00 as reasonable attorney's fees, with additional contingent amounts in the event of appellate proceedings;

    f.     Plaintiff be granted judgment for all costs of court; and

g.     Plaintiff be granted all further relief to which Plaintiff may be entitled.

Respectfully submitted,

BOUSQUET & JACKSON P.C.

By: _____

THOMAS G. BOUSQUET
Texas Bar No. 02717000
5718 Westheimer  #700
Houston, Texas  77057
Tel. (832)251-3501
Fax. (832)242-5607
ATTORNEY FOR PLAINTIFF
JOHN B. BERRY, TRUSTEE


PLAINTIFF DEMANDS A TRIAL BY JURY

Letter of Agreement

December 20, 2004

Mr. Seth Williamson, President                          **ORIGINAL #1**
Williamson Production Services, Inc.
1110 Unifab Road, Suite A
New Iberia, LA 70560

Re:   Sale/Leaseback of Lease Fleet of Williamson Production Services, Inc.
      ("WPS" and "Seller") to various clients as Lessee's for Compressor
      Equipment property and all appurtenances thereto; as more fully described
      in **EXHIBIT "A"** containing six (6) pages attached hereto and incorporated
      herein by reference (the "Equipment Property").

Dear Mr. Williamson:

I, as Trustee-Purchaser, have received certain information regarding WPS and the above
described Equipment Property from Seller and Seller's Consultant, George H. Reid
Investments, Inc. ("Consultant"). Based on the information submitted, I, in my capacity as
Trustee-Purchaser, herewith submit this Letter of Agreement offer to purchase and sale for
said Equipment Property and the Leaseback of this Equipment Property by Seller subject to
the following terms and conditions:

1.   **Purchase Price.**  Purchaser shall pay Seller the sum of <u>Ten million five hundred
     eighty thousand DOLLARS</u> (**$10,580,000.00**) for the Equipment Property.

2.   **Payment Terms.**  All cash at closing.  All payments described herein shall be in US
     Dollars only.

3.   **Closing.**  Closing of this transaction shall be on or before forty five (45) Business
     Days after execution and delivery to Seller (at Seller's address herein) by
     Purchaser, the Formal Documentation Purchase, Sale, and Leaseback Agreement
     as called for in Paragraph 4 hereof, to the office of Partners Title Company, 712
     Main Street, Houston, Texas, Attn: Jim Suttles.

4.   **Formal Documentation.**  Within fifteen (15) Business Days after the execution of
     the Letter of Agreement by both Purchaser and Seller as the Parties hereto,
     Purchaser shall deliver to Seller a Purchase and Sale Agreement and Leaseback
     Agreement and other documentation (Formal Documentation) executed by
     Purchaser and such other documents as may be necessary in the sole discretion of
     Purchaser which Seller agrees to execute and return without delay.  The Purchase
     and Sale Agreement, Leaseback Agreement, and other documents shall supersede
     and take precedence to this Letter of Agreement; and in the event any of the terms
     and conditions of this transaction shall vary between this Letter of Agreement and
     the Purchase and Sale Agreement, the terms and conditions of the Purchase and
     Sale Agreement and Leaseback Agreement and other documents shall prevail.

*-continued-*

EXHIBIT "A"

5. **Purchaser Reviews.** This offer is subject to Purchaser's review and verification to Purchaser's sole satisfaction of any and all property, data, and facts, including and without limitation of all Equipment Property for this transaction as described on the attached **EXHIBIT "A"** and (a) complete, current, and historic financial statements; (b) current equipment rental agreements, including any amendments or modifications, and complete historic accounting of each such agreement; (c) completion of due diligence, inspection, and appraisal of Equipment Property; (d) all past and current environmental inspections, permits, reports, and surveys thereof; (e) any and all past and existing UCC filings relating thereto; (f) all Equipment Property designs, plans and specifications pertaining to the Equipment Property; and, (g) Seller shall also provide Purchaser an Estoppel Certificate and Landlord Waiver for each Equipment Property asset being conveyed by Seller to Purchaser dated as of the closing;  (h) Seller shall warrant and covenant to Purchaser hereof the exclusive rights of parties in possession ownership of the Equipment Property to be sold, conveyed, and transferred to Purchaser hereof by General Warranty Deed of Fee Simple Title to the sole satisfaction of Purchaser.

