UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN B. BERRY, TRUSTEE<br>Plaintiff | §<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. H-05-1101<br>JURY |
| WPS, INC., ET AL<br>Defendants | §<br>§<br>§ | |

### DEFENDANT, WPS, INC.'S SECOND AMENDED ANSWER TO ORIGINAL PLAINTIFF'S PETITION AND ANSWER TO PLAINTIFF'S "SUPPLEMENTAL PETITION" AND COUNTERSUIT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant, WPS, Inc., (hereinafter "Defendant"), and pursuant to Rule 15 of the Federal Rules of Civil Procedure and this Court's Order of November 28, 2005, and files this, its Second Amended Answer to Plaintiff's Original Petition and Answer to Plaintiff's Purported Supplemental Petition and Countersuit, and in support thereof would show unto the Court the following:

I.
RULE 12(b)(6) MOTION

1.01  Defendant, WPS, Inc., files this answer after filing its 12(b)(6) motion previously filed in this matter. In Defendant's 12(b)(6) motion, Defendant asserted that the Plaintiff has failed to state a claim upon which relief can be granted in Plaintiff's pleadings.

II.
LEAVE OF COURT

2.01  Leave of Court is not required for Defendant to file this Amended Answer as this Court's Order of November 28, 2005, permits the filing of this pleading.

III.

AMENDED ANSWER TO PLAINTIFF'S ORGINAL PETITION

3.01    Defendant disputes the applicability of the allegations set forth in Paragraph One of Plaintiff's Original Petition in that this matter is now pending in Federal Court and the Texas Rules of Civil Procedure no longer apply to this suit.

3.02    Plaintiff fails to identify the person or entity for whom he contends he is acting as Trustee and Defendant denies that Plaintiff has the capacity to sue as a "Trustee". Defendant further addresses this matter in its Specific Negative Averment set froth in Part VI of this pleading. Defendant is without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 2A of Plaintiff's Original Petition.

3.03    Defendant denies that Seth Williamson is the proper agent for process of Defendant, WPS, Inc. and further denies that service upon Defendant, WPS, Inc., can be affected by personal delivery. Otherwise, Defendant admits the allegations set forth in Paragraph 2B of Plaintiff's Original Petition.

3.04    Defendant denies the allegation set forth in paragraph 2C of Plaintiff's Original Petition.

3.05    Defendant denies the allegations set forth in Paragraph 3 of Plaintiff's Original Petition.

3.06    With respect to Paragraph 4 of Plaintiff's petition, Defendant denies that a document entitled "Sale and Leaseback Agreement" is attached to Plaintiff's Original Petition as Exhibit "A". Defendant further denies that a "Sale and Leaseback Agreement" was ever executed by this Defendant or any other Defendant in this suit. Furthermore, Defendant denies all other allegations set forth in Paragraph 4 of Plaintiff's Original Petition.

3.07   Defendant denies the allegations set forth in Paragraph 6 of Plaintiff's Original Petition.

3.08   Defendant denies the allegations set forth in Paragraph 6 of Plaintiff's Original Petition.

3.09   Defendant denies the allegations in Paragraph 7 of Plaintiff's Original Petition. Defendant further denies that all conditions precedent have been performed prior to the filing of this suit. Defendant denies that there was ever an enforceable agreement between Defendant and Plaintiff. Among there reasons that there is no enforceable contract between Plaintiff and Defendant are as follows:

- There was fraud in the inception in this misrepresentation that Plaintiff was the trustee of a trust with almost a billion dollars of assets that was the source of funding for the proposed sale/leaseback;

- There was no meeting of the minds;

- There was no consideration given to Defendant;

- The alleged contract in question was illusory;

- The alleged contract in question was potestative;

- There was no mutual assent;

- It is not clear as to what was being offered under the alleged contract;

