IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 1 2 2006

Michael N. Milby, Clerk of Court

**JOHN B. BERRY TRUSTEE**
**Plaintiff**

§
§
§
§
§
§
§
§
§
§
§
§

V

**WPS, INC.**
**Defendants**

CIVIL ACTION NO. H-05-1101

JURY

## FIRST AMENDED PETITION FOR SUIT ON WRITTEN CONTRACT

1.  *Discovery Level.*  Discovery in this case is intended to be conducted under the Federal Rules of Civil Procedure.

2.  *Parties.*

    A.  Plaintiff, JOHN B. BERRY, TRUSTEE, is an Individual whose residence is in Harris County, Texas.

    b.  Defendant, WPS, INC., a Corporation based in Louisiana, is organized under the laws of the State of Louisiana, , and service of process was had upon said Defendant by serving Seth Williamson, President of the corporation at 1110 Unifab Road, Suite A, New Iberia, Louisiana WPS, INC. has answered herein..

3.  This court has jurisdiction over the parties because Defendants contracted with Plaintiff in Texas and agreed to suit in Harris County, Texas. The suit seeks in excess of $75,000.00 and there is diversity of citizenship.

**FIRST COUNT**:

4.  *Facts.*  Attached to this petition as Exhibit "A" is a copy of the Sale and Leaseback Agreement executed by Plaintiff and Defendants. The agreement is incorporated in this petition by

reference. Plaintiff has fully complied with the agreement. The contract had sufficient consideration and was and is performable as written and if Defendants had not breached same, the contract would have closed on its terms. Defendants are guilty of attempted or anticipatory breach of the contract on or about December 30, 2004 (Exhibit "B" hereto), and complete breach of the contract on January 26, 2005.

5. *Damages* Plaintiff seeks judgment for damages in excess of $12,000,000.00 for loss of profits and loss of the benefits of the contract and/or specific performance of the Agreement.

6. *Default.* Defendants defaulted in the performance of the Agreement. Plaintiff seeks specific performance of the contract and/or his damages and attorney's fees..

7. *Conditions Precedent.* All conditions precedent have been performed or have occurred.

8. *Attorney's Fees.* Defendants' default has made it necessary for Plaintiff to employ the undersigned attorneys to file suit. This claim was timely presented to Defendants and remains unpaid. Reasonable fees for the attorney's services rendered and to be rendered are a minimum of $100,000.00, plus fees incurred in any appeal.

**SECOND COUNT:**

The necessity for this Second Count is because of and brought about by the recent devastation on the Gulf Coast by Hurricanes. .

### A. Request for Preliminary Injunction

1. Plaintiff will suffer irreparable harm if the defendant is not ordered a) to place the insurance proceeds paid or payable under any insurance policy for damages and losses to the assets which were to be sold to Plaintiff, as per the list attached to Plaintiff's Original Petition arising from Hurricane Katrina and Rita into the registry of this court, or alternatively, b) be enjoined during the pendency of this lawsuit from selling, transferring or mortgaging the assets which were to be sold to

Plaintiff, as per the list attached to Plaintiff's Original Petition, and/or c) spending, disposing of, encumbering, transferring out of this courts jurisdiction or otherwise utilizing the insurance proceeds paid or payable under any insurance policy for damages and losses arising from Hurricanes Katrina and Rita . Plaintiff needs such order because the injury is imminent, is irreparable, and plaintiff has no adequate remedy at law. {*Sampson v. Murray, 415 U.S. 61, 88-90, 94 S.Ct. 937, 951-53 (1974); Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 417 (4th Cir. 1999)*}

2. There is a substantial likelihood that plaintiff will prevail on the merits because the execution of the contract is not disputed. {*Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 2568 (1975); U.S. v. Microsoft Corp., 147 F.3d 935, 943 (D.C. Cir. 1998); DSC Comm. Corp. v. DGI Tech., Inc., 81 F.3d 597, 600 (5th Cir. 1996)*}

3. The harm faced by plaintiff outweighs the harm that would be sustained by the defendant if the preliminary injunction were granted. Defendant is in the peculiar position that it is cashing out all of its assets due to insured damages and losses caused by Hurricanes Katrina and Rita {*Yakus v. U.S., 321 U.S. 414, 440, 64 S.Ct. 660, 675 (1944); Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir.1995)*}

4. Issuance of a preliminary injunction would not adversely affect public interest and public policy because Plaintiff would have been the beneficiary under the insurance policies if the contract had not been breached by Defendant. The cash proceeds constitute a windfall and Plaintiff must be protected from defendant dispoing of all of its assets. {*Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1304 (11th Cir. 2001); Hoechst Diafol, 174 F.3d at 417)*}

5. Plaintiff is willing to post a bond in the amount the court deems appropriate.

6.. Plaintiff asks the court to set his application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, issue a preliminary injunction against defendant.

7. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

8. *Prayer.* Plaintiff prays that-

    a. Defendants be cited to appear and answer;

    b. Plaintiff be granted judgment for specific performance of the contract;

    c. Plaintiff be granted judgment for his damages;

    d. Plaintiff be granted judgment for prejudgment and postjudgment interest on the judgment at the highest legal or contractual rate allowed by law;

    e. Plaintiff be granted judgment for at least $100,000.00 as reasonable attorney's fees, with additional amounts in the event of appellate proceedings;

    f. That Defendant be ordered to place the insurance proceeds paid or payable under any insurance policy for damages and losses to the assets which were to be sold to Plaintiff, as per the list attached to Plaintiff's Original Petition arising from Hurricane Katrina and Rita into the registry of this court, or alternatively, b) be enjoined during the pendency of this lawsuit from selling, transferring or mortgaging the assets which were to be sold to Plaintiff, as per the list attached to Plaintiff's Original Petition, and/or c) spending, disposing of, encumbering, transferring out of this courts jurisdiction or otherwise utilizing the insurance proceeds paid or payable under any insurance policy for damages and losses to the assets which were to be sold to Plaintiff, as per the list attached to Plaintiff's Original Petition arising from Hurricane Katrina and Rita . Plaintiff needs such order because the injury is imminent, is

irreparable, and plaintiff has no adequate remedy at law.

g. Plaintiff be granted judgment for all costs of court; and

h. Plaintiff be granted all further relief to which Plaintiff may be entitled.

Respectfully submitted,

BOUSQUET & JACKSON P.C.

By: _____
THOMAS G. BOUSQUET
Texas Bar No. 02717000
Federal No. 3285
5718 Westheimer #700
Houston, Texas 77057
Tel. (832)251-3501
Fax. (832)242-5607
ATTORNEY FOR PLAINTIFF
JOHN B. BERRY, TRUSTEE

PLAINTIFF DEMANDS A TRIAL BY JURY

CERTIFICATE OF SERVICE

_____I HEREBY CERTIFY that a true and correct copy of the above instrument has been served, pursuant to Federal Court Rules by First Class U.S. Mail, Return Receipt Requested, postage prepaid and properly addressed, all as shown by the attached Service List, on this _10_ day of _____, 2006.

Thomas G. Bousquet

<u>Letter of Agreement</u>

December 20, 2004

Mr. Seth Williamson, President
Williamson Production Services, Inc.
1110 Unifab Road, Suite A
New Iberia, LA 70560

**ORIGINAL #1**

Re: Sale/Leaseback of Lease Fleet of Williamson Production Services, Inc. ("WPS" and "Seller") to various clients as Lessee's for Compressor Equipment property and all appurtenances thereto; as more fully described in EXHIBIT "A" containing six (6) pages attached hereto and incorporated herein by reference (the "Equipment Property").

---

Dear Mr. Williamson:

I, as Trustee-Purchaser, have received certain information regarding WPS and the above described Equipment Property from Seller and Seller's Consultant, George H. Reid Investments, Inc. ("Consultant"). Based on the information submitted, I, in my capacity as Trustee-Purchaser, herewith submit this Letter of Agreement offer to purchase and sale for said Equipment Property and the Leaseback of this Equipment Property by Seller subject to the following terms and conditions:

1. **Purchase Price.** Purchaser shall pay Seller the sum of <u>Ten million five hundred eighty thousand DOLLARS</u> ($10,580,000.00) for the Equipment Property.

2. **Payment Terms.** All cash at closing. All payments described herein shall be in US Dollars only.

3. **Closing.** Closing of this transaction shall be on or before forty five (45) Business Days after execution and delivery to Seller (at Seller's address herein) by Purchaser, the Formal Documentation Purchase, Sale, and Leaseback Agreement as called for in Paragraph 4 hereof, to the office of Partners Title Company, 712 Main Street, Houston, Texas, Attn: Jim Suttles.

