United States Courts
Southern District of Texas
FILED

APR 1 4 2006

Michael N. Milby, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

JOHN B. BERRY, TRUSTEE          §
Plaintiff                                      §
                                               §
                                               §
V.                                             §          CIVIL ACTION NO. H-05-1101
                                               §                    JURY
                                               §
WPS, INC., ET AL                               §
Defendants                                     §

### DEFENDANT, WPS, INC.'S ANSWER TO PLAINTIFF'S
### FIRST AMENDED PETITION AND DEFENDANT, WPS, INC.'S
### FIRST AMENDED COUNTERSUIT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant, WPS, Inc., (hereinafter "Defendant"), and pursuant to Rule

15 of the Federal Rules of Civil Procedure and this Court's Order of April 4, 2006, files this, its

Answer to Plaintiff's First Amended Petition for Suit on [alleged] Written Contract (hereinafter,

Fist Amended Petition), and its First Amended Countersuit, and in support thereof would show

unto the Court the following:

I.

RULE 12(b)(6) MOTION

1.01     Defendant, WPS, Inc., files this answer after filing its 12(b)(6) motion previously

filed in this matter.  In Defendant's 12(b)(6) motion, Defendant asserted that the Plaintiff has

failed to state a claim upon which relief can be granted in Plaintiff's pleadings.

II.

LEAVE OF COURT

2.01   Leave of Court is not required for Defendant to file this Amended Answer and counterclaim because of this Court's Order of April 4, 2006, permitting Plaintiff's filing of an Amended Petition.

III.

AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED PETITION

3.01   Defendant is neither required to admit or deny the allegations set forth in Paragraph 1 of Plaintiff's First Amended Petition.

3.02   Plaintiff fails to identify the person(s) or entity(ies) for whom he contends he is acting as Trustee and Defendant denies that Plaintiff has the capacity to sue as a "Trustee". Defendant further addresses this matter in its Specific Negative Averment set froth in Part V of this pleading.   Defendant is without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 2A of Plaintiff's First Amended Petition.

3.03   Defendant denies that Seth Williamson is the proper agent for process of Defendant, WPS, Inc. and further denies that service upon Defendant, WPS, Inc., can be affected by personal delivery.

3.04   With respect to Paragraph 4 of the First Count of Plaintiff's First Amended Petition, Defendant denies that a document entitled or constituting a "Sale and Leaseback Agreement" is attached to Plaintiff's First Amended Petition as Exhibit "A".  Defendant further denies that a "Sale and Leaseback Agreement" was ever executed by this Defendant or any other Party in this suit.  Furthermore, Defendant denies all other allegations set forth in Paragraph 4 of the First Count of Plaintiff's First Amended Petition including the allegation that the document

entitled "Letter of Agreement" had sufficient consideration, that it was performable as written, that it was breached in any manner or form by Defendant, and that it would have closed. Defendant further denies that the document attached to Plaintiff's First Amended Petition entitled "Letter of Agreement" constitutes an enforceable contract or agreement.

3.05    Defendant denies that Plaintiff is entitled to the relief sought by Plaintiff in Paragraph 5 of the First Count of Plaintiff's First Amended Petition.

3.06    Defendant denies the allegations set forth in Paragraph 6 of the First Count of Plaintiff's Original Petition.   Defendant further denies that Plaintiff is entitled to the relief requested in Paragraph 6 of Plaintiff's First Amended Petition.

3.07    Defendant denies the allegations in Paragraph 7 of the First Count of Plaintiff's First Amended Petition.   Defendant further denies that all conditions precedent have been performed prior to the filing of this suit.   Defendant denies that there was ever an enforceable agreement between Defendant and Plaintiff.   Among there reasons that there is no enforceable contract between Plaintiff and Defendant are as follows:

- There was fraud in the inception in the misrepresentation that Plaintiff was the trustee of a trust with almost a billion dollars or a $100 million dollar spinoff trust or fund of assets that was the source of funding for the proposed sale/leaseback, and also in the fact that George Reid held himself out as being the manager of that $100 million dollar spinoff trust or fund from which the funds were to come and that any sales leaseback transaction would be made at his discretion.

