UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN B. BERRY, TRUSTEE | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-1101 |
| | § | JURY |
| WPS, INC., ET AL | § | |
| Defendants | § | |

## ORDER

The Court, after due and proper notice to all parties, considered **DEFENDANT, WPS, INC.'S** Motion for Summary Judgment against Plaintiff, John B. Berry, Trustee, and the Court, after reviewing the pleadings and the evidence and the Motion for Summary Judgment, finds the Motion is well-founded and that Summary Judgment should be **GRANTED**; it is, therefore,

**ORDERED**, **ADJUDGED**, and **DECREED**, that Plaintiff takes nothing on all claims and causes of action asserted by Plaintiff against **WPS, INC.** It is further,

**ORDERED**, that all court costs of **WPS, INC.** are taxed against Plaintiff, John B. Berry, Trustee.

**SIGNED** this _____ day of _____, 2006.


_____
**JUDGE PRESIDING**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States Bankruptcy Court
Southern District of Texas
FILED

AUG 1 - 2006

Michael N. Milby, Clerk

| | | |
|---|---|---|
| JOHN B. BERRY, TRUSTEE | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-1101 |
| | § | JURY |
| WPS, INC., ET AL | § | |
| Defendants | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, WPS, INC., (Referred to herein as "WPS"), and pursuant to

the Federal Rules of Civil Procedure, including Rule 56 of the Federal Rules of Civil Procedure,

files this Motion for Summary Judgment, and in support thereof, would show unto the Court the

following:

I.

### INTRODUCTION

Plaintiff brought this case alleging breach or anticipatory breach of a document entitled

"Letter of Agreement." (Paragraph 4, Plaintiff's First Amended Petition; Appendix A; and

Plaintiff's First Amended Answers to Interrogatories Nos. 5, 6, and 7; Appendix B).  WPS

denies that the document entitled "Letter of Agreement" constitutes a valid and enforceable

contract for a number of reasons, including the fact that material terms (including price and

quantity) were still being negotiated, there was no mutuality of obligation, and no mutual assent.[1]

Further, this document was described to WPS' officers as merely "something to keep the

---

[1] In addition to the grounds for summary judgment set forth herein, Defendant contends that the document entitled "Letter of Agreement" is unenforceable for a number of other reasons, including the fact that it is vitiated by fraud. Specifically, WPS contends that a number of misrepresentations were made to it by Defendant and by George Reid regarding the effect of the document, the funding sources, and other material matters.  These and other defenses are set forth in WPS pleadings on file in this matter.

negotiations going" and not the final framework of the possible transaction that the parties were negotiating.   Also, during negotiations, WPS was led to believe that the alleged proposed transaction was to be funded by a significant trust.  Discovery in this case has proven that this was not so.

WPS is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  A party is entitled to summary judgment if it proves that there is no genuine issue of material fact as to a material issue on which the plaintiff bears the burden of proof.  *Celotex Corp. v.Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).  Similarly, if a defendant can show there is no issue as to material fact with respect to the elements of its affirmative defense, it is entitled to a judgment as a matter of law.  *Crescent Towing & Salvage Co v. MV Anax*, 40 F3d 741, 744 (5th Cir. 1994).  Defendant would show it is entitled to summary judgment on the following grounds:

- The document entitled "Letter of Agreement" is not a contract because it does not set forth material terms with requisite particularity, including price and quantity which are essential elements which must be proven by Plaintiff;

- There was no meeting of the minds or mutual assent among the parties when the document entitled "Letter of Agreement" was signed which is an essential element to be proven by Plaintiff;

- There was no mutuality of obligation supporting the document entitled "Letter of Agreement" which is an essential element which must be proven by Plaintiff;

- There is no issue of material fact that would negate defendant's defense of its December 30 letter from Scott Thomas which ended negotiations, and  purported obligations (if any) under the document Entitled "Letter of Agreement.";

- There is no issue of material fact that would negate the defense of unilateral or mutual mistake.

- There is no fact issue that would negate the defense regarding trust issues and that the alleged "Purchaser" in the document entitled "Letter of Agreement" did not exist.

II.

SUMMARY JUDGMENT PROOF.

In support of this Motion, Defendant relies on evidence contained in the Appendix of this motion which Defendant incorporates by reference the same as if set forth herein verbatim, including the following evidence:

- Plaintiff's First Amended Petition for Suit on
  Written Contract                                          Appendix A
- Plaintiff's First Amended Objections
  and Answers to Defendant's First Interrogatories           Appendix B
- Condensed Copy of Deposition of Seth Williamson            Appendix C
- Condensed Copy of Deposition of Scott Thomas               Appendix D
- Condensed Copy of Deposition of John B. Berry              Appendix E
- Condensed Copy of Deposition of George H. Reid             Appendix F
- Document Entitled "Letter of Agreement"                    Appendix G
- Copy of December 30, 2004, letter from
  Scott Thomas                                               Appendix H
- Document Entitled "Affidavit of Beneficial                 Appendix I
  Ownership of John B. Berry also known as
  TAISC, Inc."
- Document entitled "Purchase and Sale                       Appendix J
  Agreement"
- Affidavit of Scott Thomas                                  Appendix M
- Document entitled "Consulting Services Agreement"          Appendix N
- Affidavit of Brian Engle                                   Appendix O

III.

TESTIMONY SUPPORTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

WPS constructs natural gas compressors used in oilfields.  (Deposition of Seth Williamson, Page 62; Lines 1-5, Appendix C).  Before the events giving rise to this lawsuit, WPS built a rental fleet of compressors and leased these compressors to various third parties – usually oil exploration companies. (*See,* Deposition of Scott Thomas, Pages 34 - 35; Appendix D).  However, as the number of compressors in the fleet grew, it became difficult for WPS to

finance the fleet. *Id.* For that reason, WPS began to seek out means through which to obtain financing for the compressors so that WPS would not be saddled with certain types of debt. *Id.*

In 2004, the President of WPS, Seth Williamson, and the Secretary of WPS, Scott Thomas, became acquainted with Mr. George Reid through their primary financial consultant, George Wood of CapNet Securities. (Deposition of Seth Williamson, Page 40, Lines 4-5, Appendix C). Mr. Reid held himself out as being a financial consultant who could secure financing for WPS. In July of 2004, Mr. Reid contends he entered into a Consulting Agreement with WPS. (Deposition of George Reid, Page 139-140, Appendix F). Among Mr. Reid's purported obligations under this so called "Consulting Services Agreement" was to "locate potential financing/lending from banking companies for WPS, Inc." (Paragraph 1 of alleged "Consulting Services Agreement," Appendix N). Although Mr. Reid was deemed a "consultant", he also worked it out so he could possibly become a principal on Mr. Berry's side of the alleged proposed transaction discussed further herein. (Deposition of George Reid, Page 91, Lines 5-11, Appendix F). According to Mr. Reid, his role was to bring WPS to the transaction. (Deposition of George Reid, Page 91, Lines 18, Appendix F).

In November of 2004, Mr. Reid and Mr. Berry first met. (Deposition of George Reid, Page 63-64, Appendix F; Deposition of John Berry Page 121, Appendix E). Apparently, the two struck up a conversation while eating lunch at adjacent tables at a country club, and Mr. Berry stated he was in the equipment leasing business. (Deposition of George Reid, Page 63; Line 23, Appendix F). Mr. Reid then said "Hey, I may have something that you might be interested in." (Deposition of John Berry, Page 123, Lines 2-4, Appendix E). Thereafter, Mr. Reid contends he conducted his "due diligence" investigation of Mr. Berry which consisted primarily of asking a few people what they knew about Mr. Berry. (Deposition of George Reid, Page 249, Appendix

F). Thereafter, Mr. Reid contends he tried to put a transaction together with Mr. Berry and WPS. This was apparently to be structured as a sales-leaseback transaction whereby WPS would sell equipment to Plaintiff and then Plaintiff would lease it back to WPS, and WPS would continue its existing leases with WPS' customers.