6. **Legal Description of Equipment Property.**   See **EXHIBIT "A"** (six pages) attached hereto and incorporated herein by reference.  It is acknowledged by the Parties hereto that such documents were provided to Purchaser by WPS and through Consultant and may be subject to legal modifications as necessary in the sole discretion and to the satisfaction of Purchaser and Purchaser's legal advisors as the case may be.

7. **Earnest Money.** Fifty thousand DOLLARS ($50,000.00) as a Bank Letter of Credit or cash as Purchaser may desire shall be deposited by Purchaser with Partners Title Company, 712 Main Street, Houston, Texas 77002, along with the fully executed copy of the Formal Documentation as previously described in Paragraph 4 herein above.  The Earnest Money deposited shall be fully credited to the purchase price, at the closing of this transaction, at the sole option of Purchaser hereof.

8. **Seller/Lessee Duties.**  Prior to the preparation of the Formal Documentation as more fully described in Paragraph 4 herein above, WPS agrees to provide complete, current, and historic financial documents and records concerning WPS's complete business operations along with copies of all documents and records specifically relating to the Equipment Property.  Seller agrees that during the term of the Leaseback, all customer payments due relating to the rental of the Equipment Property now owned by Purchaser will be directed by WPS directly to Purchaser's designated bank lockbox or other such address as designated by Purchaser from time-to-time.

9. **Primary Leaseback Terms.** Equipment Property shall be conveyed by Seller to Purchaser and Seller agrees to immediately Leaseback said Equipment Property from Purchaser at closing.  All customer rental payments regarding Equipment Property previously due Seller shall be made without demand directly to Purchaser's designated bank lockbox account.  Purchaser/Lessor will promptly report all income and disbursements to Seller/Lessee.  All payments received by Purchaser/Lessor shall first be applied to any amount due Purchaser/Lessor. Seller/Lessee will make consecutive monthly payments to Purchaser/Lessor and

such payments shall be equal to the sum total of all customer rental payments due for Equipment Property and designated by Seller/Lessee as Monthly Rental Revenue on EXHIBIT "A" attached hereto. If received by Purchaser, all payments designated as Monthly Maintenance Revenues in the various customer rental contracts will be promptly disbursed to Seller/Lessee in payment of maintenance and other services for equipment as contractually agreed for the Equipment Property. The first and last month's lease payments will be due at closing.

10. **Initial Term.** The Initial Term of the leaseback shall be eighty four (84) months. Seller/Lessee agrees to remit eighty four (84) consecutive monthly lease rental payments to Purchaser/Lessor such monthly payments due Purchaser/Lessor shall at no time be less than One hundred twenty five thousand DOLLARS ($125,000).

11. **Purchase Upon Termination.** At the end of the Initial Term, WPS shall have the obligation to re-purchase the Equipment Property from Purchaser for Seven million nine hundred twenty five thousand DOLLARS ($7,925,000) due in cash on the first day of the eighty fifth (85th) month from the date of closing hereof as between Purchaser and WPS.

12. **Definitions.** The term Business Days as used herein is agreed to mean 8:00 AM to 5:00 PM, Central Standard Time, Monday through Friday, not including United States Federal or Texas State holidays.

13. **Severability.** In the event that any of the terms, conditions or covenants of this Letter of Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions thereof, shall not be affected thereby and effect shall give rise to the intent manifested by the provisions, or portions thereof, held to be enforceable and valid.

14. **Non-Disclosure.** Except as may be required by applicable law, neither Purchaser or Seller(s) shall make any public announcement or otherwise disclose to any third party the existence, contents and nature of this Letter of Agreement without the prior written consent of both parties. This provision shall not apply to any related consultant, attorney, advisor, closing agent, and/or employee of either Purchaser or Seller(s) acting in connection with this Letter of Agreement.