- There were material terms to the negotiations between the parties that were absent from the purported contract including but not limited to the following:
    - provisions regarding insurance requirements during the proposed lease and on renewals or relets;
    - provisions to address non-routine maintenance of the equipment;
    - the source of funding for the replacement of component parts;
    - the provisions regarding accounting for the transaction;
    - the provisions making the proposed transaction an off balance sheet transaction;
    - risk of loss provisions regarding responsibility for loss or destruction or damage of the equipment or property;

- provisions regarding taxes and fees;
- a provisions regarding the manner in which liens, mortgages, security agreements, and similar existing encumbrances on the equipment would be addressed;
- provisions governing claims and lawsuits by third parties;

The conditions precedent not performed by Plaintiff also include failure to plead and prove notice as required by Chapter 38 of the Texas Civil Practice and Remedies Code.

3.10   Plaintiff's allegations in Paragraph 8 of Plaintiff's Original Petition were disposed of by way of this Court's Order of October 7, 2005, granting in part the relief sought in Defendant's Rule 12(b)(6) motion. Therefore, Defendant is not required to admit or deny these allegation as it has been effectively stricken from Plaintiff's pleadings. This further negates Plaintiff's claim to entitlement to exemplary damages.

3.11   Defendant denies the allegations set forth in Paragraph 9 of Plaintiff's Original Petition.

3.12   Defendant denies the allegations set forth in Paragraph 10 of Plaintiff's Original Petition.

3.13   The allegations set forth in Paragraph 11 pertain to allegations regarding damages. Defendant is not required to admit or deny the allegations contained in these paragraphs pursuant to Rule 8(b) of the Federal Rules of Civil Procedure.

3.14   Defendant would further plead that the document entitled "Letter of Agreement" attached to Plaintiff's Original Petition does not constitute a contract that is enforceable under the applicable law.

3.15   Defendant would further show that the document entitled "Letter of Agreement" lacks terms necessary to make it an enforceable contract or agreement. Defendant further denies that there was mutual assent necessary to create an enforceable contract or agreement.

IV.
ORIGINAL ANSWER TO PLAINTFF'S
"SUPPLEMENTAL PETITION"

4.01 Defendant does not admit the allegations set forth in Paragraph 1 of Plaintiff's "Supplemental Petition" and demands strict proof that John Berry is in fact a "trustee" and also demands evidence of what John Berry is a trustee of. Defendant further demands strict proof showing that Plaintiff has standing and capacity to bring this suit.

4.02 Defendant admits the allegations set forth in Paragraph 2 of Plaintiffs' "Supplemental Petition".

4.03 Defendant denies all allegations in Paragraph 3 of Plaintiffs' "Supplemental Petition" other than allegations indicating that this Court has subject matter over this matter.

4.04 Defendant denies the allegations set forth in Paragraph 4 of Plaintiff's "Supplemental Petition".

4.05 Defendant denies the allegations set forth in Paragraph 5 of Plaintiff's "Supplemental Petition".

4.06 Defendant denies the allegations set forth in Paragraph 6 of Plaintiff's "Supplemental Petition".

4.07 Defendant denies the allegations set forth in Paragraph 7 of Plaintiff's "Supplemental Petition".

4.08 Defendant denies the allegations set forth in Paragraph 8 of Plaintiff's "Supplemental Petition".

4.09 Defendant is not required to admit or deny the allegations set forth in Part 9 of Plaintiff's "Supplemental Petition".

4.10 To obtain the injunctive relief sought by Plaintiff in his "Supplemental Petition, Plaintiff must show, among other things:

- Plaintiff is substantially likely to succeed on the merits of its claim;
- The court's failure to issue the injunction poses a substantial threat of irreparable injury to Plaintiff;
- The threatened injury to Plaintiff outweighs any damage that the injunction's issuance might cause to the opposing party; and,
- The injunction's issuance will not undermine the public interest.

Defendant denies that Plaintiff can prove any of these material elements and demands strict proof thereof.