4. **Formal Documentation.** Within fifteen (15) Business Days after the execution of the Letter of Agreement by both Purchaser and Seller as the Parties hereto, Purchaser shall deliver to Seller a Purchase and Sale Agreement and Leaseback Agreement and other documentation (Formal Documentation) executed by Purchaser and such other documents as may be necessary in the sole discretion of Purchaser which Seller agrees to execute and return without delay. The Purchase and Sale Agreement, Leaseback Agreement, and other documents shall supersede and take precedence to this Letter of Agreement; and in the event any of the terms and conditions of this transaction shall vary between this Letter of Agreement and the Purchase and Sale Agreement, the terms and conditions of the Purchase and Sale Agreement and Leaseback Agreement and other documents shall prevail.

**EXHIBIT "A"**

5. **Purchaser Reviews.** This offer is subject to Purchaser's review and verification to Purchaser's sole satisfaction of any and all property, data, and facts, including and without limitation of all Equipment Property for this transaction as described on the attached EXHIBIT "A" and (a) complete, current, and historic financial statements; (b) current equipment rental agreements, including any amendments or modifications, and complete historic accounting of each such agreement; (c) completion of due diligence, inspection, and appraisal of Equipment Property; (d) all past and current environmental inspections, permits, reports, and surveys thereof; (e) any and all past and existing UCC filings relating thereto; (f) all Equipment Property designs, plans and specifications pertaining to the Equipment Property; and, (g) Seller shall also provide Purchaser an Estoppel Certificate and Landlord Waiver for each Equipment Property asset being conveyed by Seller to Purchaser dated as of the closing; (h) Seller shall warrant and covenant to Purchaser hereof the exclusive rights of parties in possession ownership of the Equipment Property to be sold, conveyed, and transferred to Purchaser hereof by General Warranty Deed of Fee Simple Title to the sole satisfaction of Purchaser.

6. **Legal Description of Equipment Property.** See EXHIBIT "A" (six pages) attached hereto and incorporated herein by reference. It is acknowledged by the Parties hereto that such documents were provided to Purchaser by WPS and through Consultant and may be subject to legal modifications as necessary in the sole discretion and to the satisfaction of Purchaser and Purchaser's legal advisors as the case may be.

7. **Earnest Money.** Fifty thousand DOLLARS ($50,000.00) as a Bank Letter of Credit or cash as Purchaser may desire shall be deposited by Purchaser with Partners Title Company, 712 Main Street, Houston, Texas 77002, along with the fully executed copy of the Formal Documentation as previously described in Paragraph 4 herein above. The Earnest Money deposited shall be fully credited to the purchase price, at the closing of this transaction, at the sole option of Purchaser hereof.

8. **Seller/Lessee Duties.** Prior to the preparation of the Formal Documentation as more fully described in Paragraph 4 herein above, WPS agrees to provide complete, current, and historic financial documents and records concerning WPS's complete business operations along with copies of all documents and records specifically relating to the Equipment Property. Seller agrees that during the term of the Leaseback, all customer payments due relating to the rental of the Equipment Property now owned by Purchaser will be directed by WPS directly to Purchaser's designated bank lockbox or other such address as designated by Purchaser from time-to-time.

9. **Primary Leaseback Terms.** Equipment Property shall be conveyed by Seller to Purchaser and Seller agrees to immediately Leaseback said Equipment Property from Purchaser at closing. All customer rental payments regarding Equipment Property previously due Seller shall be made without demand directly to Purchaser's designated bank lockbox account. Purchaser/Lessor will promptly report all income and disbursements to Seller/Lessee. All payments received by Purchaser/Lessor shall first be applied to any amount due Purchaser/Lessor. Seller/Lessee will make consecutive monthly payments to Purchaser/Lessor and

such payments shall be equal to the sum total of all customer rental payments due for Equipment Property and designated by Seller/Lessee as Monthly Rental Revenue on EXHIBIT "A" attached hereto. If received by Purchaser, all payments designated as Monthly Maintenance Revenues in the various customer rental contracts will be promptly disbursed to Seller/Lessee in payment of maintenance and other services for equipment as contractually agreed for the Equipment Property. The first and last month's lease payments will be due at closing.