- There was no meeting of the minds;

- There was no consideration given to Defendant;

- The alleged contract in question was illusory;

- The alleged contract in question was potestative;

- There was no mutual assent;

- There was no mutuality of obligation;

- It is not clear as to what was being offered under the alleged contract;

- That Plaintiff lacked the capacity to enter into the alleged contract as there was no valid trust in existence for him to act on behalf of or in a representative capacity;

- There were material terms to the negotiations between the parties that were absent from the purported contract including but not limited to the following:

  - provisions regarding insurance requirements during the proposed lease and on renewals or relets;
  - provisions to address non-routine maintenance of the equipment;
  - the source of funding for the replacement of component parts;
  - the provisions regarding accounting for the transaction;
  - the provisions making the proposed transaction an off balance sheet transaction;
  - risk of loss provisions regarding responsibility for loss or destruction or damage of the equipment or property;
  - provisions regarding taxes and fees;
  - a provisions regarding the manner in which liens, mortgages, security agreements, and similar existing encumbrances on the equipment would be addressed;
  - provisions governing claims and lawsuits by third parties; and
  - other reasons set forth in this pleading.

The conditions precedent not performed by Plaintiff also include failure to plead and prove notice as required by Chapter 38 of the Texas Civil Practice and Remedies Code.

3.08    Defendant denies the allegations set forth in Paragraph 8 of the First Count of Plaintiff's First Amended Petition, and further denies that Plaintiff is entitled to the relief requested therein.

3.09    Defendant denies the allegations in the unnumbered sentence following the caption entitled "Second Count" of Plaintiff's First Amended Petition.

3.10    Defendant denies the allegations in Paragraph 1 of the "Second Count" of Plaintiff's First Amended Petition and further denies that Plaintiff is entitled to the relief sought therein.

3.11    Defendant denies the allegations in Paragraph 2 of the "Second Count" of Plaintiff's First Amended Petition.

3.12.    Defendant denies the allegations in Paragraph 3 of the "Second Count" of Plaintiff's First Amended Petition.

3.13.    Defendant denies the allegations in Paragraph 4 of the "Second Count" of Plaintiff's First Amended Petition.

3.14.    Defendant denies the allegations in Paragraph 5 of the "Second Count" of Plaintiff's First Amended Petition.

3.15.    Defendant denies the allegations in Paragraph 6 of the "Second Count" of Plaintiff's First Amended Petition.

3.16.    Defendant denies the allegations in Paragraph 7 of the "Second Count" of Plaintiff's First Amended Petition.

3.17    The allegations set forth in Paragraph 8 of the "Second Count" of Plaintiff's Fist Amended Petition pertain to allegations regarding damages.  Defendant is not required to admit or deny the allegations contained in these Paragraph 8 and the following subparagraphs pursuant to Rule 8(b) of the Federal Rules of Civil Procedure.  Further Defendant denies Plaintiff is entitled to the relief requested therein.

3.18    Defendant would further plead that the document entitled "Letter of Agreement" attached to Plaintiff's Original Petition does not constitute a contract that is enforceable under the applicable law.

3.19    Defendant would further show that the document entitled "Letter of Agreement" lacks terms necessary to make it an enforceable contract or agreement.  Defendant further denies that there was mutual assent necessary to create an enforceable contract or agreement.

3.20    To obtain the injunctive relief sought by Plaintiff in the "Second Count" of his Amended Petition, Plaintiff must show, among other things:

- Plaintiff is substantially likely to succeed on the merits of its claim;
- The court's failure to issue the injunction poses a substantial threat of irreparable injury to Plaintiff;
- The threatened injury to Plaintiff outweighs any damage that the injunction's issuance might cause to the opposing party; and,
- The injunction's issuance will not undermine the public interest.