However, while Reid was discussing the prospect of funding a transaction for WPS with John Berry, Reid was advising WPS that he was arranging funding for a sale/leaseback of WPS's gas compression rental fleet through a "trust". Reid represented that this "trust" was the same trust that was considered for a previous proposed transaction involving a $33 million loan package to WPS through Merrill-Lynch - but which fell through in July or August, 2004. (Affidavit of Brian Engle, Exhibit O). WPS' Executive Vice President, Brian Engle, reported in a November 23, 2004, e-mail to Seth Williamson and Scott Thomas the following:

> *"George is finalizing assignments and legal matters with the investment group whom he is engaged to move the $2.8 BB from ML; therefore, our meeting/conference call today is being postponed until tomorrow." (Affidavit of Brian Engle, Appendix O)*

During Merrill-Lynch's consideration of WPS' loan application, Reid identified the Cullen Family Trust as the trust for which Merrill-Lynch was considering the WPS loan application, as the Trust's advisor (Deposition of George Reid, Page 186-Line 13-18, Appendix F).

Reid and Berry allegedly had several additional meetings regarding the alleged proposed transaction, and on December 17, 2004, a teleconference was held with John Berry, George Reid, Seth Williamson, and Scott Thomas. (Deposition of George Reid, Pages 97-100, Appendix F). Thereafter, a final version of the document entitled "Letter of Agreement" was drafted by John Berry. (Deposition of John Berry, Page 155, Lines 20-24, Appendix E). On December 20, 2004, Mr. Berry signed the document entitled "Letter of Agreement" as John B. Berry, Trustee-Purchaser. (Deposition of John Berry, Page 82, Line 20; Page 156, Lines 10-11;

Appendix E).  In reviewing the document entitled "Letter of Agreement", it appears that John Berry, Trustee-Purchaser is paying $10,580,000 for 24 compressors listed in Exhibit A of the document entitled "Letter of Agreement."  However, a further reading of the document entitled "Letter of Agreement" provides that Plaintiff was not obligated to purchase a single compressor, and in turn, pay anything to WPS. (*See* "Letter of Agreement", Appendix G)[2].

According to John Berry, the party to the document entitled "Letter of Agreement" and the party bound thereby is not John Berry, but "John Berry Trustee Purchaser." (Deposition of John Berry, Page 86; Lines 18-19, Appendix E).  Mr. Berry stated that he signed the document entitled "Letter of Agreement" in the capacity of a trustee because he "hadn't decided into what structure to close the transaction." (Deposition of John Berry, Page 84, Lines 17-20, Appendix E).  On the date the document entitled "Letter of Agreement" was signed, John Berry, Trustee, had no pre-arranged sources from which to fund the alleged proposed transaction, and he did not know how it would be funded.  (Deposition of John Berry, Page 92, Lines 3-10, Appendix E). Neither John Berry nor his companies had the $10,850,000 to fund the transaction  (Deposition of John Berry, Page 83, Lines 20-24, Appendix E), and "John Berry, Trustee" didn't have any accounts. (Deposition of John Berry, Page 83; Lines 12-13, Appendix E).

Thereafter, the document entitled "Letter of Agreement" was signed by George Reid. (Deposition of John Berry, Page 156, Lines 10-20, Appendix E), and then it was sent to WPS for signature. (Deposition of John Berry, Page 156, Lines 10-20, Appendix E).  Paragraph 4 of the document entitled "Letter of Agreement" stated the following which enforced WPS' belief that the document entitled "Letter of Agreement" was not a final or binding agreement and the terms were to be subject to further negotiation:

---

[2]  George Reid testified that Exhibit 7 of his deposition was a true and correct copy of the document entitled "Letter of Agreement" (see Deposition of George Reid, Page 103, Line 11 – Page 104, Line 7, Appendix F).  Also, see documents attached to Plaintiff's pleadings.

Within fifteen (15) Business Days after the execution of the Letter of Agreement by both Purchaser and Seller as the Parties hereto, Purchaser *__shall deliver to Seller a Purchase and Sale Agreement and Leaseback Agreement and other documentation (Formal Documentation)__* executed by Purchaser and such other documents as may be necessary in the sole discretion of Purchaser which Seller agrees to execute and return without delay. *__The Purchase and Sale Agreement, Leaseback Agreement and other documents shall supersede and take precedence to this Letter of Agreement, and in the event any of the terms and conditions of this transaction shall vary between this Letter of Agreement and the Purchase Sale Agreement, the terms and condition of the Purchase and Sale Agreement and Leaseback Agreement and other documents shall prevail__*. (emphasis added)

Other language in the document entitled "Letter of Agreement" which indicated that it was not the final agreement included Paragraph 5 of the document which stated that Plaintiff was not required to purchase anything if he didn't want to. Specifically, the provision stated:

5.    Purchaser Reviews.    This offer is subject to Purchaser's review and verification to Purchaser's *__sole satisfaction__* of any and all property, data, and facts, including and without limitation of all Equipment Property for this transaction as described on the attached EXHIBIT "A" and (a) complete, current, and historic financial statements; (b) current equipment rental agreements, including any amendments or modifications, and complete historic accounting of each such agreement; (c) completion of due diligence, inspection, and appraisal of Equipment Property; (d) all past and current environmental inspections, permits, reports, and surveys thereof; (e) any and all past and existing UCC filings relating thereto; (f) all Equipment Property designs, plans and specifications pertaining to the Equipment Property; and (g) Seller shall also provide Purchaser an Estoppel Certificate and Landlord Waiver for each Equipment Property asset being conveyed by Seller to Purchaser dated as of the closing; (h) Seller shall warrant and covenant to Purchaser hereof the exclusive rights of parties in possession ownership of the Equipment Property to be sold, conveyed, and transferred to Purchaser hereof by General Warranty Deed of Fee Simple Title to the sole satisfaction of Purchaser. (emphasis added)

This passage reflected that there was going to be considerable work and negotiations in determining which of the 24 compressors would ultimately be transferred once the framework

for the transaction was worked out and finalized. Some of the compressors already had been sold to lenders by WPS and were being leased back to WPS, such that the purchase of these compressors by Plaintiff would have been contingent upon obtaining releases from lenders. (Deposition of Seth Williamson, Pages 101-103, Appendix C).

The deposition testimony also revealed that WPS, Berry, and Reid were each on a different page with respect to encumbrances on the equipment listed in the exhibits accompanying the document entitled "Letter of Agreement." In Mr. Berry's deposition, the following transpired:

> Q:    ...if you determined or if this company did not own the equipment directly at the time they [allegedly] contracted to sell it to you could they have closed the transaction had the other people not agreed to?
>
> ***
>
> A:    Is that true?  They didn't own the equipment and they contracted to sell it to me?