15. **Applicable Law.** This Letter of Agreement and the Purchase and Sale Agreement shall be construed in accordance with and governed by the laws of the United States of America. If any party brings legal action to enforce any right or obligation under either, jurisdiction shall lie exclusively in Houston, Harris County, Texas.

16. **Option Fee.** Purchaser agrees to pay Seller an Option Fee of One Thousand DOLLARS ($1,000.00) within three business days of receipt of Seller's acceptance of this Letter of Agreement in consideration of such acceptance. The sufficiency of the consideration is acknowledged by the Parties. Execution of this Letter of Agreement and acceptance of the Option Fee by Seller shall grant Purchaser an exclusivity right (the "Exclusivity") under which Seller agrees not to solicit, offer,

or hold discussions with any third party regarding the sale of the Seller's Equipment Property herein described.

17. <u>Interest in Future Transactions.</u>  For a period equal to the Initial Term, WPS grants Purchaser the first and exclusive right to consider any and all future WPS Equipment Property Sale/Leaseback transactions and WPS and Purchaser hereof further agree any of these future transactions will occur under substantially the same terms and conditions as contained herein at Purchaser's option.  During this term, WPS further grants Purchaser the first right of review to any other leasing or financing transaction involving WPS equipment.

18. <u>Consultants and Brokers.</u>  Seller warrants that it has had no dealings with any broker or agent in connection with the negotiation or execution of this Letter of Agreement except Consultant.  Seller has agreed to pay Consultant pursuant to an existing Consulting Services Agreement dated as of July 13, 2004 and executed by Seller on July 14, 2004 and by Consultant on July 16, 2004.  It is hereby acknowledged by both Seller and Purchaser hereof that, George H. Reid and/or George H. Reid Investments, Inc. may or may not also act in the capacity as Principal in the transaction described herein.  The Pasties to the existing Consulting Services Agreement as between George H. Reid Investments, Inc. and WPS, Inc. hereby agree that the Consulting Services Agreement may be disclosed and delivered to Partners Title Company ATTN: Jim Suttles for the purpose of the payment of the compensation in cash, in full at closing.

19. <u>Authority.</u>  The undersigned each represent, warrant, and covenant the possession of the power and authority to execute this Letter of Agreement.

20. <u>Acceptance.</u>  This offer of Purchase shall be deemed to be refused and withdrawn if Purchaser hereto has not received written acceptance to the terms and conditions hereof by 5:00 PM on December 29, 2004.

This Letter of Agreement shall be binding upon the Parties hereto, their heirs, successors, legatees, nominees and/or assigns.

Respectfully Submitted,

CONSULTANT:
GEORGE H. REID INVESTMENTS, INC.

John B. Berry, Trustee-Purchaser

By:  George H. Reid, President   Date: 12-22-04

Address:   4265 San Felipe, Suite 1100
Houston, Texas 77027

Address:   PO Box 56443
Houston, Texas 77256

SELLER :  (Authorized Signatory(s) Only):

AGREED and ACCEPTED this __28__ day of December, 2004.

WILLIAMSON PRODUCTION SERVICES, INC. (WPS, Inc.)