## V.
## AFFIRMATIVE DEFENSES

5.01 Defendant contends that Plaintiff failed to mitigate his damages, if any there are. Therefore, Plaintiff's damages, if any, should be reduced by the amount attributable to Plaintiff's failure to mitigate damages.

5.02 Plaintiff's claims are barred under the applicable statutes of fraud including the statutes of fraud set forth in Article 2 of the Uniform Commercial Code and in Chapter 28 of the Texas Business and Commerce Code and/or statutes of fraud recognized under Louisiana law.

5.03 Defendant denies that Plaintiff is entitled to punitive damages in this action. An award of punitive damages in this case would violate the Contracts Clause of Art. 1, §10 of the United States Constitution, and the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. Further, Defendant, WPS, Inc., would show that Plaintiff's has not pleaded a cause of action under which these damages can be recovered.

5.04   The purported "contract" upon which Plaintiff's case is based is unenforceable because it is illusory and potestative.

5.05   While Defendant contends the Plaintiff bears the burden of proof in proving that the alleged contract had all material terms, and Defendant denies that the alleged contract did, in the event the court finds that such a defense is an affirmative defense, Defendant would show there were material terms to the negotiations between the parties that were absent from the purported contract including but not limited to the following:

- provisions regarding insurance requirements during the proposed lease and on renewals or relets;
- provisions to address non-routine maintenance;
- the source of funding for the replacement of component parts;
- the provisions regarding accounting for the transaction;
- risk of loss provisions regarding responsibility for loss or destruction or damage of the equipment or property;
- provisions regarding taxes and fees;
- a provisions regarding the manner in which liens, mortgages, security agreements, and similar existing encumbrances on the equipment would be addressed;
- provisions governing claims and lawsuits by third parties;

5.06   Defendant would show that the alleged contract is vitiated by fraud. Defendant would show that Plaintiff and its agents and representatives made numerous misrepresentations about the nature, terms, meaning, and effect of the document entitled "Letter of Agreement" and the terms contained therein. Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby. The representations made by Plaintiff and/or its agents and representatives include representations made before the "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing". Before the "Letter of Agreement" was signed, the parties engaged in discussions about maintenance and other important matters including the way the proposed transaction would be carried on financial statements, and based on representations,

WPS believed they would be contained in the final form of the agreement. However, the day after the "Letter of Agreement" was signed, it was revealed that maintenance provisions would not be in the contract and other essential provisions would not be spelled out until the final agreement was delivered by Plaintiff. Further, during negotiations, Plaintiff's agents and representatives represented that John Berry was the trustee of a trust that would fund the proposed transaction, which trust was set up by the Plaintiff's father-in-law and which trust was worth almost $1,000,000,000, and that funding for the transaction would be prompt. Defendant relied on these representations and was damaged thereby. Discovery responses have revealed that Plaintiff is not the trustee of such a trust and that Plaintiff intended to fund the transaction by soliciting lenders to fund same, with trustee acting as a broker, not a principal.

5.07   The injunctive relief sought by Plaintiff is contrary to public policy. Public policy prohibits the granting of insurance proceeds to persons lacking an insurable interest. Here, Plaintiff has no interest in the equipment for which he seeks insurance proceeds. Furthermore, if the equipment was damaged, Plaintiff has not been financially harmed by any such damage. Furthermore, public policy calls for the productive use of property and not waste. In the instant case, Plaintiff is asking for extraordinary relief that could, if the relief is granted, require damaged equipment to go unrepaired and other equipment to remain tied up in this litigation instead of being used for the production of oil. Further, providing the relief requested by Plaintiff of prohibiting the sale, transfer or mortgaging of the equipment could prevent WPS from being able to fund its operations and cause the equipment to lay idle.