10. **Initial Term.** The Initial Term of the leaseback shall be eighty four (84) months. Seller/Lessee agrees to remit eighty four (84) consecutive monthly lease rental payments to Purchaser/Lessor such monthly payments due Purchaser/Lessor shall at no time be less than <u>One hundred twenty five thousand DOLLARS</u> **($125,000).**

11. **Purchase Upon Termination.** At the end of the Initial Term, WPS shall have the obligation to re-purchase the Equipment Property from Purchaser for <u>Seven million nine hundred twenty five thousand DOLLARS</u> **($7,925,000)** due in cash on the first day of the eighty fifth (85th) month from the date of closing hereof as between Purchaser and WPS.

12. **Definitions.** The term Business Days as used herein is agreed to mean 8:00 AM to 5:00 PM, Central Standard Time, Monday through Friday, not including United States Federal or Texas State holidays.

13. **Severability.** In the event that any of the terms, conditions or covenants of this Letter of Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions thereof, shall not be affected thereby and effect shall give rise to the intent manifested by the provisions, or portions thereof, held to be enforceable and valid.

14. **Non-Disclosure.** Except as may be required by applicable law, neither Purchaser or Seller(s) shall make any public announcement or otherwise disclose to any third party the existence, contents and nature of this Letter of Agreement without the prior written consent of both parties. This provision shall not apply to any related consultant, attorney, advisor, closing agent, and/or employee of either Purchaser or Seller(s) acting in connection with this Letter of Agreement.

15. **Applicable Law.** This Letter of Agreement and the Purchase and Sale Agreement shall be construed in accordance with and governed by the laws of the United States of America. If any party brings legal action to enforce any right or obligation under either, jurisdiction shall lie exclusively in Houston, Harris County, Texas.

16. **Option Fee.** Purchaser agrees to pay Seller an Option Fee of <u>One Thousand DOLLARS</u> **($1,000.00)** within three business days of receipt of Seller's acceptance of this Letter of Agreement in consideration of such acceptance. The sufficiency of the consideration is acknowledged by the Parties. Execution of this Letter of Agreement and acceptance of the Option Fee by Seller shall grant Purchaser an exclusivity right (the "Exclusivity") under which Seller agrees not to solicit, offer,

or hold discussions with any third party regarding the sale of the Seller's Equipment Property herein described.

17. **Interest in Future Transactions.** For a period equal to the Initial Term, WPS grants Purchaser the first and exclusive right to consider any and all future WPS Equipment Property Sale/Leaseback transactions and WPS and Purchaser hereof further agree any of these future transactions will occur under substantially the same terms and conditions as contained herein at Purchaser's option. During this term, WPS further grants Purchaser the first right of review to any other leasing or financing transaction involving WPS equipment.

18. **Consultants and Brokers.** Seller warrants that it has had no dealings with any broker or agent in connection with the negotiation or execution of this Letter of Agreement except Consultant. Seller has agreed to pay Consultant pursuant to an existing Consulting Services Agreement dated as of July 13, 2004 and executed by Seller on July 14, 2004 and by Consultant on July 16, 2004. It is hereby acknowledged by both Seller and Purchaser hereof that, George H. Reid and/or George H. Reid Investments, Inc. may or may not also act in the capacity as Principal in the transaction described herein. The Pasties to the existing Consulting Services Agreement as between George H. Reid Investments, Inc. and WPS, Inc. hereby agree that the Consulting Services Agreement may be disclosed and delivered to Partners Title Company ATTN: Jim Suttles for the purpose of the payment of the compensation in cash, in full at closing.

19. **Authority.** The undersigned each represent, warrant, and covenant the possession of the power and authority to execute this Letter of Agreement.

20. **Acceptance.** This offer of Purchase shall be deemed to be refused and withdrawn if Purchaser hereto has not received written acceptance to the terms and conditions hereof by 5:00 PM on December 29, 2004.

This Letter of Agreement shall be binding upon the Parties hereto, their heirs, successors, legatees, nominees and/or assigns.

Respectfully Submitted,                    CONSULTANT:
                                           GEORGE H. REID INVESTMENTS, INC.