Defendant denies that Plaintiff can prove any of these material elements and demands strict proof thereof.


IV.

AFFIRMATIVE DEFENSES

4.01    Defendant contends that Plaintiff failed to mitigate his damages, if any there are. Therefore, Plaintiff's damages, if any, should be reduced by the amount attributable to Plaintiff's failure to mitigate damages.

4.02    Plaintiff's claims are barred under the applicable statutes of fraud including the statutes of fraud set forth in Article 2 of the Uniform Commercial Code and in Chapter 28 of the Texas Business and Commerce Code , and the Texas Trust Code (requiring that trusts be in writing) and/or statutes of fraud recognized under Louisiana law.

4.03    The purported "contract" upon which Plaintiff's case is based is unenforceable because it is illusory and potestative. For example, Paragraph 5 of the document entitled Letter of Agreement states in relevant part:

> This offer is subject to Purchaser's review in verification to Purchaser's ***sole satisfaction*** of any and all property, data, and facts including and without limitation of all equipment property for this transaction as described on the attachment Exhibit "A"… (emphasis added).

As worded, Plaintiff was not required to do anything under the so called "Letter of Agreement." As such there was no mutuality of obligation, providing further grounds as to why same is unenforceable.

4.04    While Defendant contends the Plaintiff bears the burden of proof in proving that the alleged contract had all material terms, and Defendant denies that the alleged contract did.  In the event the court finds that such a defense is an affirmative defense, Defendant would show there were material terms to the negotiations between the parties that were absent from the alleged contract including but not limited to the following:

- provisions regarding insurance requirements during the proposed lease and on renewals or relets;
- provisions to address non-routine maintenance;
- the source of funding for the replacement of component parts;
- the provisions regarding accounting for the transaction;
- risk of loss provisions regarding responsibility for loss or destruction or damage of the equipment or property;
- provisions regarding taxes and fees;
- a provisions regarding the manner in which liens,    mortgages, security agreements, and similar existing encumbrances on the equipment would be addressed;
- provisions governing claims and lawsuits by third parties;

4.05    Defendant would show that Plaintiff and its agents and representatives made numerous misrepresentations about the nature, terms, meaning, and effect of the document entitled "Letter of Agreement" and the terms contained therein.  Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby.  The representations made by Plaintiff and/or its agents and representatives include

representations made before the document entitled "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing". Before the document entitled "Letter of Agreement" was signed, the parties engaged in discussions about maintenance and other important matters including the way the proposed transaction would be carried on financial statements, and based on representations, WPS believed they would be contained in the final form of the agreement. However, the day after the document entitled "Letter of Agreement" was signed, it was revealed that maintenance provisions would not be in the contract and other essential provisions would not be spelled out until the final agreement was delivered by Plaintiff. Further, during negotiations, Plaintiff's agents and representatives directly, indirectly and/or by continued implication represented that John Berry was the trustee of a $100 Million spinoff of a billion dollar trust, to which Defendant had processed an application for a.$25 million loan facility to do a comprehensive refinance of its debt and operating capital, which application was processed through Merrill Lynch which ostensibly acted as the trust's financial advisor or manager of the Trust's investments. In this application, CapNet Securities acting as broker/consultant represented by George Woods who was assisted by George Reid, who was purportedly related to J. Robert Imber, Jr. who was purported to be the son-in-law of the settlor of the billion dollar trust that was to fund the loan facility being requested by WPS. and J. Robert Imber, Jr., worked in Merrill Lynch's Global Private-client Group. The WPS $25,000,000 loan application was denied by Merrill Lynch, and Defendant was advised by George Reid that the billion dollar trust was dissatisfied with the its level of returns on the investments that they with Merrill Lynch and way Merrill Lynch handled the WPS loan, which would have given the trust a higher yield, and, as a result of the denial of WPS's  application, the trust was going to pull $100 million out of Merrill Lynch and set up a