(Deposition of John Berry, Page 217, Lines 22-25 and Page 218, Lines 1-5, Appendix E). Mr. Reid was certainly aware that there were bank liens on the compressors and stated that before the alleged proposed transaction could be completed, they were going to want to see the UCC's that were currently on the equipment, the insurance that was currently on the equipment, and to have new UCC's filed. (Deposition of George Reid, Page 106, Lines 12-16, Appendix F). Mr. Reid speculated that Mr. Berry would also want releases for any liens filed on any of the compressors. *Id.* Mr. Reid stated that Mr. Berry would have to have the actual leases in his hands to determine which equipment he was going to purchase. (Deposition of George Reid, Page 108, Lines 20-21, Appendix F).

Furthermore, the depositions reveal that based on this Paragraph 5, there was no firm understanding as to what was to be sold, if anything. Mr. Berry admitted that he could do "half

of the deal" if he found that he did not want half of the equipment.  (Deposition of John Berry, Page 60, Lines 7-11, Appendix E).  Mr. Berry stated that it would be speculation to consider how much of the proposed transaction could have been done as they never got to the point in the transaction of looking at the equipment.  (Deposition of John Berry, Page 60, Lines 20-22, Appendix E).  When asked what Mr. Berry would have done if posed with the situation where WPS said "We need to do the whole deal or really can't do half the deal?", Mr. Berry stated "I just don't know what we would have done."  (Deposition of John Berry, Page 61, Lines 8-18, Appendix E).  The officers of WPS shared the belief that the document entitled "Letter of Agreement" was not the final blueprint of the proposed transaction the parties had been negotiating.  Seth Williamson, the President of WPS, stated that he understood that the "Letter of Agreement" was to "take them to the next step, which was the final negotiating phase of the project."  (Seth Williamson's Deposition, Page 43, Lines 18-19, Appendix C).  Specifically, Mr. Williamson's belief with respect to the document entitled "Letter of Agreement" was:

> This laid out some general terms that we expected to see in the contract, but upon final negotiation, adjustments to pricing and things of that nature…all of these issues were to be resolved from our understanding, from our conversations with our consultant.

(Seth Williamson's Deposition, Page 43, Lines 20-25, Appendix C).  Similarly, Scott Thomas, the Secretary of WPS at the time of these events, stated that it was his belief that there would be further negotiations and that the final terms of the alleged proposed transaction would be in the final documents referenced in Paragraph 4 of the document entitled "Letter of Agreement." (Deposition of Scott Thomas, Page 9; Lines 15-25, Appendix D).  Based on this understanding, they signed the document entitled "Letter of Agreement."

Shortly thereafter, on or about December 29 or 30 another teleconference was held involving Mr. Berry, Mr. Reid, and Mr. Thomas.  During that conversation, Mr. Thomas

contends he discussed how the proposed transaction was to move forward and inquired how certain essential terms not contained in the document entitled "Letter of Agreement" would be incorporated into the final documents. (Deposition of Scott Thomas, Pages 30-31, Appendix D). It became apparent to Mr. Thomas that the parties were not on the same page. (Deposition of Scott Thomas, Page 16; Lines 15-21, Appendix D). Because Mr. Berry stated that if a term was not in the document entitled "Letter of Agreement, it would not be in the final documents, it appeared to Mr. Thomas that the alleged proposed transaction the parties were negotiating could not move forward. (Deposition of Scott Thomas, Page 30, Lines 8-12, Appendix D). Mr. Thomas prepared a letter to Mr. Berry identifying some of the disagreements and, while offering to continue to negotiate, stated that the transaction could not go forward unless the omission of essential terms was addressed by Mr. Berry. (Deposition of Scott Thomas, Page 17, Appendix D). A copy of the letter sent by Scott Thomas is set forth in Appendix H.[3] Mr. Berry recalled receiving this letter on or about December 31, 2004, by FedEx and admitted that the "thousand-dollar check that [Plaintiff] sent [WPS]" was included with it... (Deposition of John Berry, Page 158; Lines 5-15, Appendix E).

On January 19, 2005, Mr. Berry and Mr. Reid signed a document entitled "Affidavit of Beneficial Ownership of John B. Berry also known as TAISC, Inc." (Deposition of John Berry, Page 191, Lines 20-22, Appendix E). A copy of said document is attached in Appendix I. The document states that Mr. Berry has "record title to the ownership of the assets described" in the document entitled "Letter of Agreement" and that 47.5% of said assets were allegedly

---

[3] The letter sent by Scott Thomas was attached as an exhibit to Seth Williamson's deposition and recognized as a true and correct copy (see Deposition of Seth Williamson, Page 114, Line 16 – Page 115, Line 1).

"conveyed"[4] to John B. Berry and TAISC, Inc., and 52.5% was allegedly "conveyed" to Mr.

Reid. (Deposition of John Berry, Page 197, Lines 10-15, Appendix E).

Despite the fact that Berry was advised that agreement on certain essential terms was required for the transaction to go forward, Mr. Berry, on or about January 20, 2005, sent what he considered the "Formal Documentation" (Appendix J) to WPS.[5]  These documents did not incorporate the matters set forth in Mr. Thomas' letter of December 30, and additionally, added a number of other provisions not addressed in the document entitled "Letter of Agreement" including the following:

- provisions removing the burden of maintenance of the equipment and the replacement of component parts from Berry; Scott Thomas' affidavit reveals that this is a significant expenditure, exceeding $500,000 per year. (Appendix M).
- the provisions regarding accounting for the transaction;
- the provisions making the proposed transaction an off balance sheet transaction;
- risk of loss provisions regarding responsibility for loss or destruction or damage of the equipment or property;
- provisions regarding taxes and fees;
- a provisions regarding the manner in which liens, mortgages, security agreements, and similar existing encumbrances on the equipment would be addressed;
- provisions governing claims and lawsuits by third parties;
- provisions regarding insurance requirements during the proposed lease and on renewals or relets;
- a provision requiring the President of WPS to sign a personal guarantee seeking to hold him personally liable for all lease and contractual obligations hidden in the "Documentation" paragraph in the second page of the "Lease Agreement" (Purchase and Sale Agreement, Attachment B, Appendix J).
- Negative covenants prohibiting payment of dividends, mergers or acquisitions, change in office compensation, etc. (document entitled Purchase and Sale Agreement, Section 4.8, Pages 9-10, Appendix J).
- A provision allegedly calling for $10,580,000 liquidated damages if WPS did not comply, and providing that failure to sign the "Formal Documentation" or not negotiating the terms of the Formal Documentation would constitute a

---

[4] Defendant denies that John Berry had the ability to convey anything regarding the equipment.
[5] The "Formal Documentation" was recognized as being true and correct copies in John Berry's deposition (see Deposition of John Barry, Page 182, Line 24 – Page 183, Line 12).

breach ("Purchase and Sale Agreement", Sections 1.14 and 7.17, Pages 4 & 17, Appendix J).

Ironically, in the "Formal Documentation," Berry recognized that further negotiations would be necessary and permitted by §7.17 (Appendix J) which stated as follows:

> **Section 7.17 Good Faith.** If Seller does not execute and return this Agreement or if Seller has problems with wording hereof and does not begin serious negotiations with Purchaser and Purchaser's attorney named in Section 7.5 herein above regarding proposed modifications hereto and does not additionally begin forwarding all applicable documents and other information to Purchaser under Section 1.12 hereinabove, all within five (5) days of receipt of this Agreement from Purchaser, it shall for all purposes be deemed a Breach by Seller of the LOA.

If the "Formal Documentation" was to be negotiated further, then there can be no factual issue as to whether the document entitled "Letter of Agreement", was subject to further negotiation.