By: _____ / Date: _12/28/04_
    Seth Williamson, President

Printed Name:  Seth Williamson

Title:   President


By: _____ / Date: _12/28/04_

Printed Name:  Scott Thomas

Title:  Secretary


Address:    1110 Unifab Road, Suite A
          New Iberia, LA 70560

                                             Corporate Seal

# WPS
## Unit Listing

| Unit # | Customer | Lease Name | Customer's Ship Date | Engine | Frame | STAGE 1 CYL. BORE | STAGE 2 CYL. BORE | STAGE 3 CYL. BORE | ENGINE RPM | Cooler | Coupling | BHP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1001 | W & T | High Island 389 | Shipped | 3516 TALE | 5C-VIP-4 | 9 1/4 | 5 1/2 | | 1400 | L144 | FSH-60-26 | 1340 |
| 1002 | Century | SS-154E | Shipped 10-10-02 | L 7042 GSI | 5C-VIP-4 | 12 1/2 | 8 1/4 | | 1200 | L144 | FSH-60-28 | 1340 |
| 1003 | AEDC | Vermillion 86A | Shipped 9-t-93 | 3508 TALE | 5CVIP-2 | 6 1/2 | 5 1/2 | 5 | 1400 | L108 | FSH-70-26 | 1478 |
| 1004 | Master Resources | Aggie Junction #2 | Shipped 6-1-03 | 3516 TALE AFR | Ram54 | (2) 14 | 9 1/2 | | 1400 | L108 | | 630 |
| '05 | UC/ Unocal | Fresh Water Bayou | Shipped 6-1-03 | 3512 TALE | Ram54 | (2) 11 | 9 1/2 | 6 1/2 | 1400 | L144 | FSH-60-26 | 1340 |
| 1008 | Chapman/Houston Exploration | SMI-253A | Shipped 4-1-03 | F 3521 GSI | Ram52 | 7 | 6 1/2 | 5 1/2 | 1400 | L132 | FSH-60-26 | 945 |
| 1009 | Master Resources | Aggie Junction #1 | Shipped 7-9-03 | F 3521 GSI | Ram52 | (2) 9.5 | 6 1/2 | | 1200 | L96S | FSH 60-28 | 738 |
| 1010 | Hilcorp | North Maurice Field | 1 Dec 2003 | 3306 TA | Ram54 | 5 1/2 | 3 1/2 | | 1800 | J84 | FSH 60-28 | 738 |
| 1013 | Good Rich Resources | Second Bayou - WPS purchased this Pkg. from CSI | Shipped 8-18-03 | G3508 | JGE/2 | 13 1/2 | 9 3/4 | 5 1/2 | 1400 | J7E | | 145 |
| 1015 | Arena Offshore | Brazos 52-C Platform. Offshore LA | Shipped 10-28-03 | 3508 TALE | JGE/2 | 8 3/8 | 5 1/8 | | 1400 | L108 | | 630 |
| 1012 | Bass Enterprises | The George Ranch | Shipped 11-1-03 | 3520B | WH64 | 7 1/2 | 6 3/4 | | 1350 | 156EF | FSH 75-26 | 1675 |
| 1007 | EnerVest | Garden Island Bay | 30-Jan-2004 | 3520 TALE | Ram54 | (2) 14 | 9 1/2 | 6 1/2 | 1350 | L156EF | FSH-70-26 | 1674 |
| 1016 | ATP Oil & Gas Corp | Brazos 544 A Freeport, TX | original ship date 1-9-04 actual ship date will be 2-6-04 | 3508 TALE | RAM52 | 7 | 6 | | 1400 | 108EF | | 630 |
| 1017 | EnerVest | Bay De Chene | original ship date 1-9-04 actual ship date will be 2-13-04 | 3516 TALE AFR | JGT/4 | (2) 14 1/8 | 12 | 6 3/4 | 1400 | L156EF | FSH-60-26 | 1340 |
| 1005 | Spinnaker | HI 197A | original ship date 1-9 /04 actual ship date will be 2-20-04 | RAM 54 | RAM 54 | (2) 6.5 | (2) 5.5 | | 1400 | L144EF | FSH 50-26 | 1340 |
| 1006 | Stock | Planned, NO EQUIPMENT | | | | | | | | | | 0 |