5.08   Plaintiff's claims and the damages and relief sought by Plaintiff are barred under the doctrine of "unclean hands". Defendant would show that Plaintiff and its agents and representatives made numerous misrepresentations about the nature, terms, meaning, and effect

of the document entitled "Letter of Agreement" and the terms contained therein. Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby. The representations made by Plaintiff and/or its agents and representatives include representations made before the "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing". Before the "Letter of Agreement" was signed, the parties engaged in discussions about maintenance and other important matters including the way the proposed transaction would be carried on financial statements, and based on representations, WPS believed they would be contained in the final form of the agreement. However, the day after the "Letter of Agreement" was signed, it was revealed that maintenance provisions would not be in the contract being drafted and that other essential provisions would not be spelled out until the "final" agreement was delivered by Plaintiff. Further, during negotiations, Plaintiff's agents and representatives represented that Plaintiff was purportedly the trustee of the trust that would be the funding source for proposed transaction, and that the trust was worth over almost $1,000,000,000, and that funding for the transaction would be prompt.

5.09   The injunctive relief sought by Plaintiff runs counter to the rule that a defendant cannot be enjoined from activities which are lawful and are a proper exercise of his rights. In the case at bar, all of. WPS clearly holds an insurable interest in the equipment and has every right to require its lessees to insure the equipment, and name it as an additional insured and its lenders as "loss payees." If there was damage to the equipment, the insurance proceeds would be first applied to repair the equipment if repairable, and if a total loss and if insurance proceeds were paid for this total loss, WPS's lender would be acting within its rights in receiving said proceeds and applying the proceeds to loans secured by the equipment, and the net proceeds, if any, would

be used by WPS as it deems proper, or as its lender has directed. Plaintiff did not advance any money to acquire this equipment and has no security interest in the equipment or the insurance proceeds and therefore should not be allowed to require the escrowing of said funds.

5.10 Defendant asserts the defenses of ripeness and mootness to the relief sought by Plaintiff. Defendant is not aware of any equipment being damaged by the hurricanes and is similarly unaware of, and does not believe that, any insurance claims were made or payments from insurers pertaining to the equipment. Furthermore, all of the equipment in question has been sold except for one unit.

5.11 As further defense, Defendant would show that the alleged contract is void because of mistake of fact and law.

5.12 As further defense, Defendant would show that Plaintiff is estopped from insisting on compliance with the alleged contract because of Plaintiff's failure and refusal to place provisions in the alleged contract that were bargained for by the parties.

5.13 Plaintiff failed to satisfy provisions required of lenders under both Texas and Louisiana law, including LA. REV. STAT. ANN. § 51:1405 ET SEQ.

514. Plaintiff's requested injunctive relief is unconstitutionally overly broad and places an undue burden on Defendant. Further, the relief requested by Plaintiff as described in his pleadings and proposed order is vague and ambiguous. Further, the relief requested would alter the status quo and would affectively grant relief to the Plaintiff without requiring proof of Plaintiff's entitlement to same in fact or as a matter of law, thereby depriving WPS of its property without procedural or sustentative due process.

## VI.
## SPECIFIC NEGATIVE AVERMENTS

6.01   Plaintiff, John B. Berry, identifies himself in his original petition as "Trustee", but fails to identify the entity or person for whom he is allegedly serving as trustee. By definition, a trustee must serve as a trustee for some other entity or person, and that person or entity should be identified in Plaintiff's pleadings. To that extent, Defendant denies that John B. Berry is a "Trustee" and has the right to sue in such capacity.

## VII.
## COUNTERSUIT

7.01   Plaintiff, by seeking the injunctive relief sought in its purported "Supplemental Petition" is attempting to damage Defendant's business and to interfere with existing and prospective contractual relations. An injunction against the sale, mortgage or encumbrance of its equipment would mean that Defendant could build no new gas compression units that are individually financed whether for resale or for rent because a notice of pending litigation noticing the attachment of the injunctive relief to insurance proceeds would discourage lenders and buyers or lessees and/or would immediately violate the provisions of most loan and lease documents.

7.02   If the future insurance proceeds paid for future damage to rental units is required under the relief requested to be placed in escrow instead of used to repair or replace equipment or to pay down lenders, no lessee or lender will rent or finance units.