_____ Trustee-         By: _____ Date: 12-22-04
John B. Berry, Trustee-Purchaser           George H. Reid, President

Address:  4265 San Felipe, Suite 1100      Address:  PO Box 56443
          Houston, Texas 77027                       Houston, Texas 77256

*OA)1\**
*AN*

Letter of Agreement

December 20, 2004
Page 5 of 5

**SELLER: (Authorized Signatory(s) Only):**

AGREED and ACCEPTED this **28** day of December, 2004.

WILLIAMSON PRODUCTION SERVICES, INC. (WPS, Inc.)

By: _[signature]_ / Date: **12/28/04**
Seth Williamson, President

Printed Name: **Seth Williamson**
Title:   President

By: _[signature]_ / Date: **12/28/04**

Printed Name: **Scott Thomas**
Title:   Secretary

Address:     1110 Unifab Road, Suite A
             New Iberia, LA 70560

Corporate Seal

# WPS Unit Listing

EXHIBIT "A"
Page 1 of 6

| Unit # | Customer | Lease Name | Customer's Ship Date | Engine | Frame | STAGE 1 CYL. BORE | STAGE 2 CYL. BORE | STAGE 3 CYL. BORE | ENGINE RPM | Cooler | Coupling | BHP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1001 | W & T | High Island 389 | Shipped | 3516 TALE | 5C-VIP-4 | 9 1/4 | 5 1/2 | | 1400 | L144 | FSH-60-26 | 1340 |
| 1002 | Century | SS-154E | Shipped 10-10-02 | L 7042 GSI | 5C-VIP-4 | 12 1/2 | 5 1/4 | 5 | 1200 | L144 | FSH 70-28 | 1478 |
| 1003 | AEDC | Vermillion 86A | Shipped 8-15-03 | 3508 TALE | 5CVIP-2 | 6 1/2 | 5 1/2 | | 1400 | L108 | | 630 |
| 1004 | Master Resources | Aggie Junction #2 | Shipped 9-17-03 | 3516 TALE AFR | Ram54 | (2) 14 | 9 1/2 | 6 1/2 | 1400 | L144 | FSH-60-26 | 1340 |
| 1005 | UC/ Unocal | Fresh Water Bayou | Shipped 6-19-03 | 3512 TALE | Ram54 | (2) 11 | 9 1/2 | 5 1/2 | 1400 | L132 | FSH-60-26 | 945 |
| 1008 | Chapman/Houston Exploration | SMI-253A | Shipped 4-11-03 | F 3521 GSI | Ram52 | 7 | 6 1/2 | | 1200 | L96S | FSH 60-28 | 738 |
| 1009 | Master Resources | Aggie Junction #1 | Shipped 7-8-03 | F 3521 GSI | Ram54 | (2) 9.5 | (2) 6.5 | | 1200 | L120 | FSH 60-28 | 738 |
| 1010 | Hilcorp | North Maurice Field | 1-Dec-2003 | 3306 TA | Gemini H302 | 5 1/2 | 3 1/2 | | 1800 | JB4 | | 145 |
| 1013 | Good Rich Resources | Second Bayou - WPS purchased this Pkg. from CSI | Shipped 8-18-03 | G3508 | JGE/2 | 13 1/2 | 9 3/4 | 5 1/2 | 1400 | J7E | | 630 |
| 1015 | Arena Offshore | Brazos 52-C Platform, Offshore LA | Shipped 10-28-03 | 3508 TALE | JGE/2 | 8 3/8 | 5 1/8 | | 1400 | L108 | | 630 |
| 1012 | Bass Enterprises | The George Ranch | Shipped 11-4-03 | 3520B | WH64 | 7 1/2 | 6 3/4 | | 1350 | 156EF | FSH 75-26 | 1675 |
| 1007 | EnerVest | Garden Island Bay | 20-Jan-2004 | 3520 TALE | Ram54 | (2) 14 | 9 1/2 | 6 1/2 | 1350 | L156EF | FSH-70-26 | 1674 |
| 1016 | ATP Oil & Gas Corp | Brazos 544 A Freeport, TX | original ship date 1-9-04, actual ship date will be 2-8-04 | 3516 TALE AFR | JGT/4 | (2) 14 1/8 | 12 | 6 3/4 | 1400 | 10BEF | | 630 |
| 1017 | EnerVest | Bay De Chene | original ship date 1-30-04, actual ship date will be 2-15-04 | 3516 TALE AFR | RAM 54 | (2) 6.5 | (2) 5.5 | | 1400 | L156EF | FSH-60-26 | 1340 |
| 1006 | Spinnaker | HI 197A | original ship date 1-6-04, actual ship date will be 2-25-04 | 3508 TALE | JGE/2 | 13 1/2 | 9 1/8 | 5 1/2 | 1400 | L144EF | FSH 50-26 | 1340 |
| 1011 | Stock | Planned, NO EQUIPMENT | | | | | | | | | | 0 |