separate fund that George Reid said he would manage.  George Reid then became disassociated with CapNet Securities and George Wood, and WPS was led to believe that the sale/leaseback of its compression units was going to be funded by this $100 million fund managed by George Reid, and that funding would be immediate once WPS completed the documentation that would fund the proposed transaction, of which the document entitled Letter of Agreement was held out as a letter of intent on the general terms necessary to keep the approval process moving. Defendant relied on these representations in signing the document entitled "Letter of Agreement" and was damaged thereby.  Discovery responses have revealed that Plaintiff is not the trustee of such a trust and that Plaintiff intended to fund the transaction by soliciting lenders to fund same, with the trustee <u>acting as a broker</u>, not a principal.  Plaintiff perpetuated the misrepresentation of being a Trustee by the execution of a document styled "AFFIDAVIT OF BENEFICIAL OWNERSHIP AGREEMENT OF JOHN B. BERRY also known as TAISC, INC."  undated but having attached thereto a notarial acknowledgement dated January 19, 2005,  which date is after the date of the document entitled Letter of Agreement.

4.06.   The injunctive relief sought by Plaintiff is contrary to public policy.  Public policy prohibits the granting of insurance proceeds to persons lacking an insurable interest.  Here, Plaintiff has no interest in the equipment for which he seeks insurance proceeds.  Furthermore, if the equipment was damaged, Plaintiff has not been financially harmed by any such damage. Furthermore, public policy calls for the productive use of property and not waste.  In the instant case, Plaintiff is asking for extraordinary relief that could, if the relief is granted, require damaged equipment to go unrepaired and other equipment to remain tied up in this litigation instead of being used for the production of oil. Further, providing the relief requested by Plaintiff

of prohibiting the sale, transfer or mortgaging of the equipment could prevent WPS from being able to fund its operations and cause the equipment to lay idle.

4.07    Plaintiff's alleged claims and the alleged damages and relief sought by Plaintiff, including Plaintiff's request for injunctive relief, are barred under the doctrine of "unclean hands." Defendant would show that Plaintiff and its agents and representatives made numerous misrepresentations about the nature, terms, meaning, and effect of the document entitled "Letter of Agreement" and the terms contained therein.  Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby.   The representations made by Plaintiff and/or its agents and representatives include representations made before the document entitled "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing".  Before the document entitled "Letter of Agreement" was signed, the parties engaged in discussions about maintenance and other important matters including the way the proposed transaction would be carried on financial statements, and based on representations, WPS believed they would be contained in the final form of the agreement.  However, the day after the document entitled "Letter of Agreement" was signed, it was revealed that maintenance provisions would not be in the contract and other essential provisions would not be spelled out until the final agreement was delivered by Plaintiff.  Further, during negotiations, Plaintiff's agents and representatives directly, indirectly and/or by continued implication represented that John Berry was the trustee of a $100 Million spinoff of a billion dollar trust, to which Defendant had processed an application for a.$25 million loan facility to do a comprehensive refinance of its debt and operating capital, which application was processed through Merrill Lynch which ostensibly acted as the trust's financial advisor or manager of the Trust's investments.  In this