Based on the foregoing, it is clear that there is no issue as to material fact on a number of issues which dispose of Plaintiff's claims. These include the fact that the document entitled "Letter of Agreement" does not constitute a binding contract in that it lacks material terms such as price and quantity, the document was signed without a meeting of the minds or "mutual assent", and the document lacks mutuality of obligation. For these and other reasons set forth herein, Defendant is entitled to a summary judgment.

## IV.

## ARGUMENT AND AUTHORITY

A.   The Document Entitled Letter of Agreement is Not a Contract Because it Does Not Set Forth Material Terms with Requisite Particularity.

It is essential to the validity of a contract that it must be sufficiently certain as to define the nature and extent of its obligations. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966). If an alleged

agreement is so indefinite as to make it impossible for a Court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *Bendalin*, 406 S.W.2d at 899; *Engelman Irr. Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 352 (Tex.App.–Corpus Christi 1997). Whether a writing meets the legal requirements of a contract, including definiteness, is a question of law. *Texaco, Inc. v. Penzoil Co.*, 729 S.W.2d 768, 814 (Tex.App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.), cert. dism'd, 485 U.S. 994, 108 S.Ct. 1305 (1988). A jury may not be called upon to supply a central term upon which the parties did not mutually agree. *Id.*

A lack of definiteness in an agreement may concern, among other things, the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred. *Engelman*, 960 S.W.2d at 352. An alleged contract for the sale of personal property is not sufficiently certain to be enforced if it fails to specify the quantity of the goods to be sold. *Wolert v. Arledge*, 4 Tex.Civ.App. 692, 23 S.W. 1052 (1893). ***This is also true of a contract that leaves the quantity to be sold or bought entirely optional with the seller or the buyer.*** *Miller v. Vaughn and Taylor Const. Co.*, 345 S.W.2d 852, 853 (Tex.App.–Fort Worth 1961, writ refused n.r.e., 1961); 14 Tex.Jur.3d, *Contracts* § 61. (Appendix K)

Similarly, an agreement will not be enforced where it is not sufficiently definite as to price. *T.O. Stanley Boot, Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992). For example, in an oral agreement to transfer stock, the terms must state the specific quantity of shares and the specific price in order to be considered clear, certain, and definite. *Gannon v. Baker*, 830 S.W.2d 706 (Tex.App.–Houston [1st Dist.] 1992, writ denied). *See also, T.O. Stanley Boot Co., Inc.*, 847 S.W.2d at 218, where the court found that an alleged contract to make available a $500,000 line of credit failed for indefiniteness, as there was no evidence regarding the material elements of the interest rate on the alleged loan or the repayment terms.

The borrower's testimony was that the bank always charged 1.5% to 2.5% over the prime rate amounted to no evidence of the interest rate.

In *Glazner v. Haase*, 61 S.W.3d 10, 15 (Tex. App. – Texarkana, 2000) the court, in determining that an agreement was not sufficiently definite to be enforceable, stated the following:

> Glazner's and Haase's mutual promises to buy or sell do not mention a price to be paid or a method for calculating a price. The agreement also fails to specify a time for performance, the terms of the sale or the number of locations included. The agreement does not define how Haase will guarantee the success of the prospective franchise, nor does it define "success." A contract, whether written or oral, must define its essential terms with sufficient precision to enable the court to determine the obligations of the parties.

In *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640 (Tex.App.–Corpus Christi 1984, no writ), a land owner filed suit alleging non-payment of royalties for gas taken from his land by an exploration company. The agreement between the land owner and the exploration company stated as follows:

> Lessee agrees to negotiate the purchase of lessor's water before drilling own water wells, but if Lessee and Lessor cannot arrive at a mutually satisfactory price, Lessee is under no obligation to purchase Lessor's water, but may drill its own water well to supply its needs.

In interpreting this provision, the court concluded that this passage left completely open one of "the most important considerations of the parties concerning future negotiation, i.e. the price to be paid for water." According to the court, the price "was the essence of the proposed contract and not a detail to be supplied by the court." *Id.* at 644.

At first glance, one might conclude that the price term set forth in the document entitled "Letter of Agreement" (Appendix G) is established. Paragraph 1 of the document states:

> "Purchaser shall pay Seller the sum of <u>Ten million five hundred eighty thousand DOLLARS</u> ($10,580,000.00) for the equipment property."

Similarly, Exhibit A to the document entitled "Letter of Agreement" lists approximately twenty-four (24) compressors. However, Paragraph 1 and Exhibit A must be read in conjunction with other passages in the document, including Paragraph 5 which states as follows:

> 5.   <u>Purchaser Reviews.</u>   This offer is subject to Purchaser's review and verification to Purchaser's ___*sole satisfaction*___ of any and all property, data, and facts, including and without limitation of all Equipment Property for this transaction as described on the attached EXHIBIT "A" and ... [6]

With respect to the quantity of equipment to be purchased, Mr. Berry felt that if one of the pieces of equipment listed in Exhibit A had been destroyed or he didn't want it, he could delete it from the list of equipment to be purchased. (Deposition of John Berry, Page 172, Lines 15-22, Appendix E). Mr. Berry felt that he could do "half of the deal" if he found that he did not want half of the equipment. (Deposition of John Berry, Page 60, Lines 7-11, Appendix E). Mr. Berry stated that it would be speculation to consider how much of the proposed transaction could have been done as they never got to the point in the transaction of looking at the equipment. (Deposition of John Berry, Page 60, Lines 20-22, Appendix E). When asked what Mr. Berry would have done if posed with the situation where WPS said "We need to do the whole deal or really can't do half the deal?", Mr. Berry stated "I just don't know what we would have done." (Deposition of John Berry, Page 61, Lines 8-18, Appendix E). Put simply, just by reviewing the document entitled "Letter of Agreement", and particularly, Paragraph 5, one cannot tell which of the units would have been sold, if any.

If the quantity of compressors to be sold could not be ascertained, the price also cannot be ascertained. If a piece of equipment was not purchased, including under the scenarios listed in

---

[6] For a complete reading of this provision, see full quote on Page 7, *supra,* or in Exhibit G.

the foregoing paragraph, Mr. Berry stated that he would not pay the price set forth in the Letter of Agreement [$10,580,000.00] if a piece of equipment was to be deleted from the Letter of Agreement. (Deposition of John Berry, Page 173, Lines 11-18, Appendix E).  He also admitted there was no formula that was negotiated between the parties as to how price would be adjusted if a piece of equipment was rejected by Mr. Berry.  (Deposition of John Berry, Page 174, Lines 14-16, Appendix E).  Put simply, John Berry testified that the price he would pay under the document entitled "Letter of Agreement" was not a function of the $10,580,000.00 price set forth in Paragraph 1 of the document entitled "Letter of Agreement".

Because the document entitled "Letter of Agreement" lacks material terms including price and quantity, it cannot be considered an enforceable contract.  Because there is no genuine issue of whether the "Letter of Agreement" was sufficiently definite to be binding, Defendant is entitled to a summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

      B.    <u>There Was No Meeting of the Minds or Mutual Assent Among the Parties When the Document Entitled Letter of Agreement Was Signed.</u>

Before an enforceable contract can be formed, the parties must agree to the contract's material terms. *Anderton v. Schindler*, 154 S.W.3d 928 (Tex.App.–Dallas 2005).  All of the parties must assent to the same thing, in the same sense, at the same time, and their assent must be comprehended in the proposition as a whole.  14 TEX.JUR.3d, *Contracts* §68 (Appendix L), *citing, Summers v. Mills,* 21 Tex. 77, 1858 W.L. 5419 (1858); *Smulcer v. Rogers*, 256 S.W.2d 120 (Tex.Civ.App.–Fort Worth 1953, writ refused n.r.e.).  Assent of parties to a contract must comprehend the whole proposition and the agreement must comprise all terms which they intend to introduce into it; there is no contract if material terms are left for future adjustment or are not agreed upon. *Solis v. Evans,* 951 S.W.2d 44 (Tex.App.–Corpus Christi 1997).