WPS
Unit Listing

EXHIBIT "A"
Page 2 of 6

| Unit # | Customer | Lease Name | Customer's Ship Date | Engine | Frame | STAGE 1 CYL BORE | STAGE 2 CYL BORE | STAGE 3 CYL BORE | ENGINE RPM | Cooler | Coupling | BHP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| J17 | Stock | Complete Ready to Ship | | F 3521 C91 in Inventory | Ram14 | (2) 8 3/4 | (2) 4 5/8 | 7/8 | 1200 | L12H | FSH 50-28 | 735 |
| J18 | Stock | Planned, NO ENGINE | No Engine | No Engine | JGT4 | (2) 6 7/8 | 12 1/2 | 7/8 | 1400 | L156EF | FSH-75-26 | 1340 |
| J19 | Oakhill (OGS) | Thompson | 1-Jun-2004 | 3508 TALE | JGE/2 | 12 1/2 | 9 5/8 | | 1400 | 108 | | 630 |
| 1020 | Oakhill (OGS) | Garrett | 1-Jun-2004 | 3408TA | JGJ/4 | (2) 8 3/8 | (2) 4 5/8 | | 1800 | | | 425 |
| 1021 | Oakhill (OGS) | Lake Cherokee | 1-Jun-2004 | 3408TA | JGJ/4 | (2) 8 3/8 | (2) 5 1/2 | | 1800 | | | 425 |
| 1022 | Oakhill (OGS) | Freeman A-1 | 1-Jun-2004 | 3408TA | JGJ/2 | 11 | 8 3/8 | | 1800 | | | 425 |
| 1023 | Oakhill (OGS) | Williamson | 6/1/2004 - WPS will buy this package from ????? | 3306 | JGA/2 | 7 1/2 | 5 1/2 | | 1800 | | | |
| 1024 | Oakhill (OGS) | Delta | 1-Jun-2004 | 3408TA | JGJ/2 | 11 | 8 3/8 | | 1800 | | | 425 |

8/17/2004



# FAX COVER SHEET

1110 Unifab Road, Suite A
New Iberia, LA 70560
Phone: (337) 560 – 7700
☐ Fax:   (337) 560 – 7840   Main Office
☐ Fax:   (337) 560 – 7841   Accounting

| To: | Brian Engle | From: | George Reid |
|---|---|---|---|
| Company: | WPS | | GHRINV. |
| Fax: | 713 439 7979 | Pages (incl. cover): | 7 |
| Phone: | | Date: | 11-11-04 |
| Re: | | CC: | |

☐ Urgent    X For Review    ☐ Please Comment    ☐ Please Reply    ☐ For Your Information

● Comments:   Per our conversation

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is confidential. It may also contain information that is privileged or
otherwise legally exempt from disclosure. If you have received it by mistake please
let us know by e-mail immediately and delete it from your system; should also not copy
the message nor disclose its contents to any one. No part of this message or
attachments may be used or reproduced in any manner whatsoever.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Este mensaje es confidencial. Puede contener informacion privada. Si usted lo ha
recibido por error, por favor comuniquenoslo inmediatamente via e-mail y tenga la
amabilidad de eliminarlo de su sistema; no copiarlo ni divulgar su contenido a persona
alguna. Ninguna parte de este mensaje ni de sus adjuntos pueden ser usados o
reproducidos de ninguna forma en absoluto.

EXHIBIT "A"

Page 3 of 6

Four (4) Pages of this FAX

relating to WPS & SG Interests

have been OMITTED.



November 11, 2004


GHRINV
Mr. George Reid .
P. O. Box 56443
Houston, TX 77256

Re:     WPS, Inc. Rental Fleet

George:

I am including in a separate document specific nomenclature regarding the Company's rental fleet, customer names, contract signing date, application, and etc. for your review.

As we discussed last week, Hanover Compression (HC) and Universal Compression Inc. (UCO) utilize a ten (10) year amortization schedule, and a 25 – 30 year depreciation model, respectively. The 30 year depreciation schedule used by Universal Compression was recently changed from 25 years, which was disclosed in a financial update that occurred within the last twenty-four months. Universal claims that the change more accurately represents the useful life of the product. Based on nominal technological changes in the natural gas engine industry this claim appears to be very accurate. Furthermore, you might recall that prior to my departure from Universal Compression I held the position of director of sales and engineering for Latin America. As director of sales I was responsible for asset management, DCF modeling for new cap-ex, with annual sales of approximately USD$100. MM, and management of rental fleet asset valued in excess of USD$250. MM.