7.03   Further, Defendant uses lines of credit to conduct most of its operations, and these lines and its loans are regulated by loan agreements that have financial covenants that would be breached by the placement of an injunction that the Plaintiff has requested to effect Defendant's

equipment. Such a breach could cause Defendant's lenders to freeze Defendant's lines of credit making the conduct of operations impossible.

7.04 Plaintiff has been placed on notice of the impact Plaintiffs' request for injunctive relief will have on Defendant's business. Plaintiff is also aware that Defendant has entered into contracts with lending institutions for the financing of equipment and with third parties. Plaintiff is willfully attempting to interfere with these contractual relationships which will clearly damage Defendant. Therefore, Plaintiff is liable for tortuous interference with contractual relations, and to the extent that these contractual relations have not come to fruition – Plaintiff is liable for breach of prospective contractual relations.

7.05 Defendant would show that Plaintiff and its agents and representatives made numerous misrepresentations about the nature, terms, meaning, and effect of the document entitled "Letter of Agreement" and the terms contained therein. Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby. The representations made by Plaintiff and/or its agents and representatives include representations made before the "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing". Before the "Letter of Agreement" was signed, the parties engaged in discussions about maintenance and other important matters including the way the proposed transaction would be carried on financial statements, and based on representations, WPS believed they would be contained in the final form of the agreement. However, the day after the "Letter of Agreement" was signed, it was revealed that maintenance provisions would not be in the contract and other essential provisions would not be spelled out until the final agreement was delivered by Plaintiff. Further, during negotiations, Plaintiff's agents and representatives represented that John Berry was the trustee of

a trust that would fund the proposed transaction, which trust was set up by the Plaintiff's father-in-law and which trust was worth almost $1,000,000,000, and that funding for the transaction would be prompt. Defendant has been damaged by the false representations made by Plaintiff and his agents and representatives, including by having to pay considerable attorney's fees to defend this suit.

7.06 Defendant would also show that the conduct described in the preceding four paragraphs constitute deceptive trade practices as defined under the Deceptive Trade Practices Act set forth in Section 17.50 of the Texas Business & Commerce Code. Defendant would also show that the conduct of Plaintiff and his agents and representatives was committed knowingly as the term is defined under the Deceptive Trade Practices Act. Among the Deceptive Trade Practices undertaken by Plaintiff include the fact that Plaintiff represented itself as the trustee of a trust with assets of almost one billion dollars that was to be the source of funding, and that the proposed transaction has characteristics and attributes it did not have, and by the Plaintiff or his agents holding Plaintiff out as representing a principal (the trust) having the ability, the means, and the intent to fund the transaction when it did not.

7.07 As damages, Defendant seeks compensatory damages, damages for attorney's fees it has incurred in defending this case, damages for injury to Defendant's reputation and standing, damages to injuries to Defendant's business and business relations, exemplary damages, damages available under the Deceptive Trade Practices Act, including treble damage for Plaintiff's knowing conduct, attorneys fees, and all other relief available by law.

WHEREFORE, PREMISES CONSIDERED, Defendant, WPS, Inc., prays that upon final trial of this suit that Plaintiff take nothing by this action, that it recover costs of court and

attorney's fees, that this Defendant receive such other and further relief, general and special, at law and equity to which it is entitled.

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
Post Office Box 4915
Beaumont, Texas 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Telecopier

*/s/ James Henges/SCB* — with permission

**James R. Old, Jr.**
**Attorney In Charge**
State Bar No. 15242500
Southern Dist. No. 10751
**James W. Henges**
State Bar No. 00790860
Southern Dist. No. 433426

**ATTORNEYS FOR DEFENDANT, WPS, INC.**

15

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the ___8th___ day of December, 2005.

Mr. Thomas G. Bousquet                   **VIA CERTIFIED MAIL, RRR**
BOUSQUET & JACKSON, P.C.
5718 Westheimer #700
Houston, Texas 77057

_James Henges/SCB_
**James W. Henges**   with permission