8/17/2004

## WPS
## Unit Listing

| Unit # | Customer | Lease Name | Customer's Ship Date | Engine | Frame | STAGE 1 CYL BORE | STAGE 2 CYL BORE | STAGE 3 CYL BORE | ENGINE RPM | Cooler | Coupling | BHP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1016 | Stock | Complete Ready to Ship | | First Gas in Inventory | ffsm54 | (2) 9.5 | (2) 9.5 | | 1200 | L126 | FSH 60-28 | 711 |
| 1018 | Stock | Planned, NO ENGINE | | No Engine | JGT/4 | (2) 1E 7/8 | 12 1/2 | 7 7/8 | 1400 | L156EF | FSH-75-26 | 1340 |
| 1019 | Oakhill (OGS) | Thompson | 1-Jun-2004 | 3508 TALE | JGE/2 | 12 1/2 | 9 5/8 | | 1400 | | | 630 |
| 1020 | Oakhill (OGS) | Garrett | 1-Jun-2004 | 3408TA | JGJ/4 | (2) 8 3/8 | (2) 4 5/8 | | 1800 | 108 | | 425 |
| 1021 | Oakhill (OGS) | Lake Cherokee | 1-Jun-2004 | 3408TA | JGJ/4 | (2) 8 3/8 | (2) 5 1/2 | | 1800 | | | 425 |
| 1022 | Oakhill (OGS) | Freeman A-1 | 1-Jun-2004 | 3408TA | JGJ/2 | 11 | 8 3/8 | | 1800 | | | 425 |
| 1023 | Oakhill (OGS) | Williamson | 6/1/2004 - WPS will buy this package from ????? | 3306 | JGA/2 | 7 1/2 | 5 1/2 | | | | · | |
| 1024 | Oakhill (OGS) | Delta | 1-Jun-2004 | 3408TA | JGJ/2 | 11 | 8 3/8 | | 1800 | | | 425 |



# FAX COVER SHEET

1110 Unifab Road, Suite A
New Iberia, LA 70560
Phone: (337) 560 – 7700
☐ Fax: (337) 560 – 7840  Main Office
☐ Fax: (337) 560 – 7841  Accounting

| | | | |
|---|---|---|---|
| To: | Brian Engle | From: | George Reid |
| Company: | WPS | | GHRINV. |
| Fax: | 713 439 7979 | Pages (incl. cover): | 7 |
| Phone: | | Date: | 11-11-04 |
| Re: | | CC: | |

☐ Urgent   X For Review   ☐ Please Comment   ☐ Please Reply   ☐ For Your Information

● Comments:   Per our conversation

***************************************************************************

This message is confidential. It may also contain information that is privileged or otherwise legally exempt from disclosure. If you have received it by mistake please let us know by e-mail immediately and delete it from your system; should also not copy the message nor disclose its contents to any one. No part of this message or attachments may be used or reproduced in any manner whatsoever.

***************************************************************************

Este mensaje es confidencial. Puede contener informacion privada. Si usted lo ha recibido por error, por favor comuniquenoslo inmediatamente via e-mail y tenga la amabilidad de eliminarlo de su sistema; no copiarlo ni divulgar su contenido a persona alguna. Ninguna parte de este mensaje ni de sus adjuntos pueden ser usados o reproducidos de ninguna forma en absoluto.

EXHIBIT "A"
Page 3 of 6

Four (4) Pages of this FAX

relating to WPS & SG Interests

have been OMITTED.




November 11, 2004

GHRINV
Mr. George Reid
P. O. Box 56443
Houston, TX 77256

Re:   WPS, Inc. Rental Fleet

George:

I am including in a separate document specific nomenclature regarding the Company's rental fleet, customer names, contract signing date, application, and etc. for your review.