application, CapNet Securities acting as broker/consultant represented by George Woods who was assisted by George Reid, who was purportedly related to J. Robert Imber, Jr. who was purported to be the son-in-law of the settlor of the billion dollar trust that was to fund the loan facility being requested by WPS. and J. Robert Imber, Jr., worked in Merrill Lynch's Global Private-client Group. The WPS $25,000,000 loan application was denied by Merrill Lynch, and Defendant was advised by George Reid that the billion dollar trust was dissatisfied with the its level of returns on the investments that they with Merrill Lynch and way Merrill Lynch handled the WPS loan, which would have given the trust a higher yield, and, as a result of the denial of WPS's application, the trust was going to pull $100 million out of Merrill Lynch and set up a separate fund that George Reid said he would manage. George Reid then became disassociated with CapNet Securities and George Wood, and WPS was led to believe that the sale/leaseback of its compression units was going to be funded by this $100 million fund managed by George Reid, and that funding would be immediate once WPS completed the documentation that would fund the proposed transaction, of which the document entitled Letter of Agreement was held out as a letter of intent on the general terms necessary to keep the approval process moving. Defendant relied on these representations in signing the document entitled "Letter of Agreement" and was damaged thereby. Discovery responses have revealed that Plaintiff is not the trustee of such a trust and that Plaintiff intended to fund the transaction by soliciting lenders to fund same, with the trustee acting as a broker, not a principal. Plaintiff perpetuated the misrepresentation of being a Trustee by the execution of a document styled "AFFIDAVIT OF BENEFICIAL OWNERSHIP AGREEMENT OF JOHN B. BERRY also known as TAISC, INC." undated but having attached thereto a notarial acknowledgement dated January 19, 2005, which date is after the date of the document entitled Letter of Agreement.

4.08    The injunctive relief sought by Plaintiff runs counter to the rule that a defendant cannot be enjoined from activities which are lawful and are a proper exercise of his rights.  In the case at bar, all of.  WPS clearly holds an insurable interest in the equipment and has every right to require its lessees to insure the equipment, and name it as an additional insured and its lenders as "loss payees."  If there was damage to the equipment, the insurance proceeds would be first applied to repair the equipment if repairable, and if a total loss and if insurance proceeds were paid for this total loss, WPS's lender would be acting within its rights in receiving said proceeds and applying the proceeds to loans secured by the equipment, and the net proceeds, if any, would be used by WPS as it deems proper, or as its lender has directed.  Plaintiff did not advance any money to acquire this equipment and has no security interest in the equipment or the insurance proceeds and therefore should not be allowed to require the escrowing of said funds.

4.09    Defendant asserts the defenses of ripeness and mootness to the relief sought by Plaintiff. Defendant is not aware of any equipment being damaged by the hurricanes and is similarly unaware of, and does not believe that, any insurance claims were made or payments from insurers pertaining to the equipment.  Furthermore, all of the equipment in question has been sold and the proceeds therefrom applied to the related debt in Defendant's operations.

4.10    As further defense, Defendant would show that the alleged contract is void because of mistake of fact and law.

4.11    As further defense, Defendant would show that Plaintiff is estopped from insisting on compliance with the alleged contract because of Plaintiff's failure and refusal to place provisions in the alleged contract that were bargained for by the parties.

4.12    Plaintiff failed to satisfy provisions required of lenders under both Texas and Louisiana law, including LA. REV. STAT. ANN. § 51:1405 ET SEQ.

4.13.    Plaintiff's requested injunctive relief is unconstitutionally overly broad and places an undue burden on Defendant. Further, the relief requested by Plaintiff as described in his pleadings and proposed order is vague and ambiguous.  Further, the relief requested would alter the status quo and would affectively grant relief to the Plaintiff without requiring proof of Plaintiff's entitlement to same in fact or as a matter of law, thereby depriving WPS of its property without procedural or sustentative due process.

4.14.    Defendant denies that there is a valid trust for which Plaintiff appears to be acting as trustee.  As such, Plaintiff is precluded from recovery.

4.15.    Defendant denies that Plaintiff has the standing to bring this suit as there is no valid trust for which he is acting.

4.16.    Defendant denies that Plaintiff had the capacity to enter into an alleged contract as trustee as there is no enforceable trust as required by Texas law.

4.17.    While denying that the document entitled "Letter of Agreement" constituted an enforceable contract or agreement, Defendant's letter of December 30, 2004, terminated any negotiations, discussions, or alleged or purported obligations, if any (which Defendant denies existed to begin with). Further, said letter predated the document entitled "AFFIDAVIT OF BENEFICIAL OWNERSHIP AGREEMENT OF JOHN B. BERRY" thereby making it entirely ineffective, if it had any effect at all.