In the instant case, it is clear that there was no meeting of the minds. The deposition testimony indicates that Seth Williamson, John Berry, and George Reid all had different understandings as to what the effect was, if any, of signing the document entitled "Letter of Agreement". Mr. Williamson's belief with respect to the document entitled "Letter of Agreement" was:

> This laid out some general terms that we expected to see in the contract, but upon final negotiation, adjustments to pricing and things of that nature…all of these issues were to be resolved from our understanding, from our conversations with our consultant.

(Seth Williamson's Deposition, Page 43, Lines 20-25, Appendix C). This is certainly a reasonable belief from an objective standpoint given language in the document entitled "Letter of Agreement" such as that set forth in Paragraph 4 providing that within fifteen (15) Business Days after the execution of the Letter of Agreement, the seller was going to forward the "*formal documentation.*"(emphasis added). Similarly, the so-called option provision in Paragraph 16, for which John Berry was required to pay $1,000, provided that WPS was not to "solicit, offer or hold discussions with any third party" regarding the equipment in question, makes it obvious that the document entitled "Letter of Agreement" was not a binding contract. Why would the Plaintiff pay to keep WPS from negotiating with third parties if the Plaintiff believes the equipment is the subject of a binding contract?

Additionally, it cannot be disputed that the ability of the purchaser/lessee to fund the alleged proposed transaction was an essential matter. (*See* Deposition of Seth Williamson, Page 64, Lines 9-14; Pages 84-85, Appendix C; and Affidavit of Brian Engle, Appendix O). WPS thought John Berry, Trustee, was the representative of a large trust that was going to fund this proposed transaction from its own substantial funds (See Engle Affidavit, Appendix O). In contrast, John Berry used the term "Trustee" in the document entitled "Letter of Agreement"

because he didn't know how he was going to "structure the deal" or what the end deal would be until after due diligence was done.  He speculated that the purchaser would end up being a yet to be formed single asset entity (Deposition of John Berry, Pages 83-86, Appendix E). John Berry and George Reid have denied that any trust was involved (Deposition of George Reid, Page 188, Lines 15-17, Appendix F) and Berry acknowledged that he was **not** the trustee of any trust (Deposition of John Berry Page 84, Lines 12-13, Appendix E).

Furthermore, the lack of assent is evidenced by the fact that there were a multitude of material terms not addressed in the document entitled "Letter of Agreement" that were to be left for future negotiations. *Solis v. Evans,* 951 S.W.2d 44 (Tex.App.–Corpus Christi 1997).  Many of these terms are set forth in Brian Engle's affidavit, Appendix O and on Page 11, *supra,* but include provisions to address non-routine maintenance of the equipment and provisions making the proposed transaction an off balance sheet transaction.   Also, the alleged "final documentation" (Appendix J) that was sent after the document entitled "Letter of Agreement" was signed contained a provision requiring Seth Williamson, the President of WPS, to personally guarantee certain alleged undertakings even though he was not a party to the document entitled "Letter of Agreement."   (Document entitled "Purchase and Sale Agreement"; Appendix J; Deposition of George Reid, Page 280, Lines 7-11, Appendix F).  Mr. Reid was not aware that these documents contained this provision.  (Deposition of George Reid, Page 280, Line 12, Appendix F).  Mr. Reid agreed that could be a substantial element in any business deal. (Deposition of George Reid, Page 280, Lines 13-15, Appendix F).

Based on the foregoing, it is clear that there was no "meeting of the minds" between the parties. Therefore, Defendant is entitled to a summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

C.      There Was No Mutuality of Obligation for the Undertakings Allegedly Set forth
        in the Document Entitled "Letter of Agreement".

Paragraph 5 of the document entitled "Letter of Agreement" makes it illusory.

Specifically, under Paragraph 5, Plaintiff was not required to purchase any equipment listed in

Exhibit A to the document entitled "Letter of Agreement."  Paragraph 5 states:

> 5.      Purchaser Reviews.   This offer is subject to Purchaser's
> review and verification to Purchaser's *__sole satisfaction__* of any and
> all property, data, and facts, including and without limitation of all
> Equipment Property for this transaction as described on the
> attached EXHIBIT "A" and ....[7]

A contract must be based upon valid consideration or mutuality of obligation.  *C & H*

*News Co.* 133 S.W.3d 642, 647 (Tex.App.–Corpus Christi 2003, no writ); *Iacono v. Lyons*, 16

S.W.3d 92, 94 (Tex.App.–Houston [1st Dist.] 2000, no pet.).  When illusory promises are all that

support a purported bi-lateral contract, there is no mutuality of obligation and, thus, there is no

contract.  *Light v. Centel Cellular Co. of Tex*, 883 S.W.2d 642, 645 (Tex. 1994).  A promise is

illusory when it fails to bind the promisor who retains the option of discontinuing performance.

*C & H News Co.*, 133 S.W.3d at 647; *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 370

(Tex.App.–Houston [14th Dist.] 2000, no pet.).  A bilateral contract is invalid unless mutual

obligations are "mutual and binding".  *In re Palm Harbor Homes, Inc.* 129 S.W.3d 636, 643

(Tex.App.–Houston [1st Dist.] 2003, no pet.).  When illusory promises are all that support a

purported bilateral contract, there is no contract.   *31-W Insulation Co., Inc. v. Dickey*, 144

S.W.3d 153, 158 (Tex.App.–Fort Worth 2004).

A promise is illusory when it fails to bind the promisor, who retains the option of

discontinuing performance.  *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 370.  Similarly, an "opt

out" provision purporting to give one party the unilateral right to avoid their contractual

---

[7] The full text of this provision is set forth on Page 7, *supra* and in Appendix G.

obligations renders the contract invalid for want of mutuality under Texas law. *In re Palm Harbor Homes, Inc.*, 129 S.W.3d at 644.

In *Alpha Partners, Ltd. v. Safeway Insurance Co.*, 2002 WL 14297 (Tex.App. – Dallas) (Appendix P), the parties signed a document entitled "Letter of Intent to Purchase Corporation" which was expressly subject to the buyer's filing and approval by a governmental agency for the pending transaction. The court ruled that the buyer's promises were illusory because it had an option to discontinue performance under the letter of intent.

Similarly, in *In re Palm Harbor Homes*, 129 S.W.3d at 644, the buyers of a mobile home executed an arbitration agreement which stated that the manufacturer, "in its sole discretion, may opt out of and elect not to be bound by the arbitration." Because the agreement provided the manufacturer with a right to unilaterally "opt out" of the agreement to arbitrate, the court held the contract void for lack of mutuality. *Id.*

In the instant case, it is clear that Plaintiff could have decided not to purchase any of the equipment listed in Exhibit A to the document entitled "Letter of Agreement." Plaintiff's ability to do nothing makes the document illusory. Defendant is therefore entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

D.  The December 30 Letter from Scott Thomas Ended Negotiations, and Any Purported Obligations (if any) Under the Document Entitled "Letter of Agreement."