Let me know if I can be of further assistance.


Regards,


Brian R. Engle
Executive Vice-President

Williamson Production Services, Inc. ◆ 1110 Unifab Road, Suite A ◆ New Iberia, LA 70560
Main Office: (337) 560-7700 ◆ Main Fax: (337) 560-7840

EXHIBIT "A"

Page 6 of 6

| Unit Contract # | Customer Name | Original Term in Months | Date Contract Signing | Ship Date | Start Date | Finish Date | Months Remaining | Monthly Rental Revenue | Monthly Maint. Revenue | Total Monthly Revenue | Engine Model | Compressor Model | Rated Hp Rating | Service Application |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1001**1001 | W & T Offshore | 24 | 8/21/2002 | 8/31/2002 | 8/31/2002 | 7/31/2004 | 0 | $13,650.00 | $1,000.00 | $14,650.00 | G3516TALE | Ere 5C-VIP~ 7042 GSI | 1265 | Offshore |
| 1002**1002 | Idle | | | | | | | | | | | 3ie 5C-VIP~ | 1478 | |
| 1003**1003 | AEDC | 24 | 8/12/2003 | 8/15/2003 | 8/28/2003 | 7/28/2005 | 10 | $8,450.00 | $800.00 | $9,250.00 | G3606TALE | 5C-VIP- | 630 | Offshore |
| 1004** | Masters Resources C | 12 | 9/16/2003 | 9/17/2003 | 9/19/2003 | 8/19/2004 | 0 | $13,500.00 | $1,500.00 | $15,000.00 | G3516TALE | RAM 54 | 1265 | Inland Water |
| 1005** | UNOCAL (see note) | 24 | 3/27/2003 | 5/19/2003 | 5/26/2003 | 4/26/2005 | 5 | $13,500.00 | $0.00 | $13,500.00 | G3512TALE | RAM 54 | 945 | Inland Water |
| **1012 | Spinnaker | 12 | 11/18/2003 | 2/3/2004 | 3/10/2004 | 2/3/2005 | 4 | $15,400.00 | $1,250.00 | $16,650.00 | G3516TALE | RAM 54 | 1340 | Offshore |
| **07** | Enervest/Garden Islan | 24 | 12/4/2003 | 2/3/2004 | 3/4/2004 | 2/3/2006 | 16 | $15,300.00 | $1,600.00 | $16,900.00 | G3520TALE | RAM 54 | 1674 | Inland Water |
| 1008**1006 | Houston Exploration | 24 | 4/1/2003 | 4/11/2003 | 5/8/2003 | 4/8/2005 | 6 | $11,000.00 | $0.00 | $11,000.00 | F3521GSI | RAM 52 | 738 | Offshore |
| 1009**1007 | Masters Resources | 24 | 5/1/2003 | 7/8/2003 | 7/8/2003 | 6/8/2005 | 8 | $8,500.00 | $1,000.00 | $9,500.00 | F3521GSI | RAM 54 | 738 | Onshore |
| 1010**1008 | Hitcap | 12 | 5/1/2003 | 7/10/2003 | 7/10/2003 | 7/10/2004 | 0 | $2,000.00 | $750.00 | $2,750.00 | 3306TAW | HPD2-2 | 145 | Onshore |
| 1011** | TBD | | | | | | | | | | | | | |
| 1012**1011 | Bass Enterprises | 24 | 10/3/2003 | 11/4/2003 | 11/13/2003 | 10/13/2005 | 13 | $15,900.00 | $1,000.00 | $16,900.00 | G3520TALE | WH 64 | 1674 | Onshore |
| 1013**1009 | Goodriche Petroleum | Monthly | 8/1/2003 | 8/18/2003 | 8/18/2003 | Monthly | 0 | $8,750.00 | $500.00 | $9,250.00 | G3508TALE | JGE2-3 | 630 | Onshore |
| 1014**1022 | GMT | 12 | 4/28/2004 | 5/3/2004 | 5/7/2004 | 6/7/2005 | 7 | $9,000.00 | $1,400.00 | $10,400.00 | F3521GSI | RAM 54 | 738 | Onshore |