As we discussed last week, Hanover Compression (HC) and Universal Compression Inc. (UCO) utilize a ten (10) year amortization schedule, and a 25 – 30 year depreciation model, respectively. The 30 year depreciation schedule used by Universal Compression was recently changed from 25 years, which was disclosed in a financial update that occurred within the last twenty-four months. Universal claims that the change more accurately represents the useful life of the product. Based on nominal technological changes in the natural gas engine industry this claim appears to be very accurate. Furthermore, you might recall that prior to my departure from Universal Compression I held the position of director of sales and engineering for Latin America. As director of sales I was responsible for asset management, DCF modeling for new cap-ex, with annual sales of approximately USD$100. MM, and management of rental fleet asset valued in excess of USD$250. MM.

Let me know if I can be of further assistance.


Regards,


Brian R. Engle
Executive Vice-President

Williamson Production Services, Inc. • 1110 Unifab Road, Suite A • New Iberia, LA 70560
Main Office: (337) 560-7700 • Main Fax: (337) 560-7840

Page 5 of 6

EXHIBIT "A"

EXHIBIT "A"

Page 6 of 6

| Unit Contract # | Customer Name | Original Term in Months | Date Contract Signing | Ship Date | Start Date | Finish Date | Months Remaining | Monthly Rental Revenue | Monthly Maint. Revenue | Total Monthly Revenue | Engine Model | Compressor Model | Rated Hp Rating | Service Application |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1001**1001 W & T Oilfshore | | 24 | 8/21/2002 | 8/31/2002 | 8/31/2002 | 7/31/2004 | 0 | $13,650.00 | $1,000.00 | $14,650.00 | G3516TALE | Ariel 5C-VIP-: | 1265 | Offshore |
| 1002**1002 Idle | | | | | | | 0 | | | | 7042 GSI | Ariel 5C-VIP-: | 1478 | |
| 1003**1003 AEDC | | | | | | | 0 | $8,450.00 | $800.00 | $9,250.00 | G3508TALE | Ariel 5C-VIP-: | 630 | Offshore |
| 1004** Masters Resources C | | 24 | 8/12/2003 | 8/15/2003 | 8/28/2003 | 7/28/2005 | 10 | $13,500.00 | $1,500.00 | $15,000.00 | G3516TALE | RAM 54 | 1265 | Inland Water |
| 1005** UNOCAL (see note) | | 12 | 9/16/2003 | 8/17/2003 | 9/10/2003 | 8/19/2004 | 0 | $13,500.00 | $0.00 | $13,500.00 | G3516TALE | RAM 54 | 945 | Inland Water |
| 1006**1012 Spinnaker | | 24 | 3/27/2003 | 5/19/2003 | 5/26/2003 | 4/26/2005 | 5 | $15,400.00 | $1,250.00 | $16,650.00 | G3512TALE | RAM 54 | 1340 | Offshore |
| 1007** Enervest/Garden Islan | | 12 | 11/18/2003 | 2/3/2004 | 3/10/2004 | 2/3/2005 | 4 | $15,300.00 | $1,600.00 | $16,900.00 | G3516TALE | RAM 54 | 1674 | Inland Water |
| 1008**1006 Houston Exploration | | 24 | 12/4/2003 | 2/3/2004 | 3/4/2004 | 2/3/2006 | 16 | $11,000.00 | $0.00 | $11,000.00 | F3520TALE | RAM 52 | 738 | Offshore |
| 1009**1007 Masters Resources | | 24 | 4/1/2003 | 4/1/2003 | 5/8/2003 | 4/8/2005 | 8 | $8,500.00 | $1,000.00 | $9,500.00 | F3521GSI | RAM 54 | 738 | Onshore |
| 1010**1008 Hillcorp | | 12 | 5/1/2003 | 7/10/2003 | 7/8/2003 | 6/8/2005 | 8 | $2,000.00 | $750.00 | $2,750.00 | 3306TAW | HPD2-2 | 145 | Onshore |
| 1011** TBD | | | | 7/10/2003 | 7/10/2003 | 7/10/2004 | 0 | | | | | | | |