4.18.    Further, because Plaintiff lacked capacity to serve as trustee and because there was no trust at the time the alleged "Letter of Agreement" was allegedly signed, and because there were no assets with which to fund the alleged proposed transaction, it is unenforceable as there was no consideration and there was no mutuality of obligation.

V.

SPECIFIC NEGATIVE AVERMENTS

5.01    Plaintiff, John B. Berry, identifies himself in his First Amended Petition as "Trustee", but fails to identify the entity or person for whom he is allegedly serving as trustee. By definition, a trustee must serve as a trustee for some other entity or person, and that person or entity should be identified in Plaintiff's pleadings.  To that extent, Defendant denies that John B. Berry is a "Trustee" and has the right to sue in such capacity.

VI.

COUNTERSUIT

A. FACTS

6.01.    Defendant would show that Plaintiff and its agents and representatives made numerous misrepresentations about the nature, terms, meaning, and effect of the document entitled "Letter of Agreement" and the terms contained therein.  Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby.  The representations made by Plaintiff and/or its agents and representatives include representations made before the document entitled "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing".  Before the document entitled "Letter of Agreement" was signed, the parties engaged in discussions about maintenance and other important matters including the way the proposed transaction would be carried on financial statements, and based on representations, WPS believed they would be contained in the final form of the agreement.  However, the day after the document entitled "Letter of Agreement" was signed, it was revealed that maintenance

provisions would not be in the contract and other essential provisions would not be spelled out until the final agreement was delivered by Plaintiff.  Further, during negotiations, Plaintiff's agents and representatives directly, indirectly and/or by continued implication represented that John Berry was the trustee of a $100 Million spinoff of a billion dollar trust, to which Defendant had processed an application for a.$25 million loan facility to do a comprehensive refinance of its debt and operating capital, which application was processed through Merrill Lynch which ostensibly acted as the trust's financial advisor or manager of the Trust's investments.  In this application, CapNet Securities acting as broker/consultant represented by George Woods who was assisted by George Reid, who was purportedly related to J. Robert Imber, Jr. who was purported to be the son-in-law of the settlor of the billion dollar trust that was to fund the loan facility being requested by WPS. and J. Robert Imber, Jr., worked in Merrill Lynch's Global Private-client Group.  The WPS $25,000,000 loan application was denied by Merrill Lynch, and Defendant was advised by George Reid that the billion dollar trust was dissatisfied with the its level of returns on the investments that they with Merrill Lynch and way Merrill Lynch handled the WPS loan, which would have given the trust a higher yield, and, as a result of the denial of WPS's  application, the trust was going to pull $100 million out of Merrill Lynch and set up a separate fund that George Reid said he would manage.  George Reid then became disassociated with CapNet Securities and George Wood, and WPS was led to believe that the sale/leaseback of its compression units was going to be funded by this $100 million fund managed by George Reid, and that funding would be immediate once WPS completed the documentation that would fund the proposed transaction, of which the document entitled Letter of Agreement was held out as a letter of intent on the general terms necessary to keep the approval process moving. Defendant relied on these representations in signing the document entitled "Letter of Agreement"

and was damaged thereby. Discovery responses have revealed that Plaintiff is not the trustee of such a trust and that Plaintiff intended to fund the transaction by soliciting lenders to fund same, with the trustee <u>acting as a broker</u>, not a principal. Plaintiff perpetuated the misrepresentation of being a Trustee by the execution of a document styled "AFFIDAVIT OF BENEFICIAL OWNERSHIP AGREEMENT OF JOHN B. BERRY also known as TAISC, INC." undated but having attached thereto a notarial acknowledgement dated January 19, 2005, which date is after the date of the document entitled Letter of Agreement.