On or about December 30, 2004, when it became apparent to Scott Thomas that the parties were not on the same page with respect to negotiations, he prepared a letter to Mr. Berry identifying some of the disagreements and, while offering to continue to negotiate, stated that the transaction could not go forward unless the essential terms were agreed to. (Deposition of Scott Thomas, Page 17, Appendix D)  A copy of the letter sent by Scott Thomas is set forth in

Appendix H.  Mr. Berry received the letter on or about December 31, 2004.  (Deposition of John Berry, Page 158; Lines 5-15, Appendix E).

Under Texas Law, if negotiating parties intend a final contract to be reduced to writing and considered an earlier written agreement to be the consummation of their negotiations and a prerequisite to a binding contract, then the earlier agreement is incomplete and either party may withdraw at any time before the final agreement signed by both parties.  *Premier Oil Refining Co. v. Bates*, 367 S.W.2d 904, 907 (Tex.App.–Eastland 1963, writ ref'd n.r.e.).

As demonstrated by the foregoing sections of this motion, the document entitled "Letter of Agreement" is not an enforceable contract, but merely part of the negotiations before the "formal documentation" was drawn.  The letter from Scott Thomas clearly constitutes an effort by WPS to end negotiations unless essential terms left out of the document entitled "Letter of Agreement" – some of which were requested by Scott Thomas in his letter - were included in the final documents.  Therefore, said letter from Scott Thomas constituted a termination of the negotiations and there is no contract.  *Premier Oil Refining Co. v. Bates*, 367 S.W.2d 904, 907 (Tex.App.–Eastland 1963, writ ref'd n.r.e.).  Furthermore, at the time the letter was sent, John Berry had not identified which equipment he would purchase and what he would pay for same. (See Section A, supra).  Because the letter dated December 30 ended negotiations, Defendant is entitled to a summary judgment.

E.    Defendant is Entitled to Summary Judgment under the Defense of Mistake.

Defendant denies that there is any evidence of a contract with Plaintiff.  That notwithstanding, for summary judgment purposes, Defendant would show that even if Plaintiff's position regarding the "Letter of Agreement" is correct, which is denied, Defendant is entitled to summary judgment under the defense of mistake.  A unilateral mistake is sufficient to set aside a

contract if the mistake is induced by the acts of another party. *Interfirst Bank of Abilene, N.A. v. Lull Manufacturing*, 778 F2d 228, 232 (5th Cir. 1985). Additionally, a unilateral mistake is sufficient to set aside a contract where the following elements are met: 1) the mistake is of so great a consequence to make the enforcement of the contract unconscionable 2) the mistake relates to a material element of the contract; and 3) the mistake is made regardless of the exercise of ordinary care. *Id.*

In the instant case, the affidavit of Scott Thomas, set forth in Appendix M, proves that the alleged transaction could not go forward in the manner alleged by the Plaintiff. Mr. Thomas stated he analyzed the effect on WPS if it consummated a proposed transaction under the document entitled "Letter of Agreement" as now interpreted by John Berry. It would have resulted in negative cash flow as the sale price of $10,580,000.00 less the commission purportedly due to George Reid of $1,650,000.00, less the outstanding debt on the units of $9,580,000.00, would have netted proceeds to WPS of negative $650,000. Further, it would have resulted in negative cash flow to WPS. (Affidavit of Scott Thomas, Appendix M). Mr. Williamson added that his company would have failed completely if the deal as now interpreted by Mr. Berry would have closed. (Deposition of Seth Williamson, Pages 101-102, Appendix C).

Mr. Williamson was under the reasonable belief that the terms in the document entitled "Letter of Agreement" were not the final terms, but instead, the final terms would be in the final documentation, as stated in Paragraph 4 of the document entitled "Letter of Agreement." (Deposition of Seth Williamson, Pages 102-103, Appendix C). Because Defendant has proven its defense of mistake, and there is no genuine issue of material fact with respect to this issue, Defendant is entitled to summary judgment. *Buttry v. General Signal Corp.,* 68 F3d 1488, 1492 (2d Cir. 1995).

F.      Defendant is Entitled to a Summary Judgment Because the Alleged "Purchaser"
        In the Document Entitled Letter of Agreement Did Not Exist.

John Berry signed the document entitled "Letter of Agreement" in the purported

"representative" capacity of "trustee".  The mere fact that a party is designated "as trustee" does

not in itself create a trust.  *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264 (Tex. App. Houston

[14th Dist] 1995).  V.T.C.A. Property Code § 114.084 provides that:  "The addition of "trustee"

or "as trustee" after the signature of a trustee who is party to a contract is prima facie evidence of

an intent to exclude the trustee from personal liability."

When responding to Defendant's request for production for any documents that formed

the basis for the Plaintiff's declared representative capacity of "trustee", Plaintiff produced a

document entitled "Affidavit of Beneficial Ownership of John B. Berry also known as TAISC,

Inc." (Appendix I) in which John B. Berry, as trustee, apparently "acknowledges record title to

the ownership of the assets described on the attached Letter of Agreement...".  This document

was undated, but the notarial acknowledgement attached to it shows it was executed on January

19, 2005.  Berry testified that this document was developed as a result of a meeting in his

attorney's office, with George Reid present, a few days prior to its execution, and that was the

first time Berry and Reid had discussed the structure of the deal or the percentages of ownership

(Deposition of John Berry, Page190, Line 11 – Page 192, Line 15, Appendix E).

This document does not create a trust.  At most it constitutes a declaration of who Berry

contends would have received certain items had the proposed transaction closed, as it is alleged it

purportedly allocates an ownership interest in the "assets" and **not** in the document entitled

"Letter of Agreement."   Because this agreement was not even discussed until long after the

document entitled "Letter of Agreement" was signed by John Berry, as Trustee, and, Berry

acknowledged that he signed "as trustee" because he didn't know who was going to be involved

or what the "structure" would be, there is no factual dispute that John B. Berry executed the Letter of Agreement as "trustee" of a non-existent trust.

The Texas Trust Code provides that "a trust cannot be created unless there is trust property" (V.T.C.A., Property Code § 112.005). "A trust is created only if the settlor manifests an intention to create a trust" (V.T.C.A. Property Code § 112.02). Accordingly, on the date that John B. Berry purportedly signed the document entitled "Letter of Agreement," on December 20, 2004, as trustee, there was no trust in existence, no settlor, no trust property, and no beneficiaries. Accordingly, Berry executed this document entitled "Letter of Agreement" on behalf of, or as representative of, a non-existent party.

Texas has a statute dealing with the use of Assumed Business or Professional Names (V.T.C.A. Bus & C § 36.01, et seq.). That statute provides that any action filed by a party under an assumed name will be abated by the Court until the name is registered and the principals disclosed. Here, if "John Berry, Trustee" is an assumed name, it is undisputed from John Berry's deposition testimony that there are no principals in existence to disclose. Therefore, this action would be "abated" forever.

V.

CONCLUSION

Based on the foregoing, it is clear that even in evaluating Plaintiff's factual allegations in a light most favorable to Plaintiff, there is no issue as to material fact on a number of issues which Plaintiff must prove to prevail. Further, on several of Defendant's affirmative defenses, Defendant has proven there is no genuine issue of material fact. Defendant is therefore entitled to a judgment as a matter of law. The grounds include the fact that the document entitled "Letter of Agreement" does not constitute a binding contract in that it lacks material terms such as price

and quantity, the document was signed without a meeting of the minds or "mutual assent", and the document lacks mutuality of obligation. For these and other reasons set forth herein, Defendant is entitled to a summary judgment.