| 1015**1010 | Arena Offshore | 12 | 9/3/2002 | 10/28/2003 | 10/28/2003 | 9/28/2004 | 0 | $9,000.00 | $800.00 | $9,800.00 | G3508TALE | JGE2-2 | 630 | Onshore |
| 1016**1014 | ATP | 24 | 1/30/2004 | 1/15/2004 | 3/22/2004 | 1/15/2006 | 15 | $9,000.00 | $812.00 | $9,812.00 | G3508TALE | RAM 52 | 630 | Offshore |
| 1017**1015 | Enervest/Bay DeChen | 24 | 12/24/2003 | 1/15/2004 | 3/1/2004 | 1/15/2006 | 15 | $15,200.00 | $1,250.00 | $16,450.00 | G3516TALE | JGT4-3 | 1340 | Onshore |
| 1018**NSC | Oakhill | 42 | 9/8/2004 | 11/15/2004 | TBD | 5/15/2008 | 42 | $16,000.00 | $2,270.00 | $18,270.00 | G3520TALE | JGT4-2 | 1674 | Onshore |
| 1019**1016 | Oakhill//OGS | 60 | 6/1/2004 | 6/17/2004 | 6/17/2004 | 6/17/2009 | 54 | $6,050.00 | $1,200.00 | $7,250.00 | G3508TALE | JGE2-2 | 630 | Onshore |
| 1020**1018 | Oakhill//OGS | 60 | 3/10/2004 | 6/24/2004 | 6/24/2004 | 6/24/2009 | 54 | $4,250.00 | $950.00 | $5,200.00 | 3340BTALE | JGJ4-2 | 425 | Onshore |
| 1021**1017 | Oakhill//OGS | 60 | 3/10/2004 | 6/18/2004 | 6/18/2004 | 6/18/2009 | 54 | $4,800.00 | $1,000.00 | $5,800.00 | G3408TALE | JGJ4-2 | 425 | Onshore |
| 1022**1019 | Oakhill//OGS | 60 | 3/10/2004 | 6/8/2004 | 6/8/2004 | 6/8/2009 | 54 | $4,250.00 | $950.00 | $5,200.00 | G3408TALE | JGJ2-2 | 425 | Onshore |
| 1023**1021 | Oakhill//OGS | 60 | 3/10/2004 | 6/9/2004 | 6/9/2004 | 6/9/2009 | 54 | $2,000.00 | $700.00 | $2,700.00 | G3306TAN | JGA2-2 | 195 | Onshore |
| **1020 | Oakhill//OGS | 60 | 3/10/2004 | 6/23/2004 | 6/23/2004 | 6/23/2009 | 54 | $4,250.00 | $950.00 | $5,200.00 | G3408TALE | JGJ2-2 | 425 | Onshore |



1110 Unifab Rd.
Suite A
New Iberia, LA  70560
Phone:  (337) 560 − 7700
Fax:      (337) 560 − 7841

December 30, 2004

Mr. John B. Berry, Trustee-Purchaser
4265 San Felipe
Suite 1100
Houston, TX  77027

Please be advised that WPS, Inc. hereby rescinds its acceptance of the letter of agreement dated December 30, 2004 between WPS, Inc. and John B. Berry, Trustee-Purchaser. Our understanding of the proposed structure of the transaction was to include a monthly rental payment of $125,000 per month and the transaction was to qualify as an "off balance sheet" transaction. We feel that this was made clear to all parties prior to the issuance of the letter. We are willing to enter into a discussion of a transaction with this structure. Unless we can negotiate on these issues, we cannot move forward with this transaction. Your check for $1,000 is attached to this letter.

Please note that this letter is being forwarded within the three day rescission period.

Thanks,

Scott Thomas
Chief Financial Officer
WPS, Inc.

EXHIBIT "6"