| 1012**1011 Bass Enterprises | | 24 | 10/3/2003 | 11/4/2003 | 11/13/2003 | 10/13/2005 | 13 | $15,900.00 | $1,000.00 | $16,900.00 | G3520TALE | WH 64 | 1674 | Onshore |
| 1013**1009 Goodriche Petroleum | | 12 | 8/1/2003 | 8/18/2003 | 8/18/2003 | Monthly | 0 | $8,750.00 | $500.00 | $9,250.00 | G3508TALE | JGE2-3 | 630 | Onshore |
| 1014**1022 GMT | | 12 | 4/28/2004 | 5/3/2004 | 5/7/2004 | 5/7/2005 | 7 | $9,000.00 | $1,400.00 | $10,400.00 | F3521GSI | RAM 54 | 738 | Onshore |
| 1015**1010 Arena Offshore | | 12 | 9/3/2002 | 10/28/2003 | 10/28/2003 | 9/28/2004 | 0 | $9,000.00 | $800.00 | $9,800.00 | G3508TALE | JGE2-2 | 630 | Offshore |
| 1016**1014 ATP | | 24 | 1/30/2004 | 1/15/2004 | 3/22/2004 | 1/15/2006 | 15 | $9,000.00 | $812.00 | $9,812.00 | G3508TALE | RAM 52 | 630 | Offshore |
| 1017**1015 Enervest/Bay DeChen | | 24 | 12/4/2003 | 1/15/2004 | 3/1/2004 | 1/15/2006 | 15 | $15,200.00 | $1,250.00 | $16,450.00 | G3516TALE | JGT4-3 | 1340 | Onshore |
| 1018**NSC Oakhill | | 42 | 9/8/2004 | 11/15/2004 | TBD | 5/15/2008 | 42 | $16,000.00 | $2,270.00 | $18,270.00 | G3520TALE | JGT4-2 | 1674 | Onshore |
| 1019**1016 Oakhill/OGS | | 60 | 6/1/2004 | 6/17/2004 | 6/17/2004 | 6/17/2009 | 54 | $6,050.00 | $1,200.00 | $7,250.00 | G3508TALE | JGE2-2 | 630 | Onshore |
| 1020**1018 Oakhill/OGS | | 60 | 3/10/2004 | 6/24/2004 | 6/24/2004 | 6/24/2009 | 54 | $4,250.00 | $950.00 | $5,200.00 | 3340BTALE | JGE2-2 | 425 | Onshore |
| 1021**1017 Oakhill/OGS | | 60 | 3/10/2004 | 6/18/2004 | 6/18/2004 | 6/18/2009 | 54 | $4,800.00 | $1,000.00 | $5,800.00 | G3408TALE | JGJ4-2 | 425 | Onshore |
| 1022**1019 Oakhill/OGS | | 60 | 3/10/2004 | 6/8/2004 | 6/8/2004 | 6/8/2009 | 54 | $4,250.00 | $950.00 | $5,200.00 | G3408TALE | JGJ2-2 | 425 | Onshore |
| 1023**1021 Oakhill/OGS | | 60 | 3/10/2004 | 6/9/2004 | 6/9/2004 | 6/9/2009 | 54 | $2,000.00 | $700.00 | $2,700.00 | G3306TAW | JGA2-2 | 195 | Onshore |
| 1024**1020 Oakhill/OGS | | 60 | 3/10/2004 | 6/23/2004 | 6/23/2004 | 6/23/2009 | 54 | $4,250.00 | $950.00 | $5,200.00 | G3408TALE | JGJ2-2 | 425 | Onshore |



**WILLIAMSON PRODUCTION SERVICES, INC.**

1110 Unifab Rd.
Suite A
New Iberia, LA 70560
Phone: (337) 560 – 7700
Fax:    (337) 560 – 7841

December 30, 2004

Mr. John B. Berry, Trustee-Purchaser
4265 San Felipe
Suite 1100
Houston, TX 77027

Please be advised that WPS, Inc. hereby rescinds its acceptance of the letter of agreement dated December 30, 2004 between WPS, Inc. and John B. Berry, Trustee-Purchaser. Our understanding of the proposed structure of the transaction was to include a monthly rental payment of $125,000 per month and the transaction was to qualify as an "off balance sheet" transaction. We feel that this was made clear to all parties prior to the issuance of the letter. We are willing to enter into a discussion of a transaction with this structure. Unless we can negotiate on these issues, we cannot move forward with this transaction. Your check for $1,000 is attached to this letter.

Please note that this letter is being forwarded within the three day rescission period.

Thanks,

Scott Thomas
Chief Financial Officer
WPS, Inc.

EXHIBIT "B"

EXHIBIT "B"