6.02    Plaintiff, by seeking the injunctive relief sought in its First Amended Petition is attempting to damage Defendant's business and to interfere with existing and prospective contractual relations. An injunction against the sale, mortgage or encumbrance of its equipment would mean that Defendant could build no new gas compression units that are individually financed whether for resale or for rent because a notice of pending litigation noticing the attachment of the injunctive relief to insurance proceeds would discourage lenders and buyers or lessees and/or would immediately violate the provisions of most loan and lease documents. Further, if the future insurance proceeds paid for future damage to rental units is required under the relief requested to be placed in escrow instead of used to repair or replace equipment or to pay down lenders, no lessee or lender will rent or finance units. Further, Defendant uses lines of credit to conduct most of its operations, and these lines and its loans are regulated by loan agreements that have financial covenants that would be breached by the placement of an injunction that the Plaintiff has requested to effect Defendant's equipment. Such a breach could cause Defendant's lenders to freeze Defendant's lines of credit making the conduct of operations impossible.

B.

FIRST CAUSE OF ACTION

VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT.

6.03.   Defendant would also show that the conduct described in the preceding two paragraphs constitute deceptive trade practices as defined under the Deceptive Trade Practices Act set forth in Section 17.45 *et. seq.* of the Texas Business & Commerce Code.   Defendant would also show that the conduct of Plaintiff and his agents and representatives was committed knowingly as the term is defined under the Deceptive Trade Practices Act.

6.04.   Among the Deceptive Trade Practices undertaken by Plaintiff and its agents and representatives included the making of numerous misrepresentations about the nature, terms, meaning, and effect of the document entitled "Letter of Agreement" and the terms contained therein.   Defendant relied on these misrepresentations on signing the document entitled "Letter of Agreement" and was damaged thereby.   The representations made by Plaintiff and/or its agents and representatives include representations made before the "Letter of Agreement" was signed, at which time the document was described to WPS as something to "keep the process of negotiations ongoing".   Further conduct, representations, acts and omissions that are made the basis of this counterclaim are set forth in Paragraph 6.01 above which Defendant incorporates by reference the same as if set forth in this paragraph verbatim.

6.05.   Said conduct by Plaintiff and his agents, employees, and representatives violated provisions of the Deceptive Trade Practices Act, including Sections 17.46 (a) (b) (1)(2)(3)(5)(12)(14)of the Act.

6.06.   Defendant acted on these representations described above to its detriment.   Said conduct described in the foregoing paragraphs and the violations of the Deceptive Trade Practices Act was a producing cause of economic damages sustained by Defendant.

6.07. Defendant would also show that the conduct undertaken by Plaintiff and his agents and representatives was an unconscionable action or course of action and is a violation of the Deceptive Trade Practices Act.

## C.

## SECOND CAUSE OF ACTION

## FRAUD

6.08   Further, as demonstrated by the acts and omissions set forth above, Plaintiff is liable to Defendant for fraud.   Plaintiff made material misrepresentations of fact, including those outlined above in paragraph 6.01, and also in to the following ways :

- Plaintiff represented itself as the trustee of a trust with assets of almost one billion dollars that was to be the source of funding,

- Plaintiff represented that the proposed transaction has characteristics and attributes it did not have,

- Plaintiff or his agents held Plaintiff out as representing a principal (the trust) having the ability, the means, and the intent to fund the transaction when it did not,

- By allowing Defendant to be deceived by the nature and source of the funds,

- Further, George Reid held himself out as being the manager of the $100 million dollar spinoff trust or fund from which funds were to come and that any sales leaseback transaction would be made at his discretion.

- Describing the document entitled "Letter of Agreement" as something to "keep the process of negotiations ongoing".

- Representing that terms governing maintenance and other important matters including the way the proposed transaction would be carried on financial statements, would be contained in the final form of the agreement.  However, the

day after the document entitled "Letter of Agreement" was signed, it was revealed that maintenance provisions would not be in the contract and other essential provisions would not be spelled out until the final agreement was delivered by Plaintiff.