WHEREFORE, PREMISES CONSIDERED, Defendant, WPS, INC. prays that its motion for summary judgment is granted.  Defendant, WPS, INC. also prays for such other further relief, general and special, at law and at equity to which it may show itself justly entitled.

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
Post Office Box 4915
Beaumont, Texas 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Telecopier

**James R. Old, Jr.**
**Attorney In Charge**
State Bar No. 15242500
Southern Dist. No. 10751
**James W. Henges**
State Bar No. 00790860
Southern Dist. No. 433426

**ATTORNEYS FOR DEFENDANT, WPS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the ___/ʳᵈ___ day of August, 2006.

Mr. Thomas G. Bousquet      **VIA CERTIFIED MAIL, RRR**
BOUSQUET & JACKSON, P.C.
Buckley Building
9225 Katy Freeway, Suite 103
Houston, Texas  77024

**James R. Old, Jr.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(d), Defendant is not required to submit a certificate of conference on a motion for summary judgment.

**James R. Old, Jr.**

## **TABLE OF CONTENTS**

I.   Introduction ...................................................................................................... Page 1

II   Summary Judgment Proof ................................................................................. Page 3

III. Testimony Supporting Defendant's Motion for Summary Judgment .............. Page 3

IV. Argument and Authority .................................................................................. Page 12

    A.   The Document Entitled Letter of Agreement is Not a Contract Because it Does Not Set Forth Material Terms with Requisite Particularity ................. Page 12

    B.   There Was No Meeting of the Minds or Mutual Assent Among the Parties When the Document Entitled "Letter of Agreement" was Signed ...................................................................................................... Page 16

    C.   There Was No Mutuality of Obligation for the Undertaking Allegedly Set forth in the Document Entitled "Letter of Agreement". ....................... Page 19

    D.   The December 30 Letter from Scott Thomas Ended Negotiations, and Any Purported Obligations (if any) Under the Document Entitled "Letter of Agreement" ............................................................................... Page 20

    E.   Defendant is Entitled to Summary Judgment under the Defense of Mistake ...................................................................................................... Page 21

    F.   Defendant is Entitled to a Summary Judgment Because the Alleged "Purchaser" In the Document Entitled Letter of Agreement Did Not Exist ........................................................................................................... Page 23

V.  Conclusion. ..................................................................................................... Page 24

Table of Contents ....................................................................................................

Table of Authorities .................................................................................................

Appendix 1
    Affidavit of Jennifer R. Baker ..........................................................................

Appendix A
    Plaintiff's First Amended Petition for Suit on Written Contract .....................

Appendix B
    Plaintiff's First Amended Objections and Answers to Defendant's First Interrogatories ..........

Appendix C
    Condensed Copy of Deposition of Seth Williamson ........................................

Appendix D
    Condensed Copy of Deposition of Scott Thomas .............................................

Appendix E
    Condensed Copy of Deposition of John B. Berry.......................................................

Appendix F
    Condensed Copy of Deposition of George H. Reid...................................................

Appendix G
    Document Entitled "Letter of Agreement"...............................................................

Appendix H
    A copy of December 30, 2004 letter from Scott Thomas..........................................

Appendix I
    Document Entitled "Affidavit of Beneficial Ownership of John Berry also known as TAISC, Inc.".................................................................................................................

Appendix J
    Document Entitled "Purchase and Sale Agreement"..................................................

Appendix K
    14 TEX.JUR.3d, *Contracts* § 61 .............................................................................

Appendix L
    14 TEX.JUR.3d, *Contracts* § 68 .............................................................................

Appendix M
    Affidavit of Scott Thomas ......................................................................................

Appendix N
    Document Entitled "Consulting Services Agreement".............................................

Appendix O
    Affidavit of Brian Engle .........................................................................................

Appendix P
    *Alpha Partners, Ltd. v. Safeway Insurance Co.*, 2002 WL 14297 (Tex.App. – Dallas)..............

# TABLE OF AUTHORITIES

**Statutes**

V.T.C.A. Property Code § 112.02..................................................................

V.T.C.A., Property Code § 114.084..............................................................

**Cases – Federal**

*Buttry v. General Signal Corp.,* 68 F3d 1488, 1492 (2d Cir. 1995)....................

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)........................

*Crescent Towing & Salvage Co v. MV Anax*, 40 F3d 741, 744 (5th Cir. 1994).......................

*Interfirst Bank of Abilene, N.A. v. Lull Manufacturing*, 778 F2d 228, 232 (5th Cir. 1985)...........

**Cases - State**

*Alpha Partners, Ltd. v. Safeway Insurance Co.*, 2002 WL 14297 (Tex.App. – Dallas)...............

*Anderton v. Schindler*, 154 S.W.3d 928 (Tex.App.–Dallas 2005)......................................

*Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264 (Tex. App. Houston [14[th] Dist] 1995)..............

*Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966)................................................................

*C & H News Co.* 133 S.W.3d 642, 647 (Tex.App.–Corpus Christi 2003, no writ)....................

*Engelman Irr. Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 352 (Tex.App.–Corpus Christi 1997).

*Gannon v. Baker*, 830 S.W.2d 706 (Tex.App.–Houston [1st Dist.] 1992, writ denied)...............

*Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640 (Tex.App.–Corpus Christi 1984, no writ)....

*Glazner v. Haase*, 61 S.W.3d 10, 15 (Tex. App. – Texarkana, 2000) ...................................

*In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 370 (Tex.App.–Houston [14th Dist.] 2000, no pet.h.)................................................................................................................

*Iacono v. Lyons*, 16 S.W.3d 92, 94 (Tex.App.–Houston [1st Dist.] 2000, no pet.)...................

*Light v. Centel Cellular Co. of Tex*, 883 S.W.2d 642, 645 (Tex. 1994)................................

1

*Miller v. Vaughn and Taylor Const. Co.*, 345 S.W.2d 852, 853 (Tex.App.–Fort Worth 1961, writ refused n.r.e., 1961)...................................................................................................

*In re Palm Harbor Homes, Inc.* 129 S.W.3d 636, 643, 644 (Tex.App.–Houston [1st Dist.] 2003, no pet h.)...................................................................................................................

*Premier Oil Refining Co. v. Bates*, 367 S.W.2d 904, 907 (Tex.App.–Eastland 1963, writ ref'd n.r.e.)...................................................................................................................

*Smulcer v. Rogers*, 256 S.W.2d 120 (Tex.Civ.App.–Fort Worth 1953, writ refused n.r.e.)..........

*Solis v. Evans,* 951 S.W.2d 44 (Tex.App.–Corpus Christi 1997)...............................................

*Summers v. Mills,* 21 Tex. 77, 1858 W.L. 5419 (1858)....................................................

*Texaco, Inc. v. Penzoil Co.*, 729 S.W.2d 768, 814 (Tex.App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.), cert. dism'd, 485 U.S. 994, 108 S.Ct. 1305 (1988)................................................

*T.O. Stanley Boot, Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992) ...........................

*Wolert v. Arledge*, 4 Tex.Civ.App. 692, 23 S.W. 1052 (1893).............................................

*31-W Insulation Co., Inc. v. Dickey*, 144 S.W.3d 153, 158 (Tex.App.–Fort Worth 2004)...............