- Plaintiff's agents and representatives directly, indirectly and/or by continued implication represented that John Berry was the trustee of a $100 Million spinoff of a billion dollar trust, to which Defendant had processed an application for a.$25 million loan facility to do a comprehensive refinance of its debt and operating capital, which application was processed through Merrill Lynch which obstensibly acted as the trust's financial advisor or manager of the Trust's investments.  In this application, CapNet Securities acting as broker/consultant represented by George Woods who was assisted by George Reid, who was purportedly related to J. Robert Imber, Jr. who was purported to be the son-in-law of the settlor of the billion dollar trust that was to fund the loan facility being requested by WPS. and  J. Robert Imber, Jr., worked in Merrill Lynch's Global Private-client Group.  The WPS $25,000,000 loan application was denied by Merrill Lynch, and Defendant was advised by George Reid that the billion dollar trust was dissatisfied with the its level of returns on the investments that they with Merrill Lynch and way Merrill Lynch handled the WPS loan, which would have given the trust a higher yield, and, as a result of the denial of WPS's  application, the trust was going to pull $100 million out of Merrill Lynch and set up a separate fund that George Reid said he would manage.  George Reid then became disassociated with CapNet Securities and George Wood, and WPS was led to believe that the sale/leaseback of its compression units was going to be funded by this $100 million fund managed by George Reid, and that funding would be immediate once WPS completed the documentation that would fund the proposed transaction, of which the Letter of Agreement was held out as a letter of intent on the general terms necessary to keep the approval process moving.

- Discovery responses have revealed that Plaintiff is not the trustee of such a trust and that Plaintiff intended to fund the transaction by soliciting lenders to fund same, with the trustee acting as a broker, not a principal.

- Plaintiff perpetuated the misrepresentation of being a Trustee by the execution of a document styled "AFFIDAVIT OF BENEFICIAL OWNERSHIP AGREEMENT OF JOHN B. BERRY also known as TAISC, INC." , undated but having attached thereto a notarial acknowledgement dated January 19, 2005, which date is after the date of the document entitled Letter of Agreement.

Defendant acted in reliance on and changed its position based on these misrepresentations to its detriment and was damaged thereby.

D.

THIRD CAUSE OF ACTION

TORTIOUS INTERFENRENCE WITH CONTRACTUAL RELATIONS

6.09    Plaintiff has been placed on notice of the impact Plaintiffs' request for injunctive relief will have on Defendant's business.  Plaintiff is also aware that Defendant has entered into contracts with lending institutions for the financing of equipment and with third parties.  Plaintiff is willfully attempting to interfere with these contractual relationships which will clearly damage Defendant.  Therefore, Plaintiff is liable for tortuous interference with contractual relations, and to the extent that these contractual relations have not come to fruition – Plaintiff is liable for tortious interference with  contractual relations.

E.

DAMAGES

6.10    As damages, Defendant seeks compensatory damages, damages for attorney's fees it has incurred in defending this case, damages for injury to Defendant's reputation and standing, damages to injuries to Defendant's business and business relations, exemplary damages, damages available under the Deceptive Trade Practices Act, including treble damage for Plaintiff's knowing conduct, attorneys fees, and all other relief available by law.

WHEREFORE, PREMISES CONSIDERED, Defendant, WPS, Inc., prays that upon final trial of this suit that Plaintiff take nothing by this action, that it recover costs of court and attorney's fees, that this Defendant receive such other and further relief, general and special, at law and equity to which it is entitled.

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
Post Office Box 4915
Beaumont, Texas 77704
(409) 654-6700 – Telephone
(409) 896-2115 – Telecopier

**James R. Old, Jr.**
**Attorney In Charge**
State Bar No. 15242500
Southern Dist. No. 10751
**James W. Henges**
State Bar No. 00790860
Southern Dist. No. 433426

**ATTORNEYS FOR DEFENDANT, WPS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the 13th day of April, 2006.

Mr. Thomas G. Bousquet
BOUSQUET & JACKSON, P.C.
5718 Westheimer #700
Houston, Texas  77057

**VIA CERTIFIED MAIL, RRR**

**James W. Henges**