## Secondary Material

14 TEX.JUR.3d, *Contracts* § 61..............................................................................

14 TEX.JUR.3d, *Contracts* § 68..............................................................................

Appendix

APPENDIX

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN B. BERRY, TRUSTEE** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. H-05-1101** |
| | § | **JURY** |
| **WPS, INC., ET AL** | § | |
| **Defendants** | § | |

## AFFIDAVIT OF JENNIFER R. BAKER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF JEFFERSON | § |

BEFORE ME, the undersigned authority of the State of Texas, on this day personally appeared JENNIFER R. BAKER, known to be the person whose name is subscribed to the following Affidavit, and who, by being by me first duly sworn, on his oath testifies as follows:

1.  "My name is Jennifer R. Baker.  I am a paralegal for an attorney of record for WPS, Inc. in the above-entitled and numbered cause, and I am authorized to make this affidavit.  I am over the age of twenty-one (21), of sound mind, and have never been convicted of a felony or crime involving moral turpitude.  The information contained herein is within my personal knowledge and is true and correct.  I have knowledge regarding the file in this matter and the making of copies in this appendix."

2.  "Attached as Appendix "A" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of Plaintiffs' First Amended Petition for Suit on Written Contract."

3.  "Attached as Appendix "B" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of Plaintiff's First Amended Objections and Answers to Defendant's First Interrogatories."

4.  "Attached as Appendix "C" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct condensed copy of the deposition of Seth Williamson, without exhibits."

5.      "Attached as Appendix "D" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct condensed copy of the deposition of Scot Thomas, without exhibits."

6.      "Attached as Appendix "E" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct condensed copy of the deposition of John B. Berry, without exhibits."

7.      "Attached as Appendix "F" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct condensed copy of the deposition of George H. Reid, without exhibits."

8.      "Attached as Appendix "G" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of a document copied from Exhibit No. 1 from John Berry's deposition."

9.      "Attached as Appendix "H" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of a letter copied from to Appendix No. 7 of Seth Williamson's deposition."

10.     "Attached as Appendix "I" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of a document copied from Exhibit No. 3 of John Berry's deposition."

11.     "Attached as Appendix "J" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of a document copied from Exhibit No. 2 to John Berry's deposition."

12.     "Attached as Appendix "N" to Defendant WPS, Inc.'s Motion for Summary Judgment is a true and correct copy of a document copied from Exhibit No. 2 to Seth Williamson's deposition."


"FURTHER AFFIANT SAYETH NOT."

JENNIFER R. BAKER

SWORN TO AND SUBSCRIBED BEFORE ME by the above named Affiant this 15 day of August, 2006.

BERNIE MARIE DELAUNE
Notary Public
STATE OF TEXAS
My Commission
Expires 11/12/2009

Notary Public, State of Texas

A

# APPENDIX
## "A"

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN B. BERRY TRUSTEE**<br>**Plaintiff** | ⊗<br>⊗<br>⊗<br>⊗<br>⊗ | |
| **V** | ⊗<br>⊗ | **CIVIL ACTION NO. H-05-1101**<br><br>**JURY** |
| | ⊗<br>⊗<br>⊗<br>⊗ | |
| **WPS, INC.**<br>**Defendants** | ⊗ | |

## <u>FIRST AMENDED PETITION FOR SUIT ON WRITTEN CONTRACT</u>

    1.    *Discovery Level.*    Discovery in this case is intended to be conducted under the Federal Rules of Civil Procedure.

    2.    *Parties.*

        A.    Plaintiff, JOHN B. BERRY, TRUSTEE, is an Individual whose residence is in Harris County, Texas.

        b.    Defendant, WPS, INC., a Corporation based in Louisiana, is organized under the laws of the State of Louisiana, , and service of process was had upon said Defendant by serving Seth Williamson, President of the corporation at 1110 Unifab Road, Suite A, New Iberia, Louisiana WPS, INC. has answered herein..

    3.    This court has jurisdiction over the parties because Defendants contracted with Plaintiff in Texas and agreed to suit in Harris County, Texas. The suit seeks in excess of $75,000.00 and there is diversity of citizenship.

## <u>FIRST COUNT</u>:

    4.    *Facts.* Attached to this petition as Exhibit "A" is a copy of the Sale and Leaseback Agreement executed by Plaintiff and Defendants. The agreement is incorporated in this petition by

reference. Plaintiff has fully complied with the agreement. The contract had sufficient consideration and was and is performable as written and if Defendants had not breached same, the contract would have closed on its terms. Defendants are guilty of attempted or anticipatory breach of the contract on or about December 30, 2004 (Exhibit "B" hereto), and complete breach of the contract on January 26, 2005.

5. *Damages* Plaintiff seeks judgment for damages in excess of $12,000,000.00 for loss of profits and loss of the benefits of the contract and/or specific performance of the Agreement.

6. *Default.* Defendants defaulted in the performance of the Agreement. Plaintiff seeks specific performance of the contract and/or his damages and attorney's fees..

7. *Conditions Precedent.* All conditions precedent have been performed or have occurred.

8. *Attorney's Fees.* Defendants' default has made it necessary for Plaintiff to employ the undersigned attorneys to file suit. This claim was timely presented to Defendants and remains unpaid. Reasonable fees for the attorney's services rendered and to be rendered are a minimum of $100,000.00, plus fees incurred in any appeal.

**SECOND COUNT:**

The necessity for this Second Count is because of and brought about by the recent devastation on the Gulf Coast by Hurricanes. .

A. Request for Preliminary Injunction

1. Plaintiff will suffer irreparable harm if the defendant is not ordered a) to place the insurance proceeds paid or payable under any insurance policy for damages and losses to the assets which were to be sold to Plaintiff, as per the list attached to Plaintiff's Original Petition arising from Hurricane Katrina and Rita into the registry of this court, or alternatively, b) be enjoined during the pendency of this lawsuit from selling, transferring or mortgaging the assets which were to be sold to

Plaintiff, as per the list attached to Plaintiff's Original Petition, and/or c) spending, disposing of, encumbering, transferring out of this courts jurisdiction or otherwise utilizing the insurance proceeds paid or payable under any insurance policy for damages and losses arising from Hurricanes Katrina and Rita . Plaintiff needs such order because  the injury is imminent, is irreparable, and plaintiff has no adequate remedy at law.  {*Sampson v. Murray, 415 U.S. 61, 88-90, 94 S.Ct. 937, 951-53 (1974); Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 417 (4th Cir. 1999)*}

2.      There is a substantial likelihood that plaintiff will prevail on the merits because the execution of the contract is not disputed.  {*Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 2568 (1975); U.S. v. Microsoft Corp., 147 F.3d 935, 943 (D.C. Cir. 1998); DSC Comm. Corp. v. DGI Tech., Inc., 81 F.3d 597, 600 (5th Cir. 1996)*}

3.      The harm faced by plaintiff outweighs the harm that would be sustained by the defendant if the preliminary injunction were granted. Defendant is in the peculiar position that it is cashing out all of its assets due to insured damages and losses caused by Hurricanes Katrina and Rita  {*Yakus v. U.S., 321 U.S. 414, 440, 64 S.Ct. 660, 675 (1944); Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir.1995)*}

4.      Issuance of a preliminary injunction would not adversely affect public interest and public policy because Plaintiff would have been the beneficiary under the insurance policies if the contract had not been breached by Defendant. The cash proceeds constitute a windfall and Plaintiff must be protected from defendant dispoing of all of its assets.  {*Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1304 (11th Cir. 2001); Hoechst Diafol, 174 F.3d at 417)*}

5.      Plaintiff is willing to post a bond in the amount the court deems appropriate.

3