**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOHN B. BERRY, TRUSTEE AND** | § | |
| **GEORGE H. REID INVESTMENTS, INC.** | § | |
| **Plaintiffs** | § | **CONSOLIDATED** |
| **V.** | § | **CIVIL ACTION NO. H-05-1101** |
| | § | **JURY** |
| **WPS, INC.** | § | |
| **Defendant** | § | |

**DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**
**INCLUDING REQUEST TO REURGE POINTS RAISED IN ORIGINAL**
**MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, WPS, INC., (referred to herein as "WPS"), and pursuant to the Federal Rules of Civil Procedure, including Rule 56, files this Second Motion for Summary Judgment, including its Request to Re-urge Points Raised in its Original Motion for Summary Judgment and in support thereof, would show unto the Court the following:

I.
INTRODUCTION

Plaintiff, John Berry, brought this case alleging breach or anticipatory breach of a document entitled "Letter of Agreement."   (Paragraph 4, Plaintiff's First Amended Petition; Appendix A; and Plaintiff's First Amended Answers to Interrogatories Nos. 5, 6, and 7; Appendix B).   Thereafter, on May 3, 2006, George H. Reid Investments, Inc. filed suit against WPS, Inc., alleging breach of a document entitled "Consulting Services Agreement."   The case filed by George H. Reid Investments, Inc. was consolidated into the case at bar on September 21, 2006. A copy of Reid's live pleading is entitled Plaintiff's Original Petition, and is in Appendix C.

WPS denies that the document entitled "Letter of Agreement" constitutes a valid and enforceable contract for a number of reasons set forth herein and in its original Motion for

Summary Judgment [Document 79].   Similarly, WPS denies that the document entitled "Consulting Services Agreement" constitutes a valid and enforceable agreement.

On August 1, 2006, WPS filed its Motion for Summary Judgment regarding all claims and causes of action asserted by Plaintiff John Berry.  The motion did not include claims and causes of action asserted by George Reid as the two cases had not yet been consolidated and the Reid case was in its very early stages.  On March 19, 2007, the Court denied WPS' motion for summary judgment. [Document 128].  A copy of said order is attached hereto in Appendix D. In the Order, the Court said that the "Letter of Agreement, however, appears written as a proposed option for an exclusivity right."  The Court further stated that Defendant did not establish its affirmative defenses as a matter of law.

WPS files this Second Motion for Summary Judgment requesting a judgment on all claims and causes of action asserted by Plaintiffs herein.   Defendant denies that the "Letter of Agreement" is a valid or enforceable contract, or even a proposed option for exclusivity. However, even assuming that the "Letter of Agreement" is a proposed option, WPS is still entitled to a summary judgment as there was no valid tender of consideration, no acceptance, and a rejection of the tender.  Further, if  found to be an option, Plaintiff failed to exercise the option or attempted to exercise it in a manner contrary to the strict terms of the option, thereby forfeiting the right to enforce the option or claim damages for Defendant's alleged failure to allow the exercise of the option contrary to the purported terms thereof.

Further, WPS would respectfully show that a number of the affirmative defenses set forth in WPS' original Motion for Summary Judgment were not addressed in the Court's March 19, 2007, Order and said defenses would not be adversely impacted or negated merely upon the finding of an option.  These defenses include but are not limited to the following:

- There was no meeting of the minds or mutual assent among the parties when the document entitled "Letter of Agreement" was signed, which is an essential element to be proven by Plaintiff;
- There is no issue of material fact that would negate the defense of unilateral or mutual mistake.
- There is no fact issue that would negate the defense regarding trust issues and that the alleged "Purchaser" in the document entitled "Letter of Agreement" did not exist.

WPS re-urges the passages in its August 1, 2006 Motion for Summary Judgment on these topics and other topics set forth in its August 1, 2006 Motion for Summary Judgment.

Further, WPS would show that it is entitled to summary judgment on claims asserted by George H. Reid Investments, Inc. as the "Consulting Services Agreement," (which itself is not an enforceable or binding contract) must fail because 1) the "Consulting Services Agreement" depends on the "Letter of Agreement" being an enforceable agreement, which it is not; 2) that Plaintiff, George Reid, did not perform as he was required under the "Consulting Services Agreement;" 3) the terms of the "Consulting Services Agreement" dictate that Plaintiff cannot recover under same; and 4) if the "Letter of Agreement" is found to be an exclusivity "option," its execution does not fulfill Reid's obligation to obtain a source of funding for Defendant.

II.
SUMMARY JUDGMENT PROOF.

In support of this Motion, Defendant relies on evidence contained in the Appendix of this motion, which Defendant incorporates by reference the same as if set forth herein verbatim, including the following evidence:

|   |   |   |
|---|---|---|
| • | Plaintiff John Berry's First Amended Petition for Suit on Written Contract | Appendix A |
| • | Plaintiff's First Amended Objections and Answers to Defendant's First Interrogatories | Appendix B |
| • | Plaintiff George Reid's Original Petition | Appendix C |
| • | March 19, 2007 order denying Motion for Summary Judgment | Appendix  D |
| • | Condensed Copy of Deposition of Seth Williamson | Appendix  E |
| • | Condensed Copy of Deposition of Scott Thomas | Appendix  F |
| • | Condensed Copy of Deposition of George H. Reid | Appendix G |
| • | Copy of Consulting Services Agreement | Appendix H |
| • | Condensed Copy of Deposition of John B. Berry | Appendix  I |
| • | Document Entitled "Letter of Agreement" | Appendix  J |
| • | Copy of "Option Check" | Appendix K |
| • | Copy of December 21, 2004 cover letter from George Reid | Appendix L |
| • | Copy of December 30, 2004, letter from Scott Thomas | Appendix M |
| • | Document entitled "Purchase and Sale Agreement" | Appendix N |

- Affidavit of Scott Thomas (dated November 2, 2005)     Appendix O
- Affidavit of Brian Engle     Appendix P
- Document Entitled "Affidavit of Beneficial
  Ownership of John B. Berry also known as
  TAISC, Inc."     Appendix Q
- Affidavit of Scott Thomas (dated June 14, 2007)     Appendix R

### III.
### TESTIMONY SUPPORTING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WPS constructs natural gas compressors used in oilfields. (Deposition of Seth Williamson, Page 62; Lines 1-5, Appendix E). Before the events giving rise to this lawsuit, WPS built a rental fleet of compressors and leased these compressors to various third parties – usually oil exploration companies. (*See,* Deposition of Scott Thomas, Pages 34 - 35; Appendix F). However, as the number of compressors in the fleet grew, WPS began to seek out means through which to obtain financing for the compressors. *Id.* In 2004, the President of WPS, Seth Williamson, and the Secretary of WPS, Scott Thomas, became acquainted with George Reid through their primary financial consultant, George Wood of CapNet Securities. (Deposition of Seth Williamson, Page 40, Lines 4-5, Appendix E). Reid held himself out as being a financial consultant who could secure financing for WPS. In July of 2004, Reid contends he entered into a Consulting Agreement with WPS. (Deposition of George Reid, Page 139-140, Appendix G). A copy of same is attached as Appendix H. Among Reid's purported obligations under this so called "Consulting Services Agreement" was to "locate potential financing/lending from banking companies for WPS, Inc." (Paragraph 1 of "Consulting Services Agreement," Appendix H). Although Reid was deemed a "consultant," he also worked it out so he could possibly become a principal on Berry's side of the alleged proposed transaction discussed further herein. (Deposition of George Reid, Page 91, Lines 5-11, Appendix G). According to Reid, his role was to bring WPS to the transaction. (Deposition of George Reid, Page 91, Lines 18, Appendix G).

In November, 2004, Plaintiff Reid and Plaintiff Berry first met. (Deposition of George Reid, Page 63-64, Appendix G; Deposition of John Berry Page 121, Appendix I). Reid learned

that Berry had done a few equipment leasing transactions, and Reid contends he tried to put a transaction together with Berry and WPS. They allegedly had several additional meetings regarding the alleged proposed transaction, and, on December 17, 2004, a teleconference was held with Berry, Reid, Williamson, and Thomas.  (Deposition of George Reid, Pages 97-100, Appendix G).  Thereafter, a final version of the "Letter of Agreement" was drafted by John Berry.  (Deposition of John Berry, Page 155, Lines 20-24, Appendix I).  On December 20, 2004, Berry signed the "Letter of Agreement" as John B. Berry, Trustee-Purchaser.  (Deposition of John Berry, Page 82, Line 20; Page 156, Lines 10-11; Appendix I).  In reviewing the "Letter of Agreement", it appears that John Berry, Trustee-Purchaser is proposing to pay $10,580,000 for 24 compressors listed in Exhibit A of the "Letter of Agreement."  However, a further reading of the "Letter of Agreement," particularly Paragraph 5, provides that Plaintiff was not obligated to purchase a single compressor, and in turn, pay anything to WPS. (*See* "Letter of Agreement," Appendix J).[1]  This Court's ruling on Defendant's original Motion for Summary Judgment addressed the Plaintiff's ability to avoid performance as lacking mutuality if the Letter of Agreement was construed to be an "option," which would give the buyer the right, but not the obligation, to purchase any of the units.  Inherent in that determination is that if the Letter of Agreement is not construed to be an option, it would be unenforceable for its lack of mutuality or illusory nature.

The "Letter of Agreement" also contained what is alleged to have been an option provision.  Said provision stated:

> 16. Option Fee.  Purchaser agrees to pay Seller an Option Fee of One Thousand Dollars  ($1,000.00) within three business days of receipt of Seller's acceptance of this Letter of Agreement in consideration of such acceptance.  The sufficiency of the consideration is acknowledged by the Parties.  Execution of this Letter of Agreement and acceptance of the Option Fee by Seller shall grant Purchaser an exclusivity right (the "Exclusivity") under which Seller agrees not to solicit, offer, or hold discussions with any third party regarding the sale of the Seller's Equipment Property herein described.

---

[1]  George Reid testified that Exhibit 7 of his deposition was a true and correct copy of the document entitled "Letter of Agreement"  (see Deposition of George Reid, Page 103, Line 11 – Page 104, Line 7, Appendix G).  Also, see documents attached to Plaintiff's pleadings.

Paragraph 2 of the "Letter of Agreement" stated "Payment Terms.  All cash at closing.  All payments described herein shall be in US Dollars only."

Thereafter, the "Letter of Agreement" was signed by Reid. (Deposition of John Berry, Page 156, Lines 10-20, Appendix I.)  It then was sent to WPS for signature.  (Deposition of John Berry, Page 156, Lines 10-20, Appendix I).  Included with same was a personal check dated 12/20/04 in the amount of $1,000.00, drawn on the Wells Fargo Bank account of Transamerica Investment Services Co., payable to "Williamson Production Services, ("WPS, Inc.")."  A true and correct copy of said check (the "option check") is attached hereto as Appendix K.  The option check was a personal check drawn on an account at Wells Fargo Bank; NOT a bank check, bank money order, certified check or a cashiers check.  On the memo line, the check stated "Option Fee, John B. Berry Trustee Purchaser." TransAmerica Investment Services Co. is a company that was purportedly used by Plaintiff Berry, to engage in  transactions involving aircraft.  (Deposition of John Berry, Page 65; Lines 12-17; Appendix I). A cover letter from Reid, dated December 21, 2004, was sent with the check and the signed copies of the "Letter of Agreement."   A true and correct copy of Reid's cover letter, Thomas' rescission letter and the $1,000.00 option fee check are attached as exhibits to the Affidavit of Scott Thomas dated June 13, 2007, attached as Appendix R.  The second paragraph of the cover letter clearly shows that Plaintiffs were attempting to use this personal check from a non-party as the option fee, by providing as follows:

> However, the enclosed four Letters of Agreement offers need to be signed by you (Seth) and also **an option fee check in the amount of $1,000 check number 6894 is enclosed** to cover the business days until purchaser brings the formal documentation Purchase and Sale Agreements and Earnest Money called for in Paragraph 4 hereof in this offer to purchase and Paragraph 7, hereof. (emphasis supplied).

The package containing the option check, the cover letter and four sets of the "Letter of Agreement" were sent to WPS and received by WPS. A package containing one set of the Letter of Agreement were delivered to Plaintiff Berry on or about December 29, 2004. (See Deposition of John Berry, Page 157, Appendix I; Affidavit of Scott Thomas attached hereto as Appendix L).

On or about December 29 or 30, another teleconference was held involving Messrs. Berry, Reid, and Thomas.  During that conversation, Thomas discussed how the proposed transaction was to move forward and inquired how certain essential terms not contained in the "Letter of Agreement" would be addressed.  Berry refused to discuss anything not in the "Letter of Agreement." (Deposition of Scott Thomas, Pages 30-31, Appendix F; Affidavit of Scott Thomas attached as Appendix L).  It became apparent to Thomas that the parties were not on the same page.  (Deposition of Scott Thomas, Page 16; Lines 15-21, Appendix F).  Because Berry stated that if a term was not in the "Letter of Agreement," it would not be in the Formal Documentation, it appeared to Thomas that the proposed transaction the parties were negotiating could not move forward without further negotiations.  (Deposition of Scott Thomas, Page 30, Lines 8-12, Appendix F).  On December 30, 2004, Thomas forwarded a letter to Berry via fax and overnight mail, rescinding the WPS execution of the Letter of Agreement, identifying some of the disagreements and, while offering to continue to negotiate, stated that the transaction could not go forward unless the omission of essential terms was addressed by Berry.  (Deposition of Scott Thomas, Page 17, Appendix F; Affidavit of Scott Thomas, Appendix L.[2]   Berry acknowledged receiving this letter on or about December 31, 2004, by FedEx and admitted that the original "thousand-dollar check that [Plaintiff] sent [WPS]" was included with it. (Deposition of John Berry, Page 158; Lines 5-15, Appendix I).

IV.

ARGUMENT AND AUTHORITY

A.      If the Document Entitled "Letter of Agreement" Was a Proposed Option for Exclusivity, then Defendant is Entitled to Summary Judgment Because Plaintiff Did Not Perform as Prescribed by the Alleged Option.

As general rule, parties to an option agreement are held to strict compliance with the terms of the option agreement.  *See Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (Tex. 1961).  Similarly, parties to a contract are entitled to an "exact" performance of their agreement. *See generally Kitten v. Vaughn*, 397 S.W.2d 530, 533 (Tex.Civ.App.—Austin 1965, no writ).

---

[2] The letter sent by Scott Thomas was also attached as an exhibit to Seth Williamson's deposition and recognized as a true and correct copy (see Deposition of Seth Williamson, Page 114, Line 16 – Page 115, Line 1, Appendix E).

Failure to fully perform or to tender full performance normally prevents a party from enforcing the contract. *See Benson v. Harrel*, 324 S.W.2d 620, 623 (Tex.Civ.App.—Fort Worth 1959, writ ref. n.r.e.).

In the context of Paragraph 16 of the "Letter of Agreement," Plaintiff's alleged right to an exclusivity option contract was conditioned both upon Defendant's acceptance of the "Letter of Agreement" as well as upon Defendant's acceptance of Plaintiff's "Option Fee" of $1,000. Paragraph 2 of the "Letter of Agreement" also provided that all payments were to be in cash. However, instead of complying with the terms of Paragraph 2, which Plaintiff drafted, (see John Berry's Deposition, Page 155, Line 20-24, Appendix I), Plaintiff submitted payment by the personal check of a non-party to the transaction when it transmitted the Letter of Agreement to Defendant. Thus, Plaintiff's attempted tender of a personal check in contravention of terms of Paragraphs 16 and 2 is not strict compliance with the terms of the option provision of Paragraph 16, thus no option or right to exclusivity was created.

Similarly, if the "Letter of Agreement" is seen as a "proposed option for an exclusivity right," as stated by the Court, then Paragraphs 16 and 2 of the "Letter of Agreement" can be construed as condition precedents to any exclusivity right of Plaintiff. The obligation to perform a contract, or the very formation of a contract, may be affected by a "condition precedent." *See Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex. 1979); *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). Such conditions precedent **must be fulfilled exactly or there will be no liability on the contractual promises that the conditions qualify**. Typically, a condition is found upon the use of a term such as "on condition that," "if," "provided that," or some similar conditional phrase. *See id.* Specifically, Paragraph 16 provides that "(e)xecution of this Letter of Agreement **and** acceptance of the Option Fee by Seller shall grant Purchaser an exclusivity right. . . ." Additionally, Paragraph 2, as stated previously, provides that all payments are to be in cash. This language clearly conditions any operable exclusivity right upon the Defendant's acceptance of Plaintiff's tender of the Option Fee. Thus, because Defendant refused and failed to accept Plaintiff's Option Fee, due, in part, to Plaintiff's failure to comply with the

terms of Paragraph 2, all conditions precedent either for the formation of any option contract or Defendant's performance obligations under the alleged option contract were not fulfilled.  Thus, Defendant had no obligation to grant Plaintiff an exclusivity right, nor to honor any attempt by Plaintiff to exercise same.

Furthermore, Berry did not comply with the option in that, despite the fact that Berry was advised that agreement on certain essential terms was required for the alleged proposed transaction to go forward Berry, on or about January 20, 2005, sent what he considered the "Formal Documentation" (Appendix N) to WPS.[3]  These documents did not incorporate the matters set forth in Thomas' letter of December 30, and additionally, added a number of other provisions not addressed in the "Letter of Agreement," including, but not limited to, the following:

1.  The addition of Seth Williamson (WPS's 100% owner) as an Indemnitor in the Purchase and Sale Agreement and as a Guarantor of the Leaseback Agreement. (Purchase and Sale Agreement, Attachment B-Leaseback Agreement, Appendix N). (See the term "Indemnitor" used in Article IV of the Purchase and Sale Agreement and Seth Williamson shown as executing as the Indemnitor on the signature page; see Leaseback Agreement under paragraph entitled "Documentation", second page bottom- requiring all stockholders owning 20% or more to **"issue a full guaranty of all lease and contractual obligations."**)

2.  **Liquidated damages of $10,580,000** if WPS did not comply, and providing that failure to sign the "Formal Documentation" or not negotiating the terms of the Formal Documentation would constitute a breach. ("Purchase and Sale Agreement", Sections 1.14(ii) and 7.17, Pages 4 & 17, Appendix N)

3.  **Negative and other covenants** in Sections 4.7 and 4.8 of the "Purchase and Sale Agreement" **requiring Berry's consent for WPS to sell stock, declare dividends, redeem stock, merge or consolidate corporations, sell any intangible asset out of the normal course of business, increase salaries or compensation for officers or directors, change accounting practices** and, in Section 4.19, prohibiting WPS or its officers and directors from owning an interest in any competitor, customer, or supplier, supplying more than 1% of WPS's purchases. (Purchase and Sale Agreement, Sections 4.8, 4.9 and 4.19, Pages 9-11, Appendix N)

4.  Providing that WPS will be in breach of the PSA if WPS does not execute and return the Formal Documents submitted by Berry within 5 days. (Purchase and Sale Agreement, Section 7.17, Appendix N)

---

[3] The "Formal Documentation" was recognized as being true and correct copies in John Berry's deposition (see Deposition of John Barry, Page 182, Line 24 – Page 183, Line 12, Appendix I).

5.  **Requiring that rental payments be made in advance of each month.** (Leaseback Agreement, page 1 & 2-JBT 00108-00109)

6.  Requiring that the Equipment have a **"minimum current fair market value" at closing equal to or exceeding the purchase price of $10,580,000**. (Purchase and Sale Agreement, Attachment B-Leaseback Agreement, Equipment Property Section, Appendix N)

7.  Requiring that WPS post **a $250,000 non-interest bearing "security deposit"** within 5 days of executing the Leaseback Agreement and for the 84 month term of the leaseback. (Purchase and Sale Agreement, Attachment B-Leaseback Agreement, Security Deposit Section, Appendix N).

8.  Requiring the payment by WPS of **a nonrefundable $10,000 "application fee"** upon the execution of the Leaseback Agreement (Purchase and Sale Agreement, Attachment B-Leaseback Agreement, Attachment A-1, Appendix N)

9.  Declaring that Berry would not issue a purchase order **for any item of Equipment** unless WPS was in compliance with all provisions of Attachment A-1, which includes a provision that WPS shall grant Berry the "exclusive rights **to consummate this transaction for a period of not less than five (5) years.**" (Purchase and Sale Agreement, Attachment B-Leaseback Agreement, Documentation Section and Attachment A-1, Appendix N)

10.  Provides that the "Type of Lease" is a net lease transaction whereby Lessee will be solely responsible for all maintenance, insurance, property taxes and any other operating costs." (Purchase and Sale Agreement, Attachment B-Leaseback Agreement, Attachment A-1, Appendix N). Scott Thomas' affidavit reveals that removing the burden of maintenance of the equipment and the replacement of component parts from Berry would require a significant expenditure by WPS, exceeding $480,000 per year in excess of maintenance payments received by customers under rental agreements.  (Appendix O).

Under the theory that the "Letter of Agreement" granted Plaintiff an option, the submission of the "Formal Documentation" could be construed as an attempt to exercise the option. Clearly, including the additional provisions above in the Formal Documentation, when not mentioned in the "Letter of Agreement" was a failure to exercise the option in strict compliance with the terms of the alleged option, and as such the option must similarly fail. Alternatively, the Formal Documentation could be construed to be a counteroffer to the rescinded "Letter of Agreement" or option, which WPS had a right to reject.

B.    If the "Letter of Agreement" Was an Option, It Is Not Supported by Consideration and Fails.

In this Court's March 19, 2007, the Court focused on Paragraph 16 of the "Letter of Agreement," which states as follows:

> 16.  Option Fee.  Purchaser agrees to pay Seller an Option Fee of One Thousand Dollars  ($1,000.00) within three business days of receipt of Seller's acceptance of this Letter of Agreement in consideration of such acceptance.  The sufficiency of the consideration is acknowledged by the Parties.  Execution of this Letter of Agreement and acceptance of the Option Fee by Seller shall grant Purchaser an exclusivity right (the "Exclusivity") under which Seller agrees not to solicit, offer, or hold discussions with any third party regarding the sale of the Seller's Equipment Property herein described.

The summary judgment evidence shows that the alleged "option fee" that was allegedly "tendered" was a $1,000.00 personal check from a stranger to the negotiations.

Should a valid and unenforceable option contract be found within the "Letter of Agreement," it was not supported by the consideration required by Paragraph 16 due to Plaintiff's tender of the personal check, apparently of a non-party to the transaction.  Paragraph 2 of the "Letter of Agreement," entitled "Payment Terms," provides that payment will be in "(a)ll cash at closing.  All payments described herein shall be in U.S. dollars only."  Additionally, all provisions of the "Letter of Agreement" provide that cash is the medium of payment with the exception of Paragraph 7, which allows the deposit of the earnest money to be either in cash or a letter of credit.  There is no provision of the "Letter of Agreement" that expresses any intention of the parties that either checks generally or the check drawn on the account of a third party to the transaction were intended as a valid medium of payment for the transaction.

A tender is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum on a specified debt or obligation.  *See Fillon v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)(quoting *Baucum v. Great Amer. Ins. Co. of New York*, 370 S.W.2d 863 (Tex. 1963).  Tender consists of the actual production of funds and offer to pay the debt involved.  "The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession."  *Fillon*, 709 S.W.2d at 246

(quoting *Baucum*, 370 S.W.2d at 866).  In the absence of an agreement to the contrary, tender of payment, when money is called for, as in the "Letter of Agreement," is not valid when made by check.    *Fillon*, 709 S.W.2d at 246-47; *Littlejohn v. Johnson*, 332 S.W.2d 439, 441 (Tex.Civ.App.—Waco 1960, no writ); *see also Niagara Fire Ins. Co. v. Mitchell*, 164 S.W. 919 (Tex.Civ.App.—San Antonio 1914, writ dism'd); *Hoxie Implement Co., Inc. v. Baker*, 65 S.W.3d 140, 150 n.6 (Tex.App.—Amarillo 2001, pet, denied).

Similarly, Texas Business and Commerce Code §3.310 governs the effect of an instrument offered for payment and dictates payment by cash in the present matter.  It is undisputed that Plaintiff in the case at bar tendered payment through a personal check drawn upon the account of a non-party to the transaction.  Section 3.310(b) allows for an uncertified check to serve as conditional payment "unless otherwise agreed."  TEX. BUS. & COM. CODE § 3.310(b)(Vernon 2007).  This provision also governs payment via a note or check of a third party.  *See* TEX. BUS. & COM. CODE § 3.310(b)(3).  Similarly, Texas courts hold that "(i)n the absence of an agreement, a check, bill of exchange, or draft does not of itself discharge or constitute payment of a debt nor does the presentation of such an instrument constitute legal tender." *Fillon*, 709 S.W.2d at 247.[4]  Thus, even if a valid options contract could be read into the "Letter of Agreement," it was without valid consideration because Plaintiff failed to tender payment of the consideration in the agreed medium as stated in the "Letter of Agreement," which Plaintiff drafted.

C.    <u>If the "Letter of Agreement" Was an Option, It Was Revoked or Rescinded by Thomas' December 30, 2004 Letter.</u>

The foregoing section of this motion shows that Plaintiff failed to tender valid consideration required under Paragraph 16 of the "Letter of Agreement."  The summary judgment evidence also shows that on December 30, 2004, Thomas of WPS sent a letter to Berry identifying some of the disagreements and, while offering to continue to negotiate, stated that the

---

[4] While the Court appears interested in whether the tendered check was a certified or personal check, the result is the same.  Section 3.310(a) provides that a certified check, cashier's check, and teller's check discharges an obligation to the same extent as an amount of money equal to the amount of the instrument, "unless otherwise agreed."  As clearly stated in Paragraph 2 of the Letter of Agreement, all payments were to be in cash, thus neither Section 3.310(a) nor 3.310(b) excuses Plaintiff's failure to strictly comply with the Letter of Agreement, which they drafted.

transaction could not go forward unless the omission of essential terms was addressed by Berry. (Deposition of Scott Thomas, Page 17, Appendix F). A copy of the letter sent by Thomas is set forth in Appendix M.[5]  Berry recalled receiving this letter on or about December 31, 2004 by FedEx and admitted that the "thousand-dollar check that [Plaintiff] sent [WPS]" was included with it. (Deposition of John Berry, Page 158; Lines 5-15, Appendix I).

Because Plaintiff failed to tender valid consideration as required under the Paragraph 16 of the "Letter of Agreement," the letter operated as an effective revocation. It is a long held principle of Texas law that option contracts are not excepted from the general rule that contracts must be supported by consideration. *See Granger Real Estate Exch. v. Anderson*, 145 S.W. 262, 264 (Tex.Civ.App.—Austin 1912, no writ); *Echols v. Bloom*, 485 S.W.2d 798, 800 (Tex.Civ.App—Houston [14th Dist.] 1972, writ ref'd n.r.e.). Thus, the option, "if not supported by a valuable consideration, is *nudum pactum*, and will not prevent the owner from withdrawing the option whenever he sees fit." *Granger,* 145 S.W. at 264 (citing *Williams v. Graves*, 26 S.W. 334 (Tex.Civ.App. 1894, no writ); *Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 853-854 (Tex.App.—Dallas 1983, writ ref'd n.r.e.).

In *Echols*, the parties executed a contract of sale with the following provision:

> Sellers are to execute this contract as an offer to Buyer and Buyer is to have the right to accept or reject such offer for fourteen (14) days from the date hereof and Seller agrees that such offer shall be irrevocable and shall be binding upon Sellers. If Buyer notifies Sellers within said fourteen (14) day period of Buyer's intention to accept such offer this contract shall be placed with the American Title Company with instructions to proceed forthwith.

*See Echols*, 485 S.W.2d at 800. In the *Echols* case, the contract provided for the deposition of $500 in earnest money. *See id.* The record demonstrated that plaintiff failed to deposit the earnest money until July 25, 1969, the last day of the option period, *see id.*, but the defendant revoked the offer to sell their home prior to the deposit of the earnest money by plaintiff. *See id.* at 801. The court affirmed the summary judgment and concluded that "(i)nasmuch as no

---

[5] The letter sent by Scott Thomas was attached as an exhibit to Seth Williamson's deposition and recognized as a true and correct copy (see Deposition of Seth Williamson, Page 114, Line 16 – Page 115, Line 1, Appendix E).

enforceable option agreement was consummated, appellees were empowered to revoke their offer of sale prior to appellant's acceptance." *Id.* at 802.  Notwithstanding the use of the terms "irrevocable" and "binding," the lack of consideration (the deposit) made the option revocable.

A similar result was reached in *Hott*, cited by the Court in its Memorandum and Order. In that case, the parties attempted to negotiate a contract for the sale of land.  The contract was prepared by plaintiff and accepted by defendant, subject to certain counter-proposals.  Upon its return, plaintiff approved the counter proposals, but made additional changes before signing, which defendants claimed were material and not accepted.  The court found two provisions essential to its holding:

> One provision is that which limits (Plaintiff's) liability under the contract to the forfeiture of his earnest money.  The other makes the contract contingent upon the purchaser's ability to secure satisfactory financing.  The document did not require an immediate payment of earnest money, but it did provide that (Plaintiff) was to make a series of payments to the seller to extend the deadline of the financing contingency.  The first such payment, in the amount of $5,000, was to be paid sixteen days from the effective date of the contract.

*Hott*, 663 S.W.2d at 853.  The record in *Hott* also demonstrated that within eleven days of the effective date of the contract, the defendants rejected the contract by a letter to plaintiff stating "unacceptable as modified." *Id.*  After the rejection but before the sixteen days lapsed, plaintiff tendered $5,000 to defendant, which was promptly refused. *See id.*  The court noted that "(t)here was no money paid nor tendered by (plaintiff) to (defendant) before this $5,000 tender." *Id.*

The court first determined that while the consideration, such as the promise to buy and sell, are sufficient to create a binding contract, they are not sufficient consideration when the buyer's liability is limited to forfeiture of earnest money. *See id.*  "The effect of limiting liability results in an option to purchase, revocable at the will of the seller, unless and until an independent consideration is paid." *Id.* (citing *Echols*, 485 S.W.2d at 800).  The court went on to state that "(b)oth the option and the underlying contract must be supported by consideration.  If no consideration has passed, the option is revocable during its term." *Id.* at 853-54 (citing

*Echols*, 485 S.W.2d at 800; *Plantation Key Developers, Inc. v. Colonial Mortgage Co.*, 589 F.2d 164, 168 (5th Cir. 1979); J. CALAMARI & J. PERILLO, CONTRACTS § 2-27 (2d ed. 1977)).

The court then found that "(u)nder the facts here, we conclude that the option was never made irrevocable by the payment of consideration and (defendant) revoked the option before it was accepted according to its terms.  It cannot be said that this was a void contract, but merely that it never became a binding contract. . . .  And the law gives (defendant) the power to revoke a gratuitous option before it is accepted."  *Id.* at 854.  Thus, the court concluded that summary judgment was appropriate for defendant upon plaintiff's claim for specific performance.  A similar results was reached in the more recent case of *Culbertson v. Brodsky*, 788 S.W.2d 156, 157-158 (Tex.App.—Fort Worth 1990, writ denied)("Because there was no consideration for the purchase option, the contract cannot be enforced by specific performance and was revocable during its term by either party.")

These cases remain the law of Texas regarding a seller's ability to revoke or rescind an option.  Because Berry failed to tender payment pursuant to the express terms of the "Letter of Agreement," all that was created by the "Letter of Agreement," if anything, was a gratuitous option, such as the one in *Hott*.  Similar to *Hott*, *Echols*, and *Culbertson*, Defendant validly rescinded any option through the December 30, 2004 letter and rejection of the personal check of a third party to the transaction, which did not qualify as valid consideration under the "Letter of Agreement" drafted by Plaintiff.  Thus, as in the cases cited above, this Court must grant Defendant's Motion for Summary Judgment on Plaintiff's claim for specific performance.

    D.    <u>WPS Re-Urges Defenses Asserted in its August 1, 2006, Motion for Summary Judgment as Same are Applicable Regardless of Whether an Alleged "Option" Is Found to Exist.</u>
        1.    <u>There Was No Meeting of the Minds or Mutual Assent Among the Parties When the Document Entitled Letter of Agreement Was Signed.</u>

WPS argued in its August 1, 2006 Motion for Summary Judgment that it was entitled to summary judgment because there was no meeting of the minds or mutual assent. Before an

enforceable contract can be formed, the parties must agree to the contract's material terms. *Anderton v. Schindler*, 154 S.W.3d 928 (Tex.App.–Dallas 2005).  All of the parties must assent to the same thing, in the same sense, at the same time, and their assent must be comprehended in the proposition as a whole.  *Smulcer v. Rogers*, 256 S.W.2d 120 (Tex.Civ.App.–Fort Worth 1953, writ refused n.r.e.).  Assent of parties to a contract must comprehend the whole proposition and the agreement must comprise all terms that they intend to introduce into it; there is no contract if material terms are left for future adjustment or are not agreed upon.  *Solis v. Evans,* 951 S.W.2d 44 (Tex.App.–Corpus Christi 1997).

In WPS August 1, 2007, Motion for Summary Judgment, it was clear that there was no meeting of the minds.  The deposition testimony indicates that Williamson, Berry, and Reid all had different understandings as to what the effect was, if any, of signing the "Letter of Agreement."  Additionally, it cannot be disputed that the ability of the purchaser/lessee to fund the alleged proposed transaction was an essential matter. (*See* Deposition of Seth Williamson, Page 64, Lines 9-14; Pages 84-85, Appendix E; and Affidavit of Brian Engle, Appendix P).  WPS thought John Berry, Trustee, was the representative of a large trust that was going to fund this proposed transaction from its own substantial funds.  (See Engle Affidavit, Appendix P). In contrast, John Berry used the term "Trustee" in the "Letter of Agreement" because he didn't know how he was going to "structure the deal" or what the end deal would be until after due diligence was done.  He speculated that the purchaser would be a yet-to-be-formed single asset entity.  (Deposition of John Berry, Pages 83-86, Appendix I).  John Berry and George Reid have denied that any trust was involved, (Deposition of George Reid, Page 188, Lines 15-17, Appendix G) and Berry acknowledged that he was **not** the trustee of any trust.  (Deposition of John Berry Page 84, Lines 12-13, Appendix I).

Furthermore, the lack of assent is evidenced by the fact that there were a multitude of material terms not addressed in the "Letter of Agreement" that were to be left for future negotiations.  *Solis v. Evans,* 951 S.W.2d 44 (Tex.App.–Corpus Christi 1997).  Many of these terms are set forth in Brian Engle's affidavit, Appendix P and on Page 5, *supra,* but include

provisions to address non-routine maintenance of the equipment and provisions making the proposed transaction an off balance sheet transaction.    Also, the alleged "Formal Documentation" (Appendix N) that was sent after the "Letter of Agreement" was signed contained a provision requiring Williamson, the President of WPS, to personally guarantee certain alleged undertakings even though he was not a party to the "Letter of Agreement." (Document entitled "Purchase and Sale Agreement"; Appendix N; Deposition of George Reid, Page 280, Lines 7-11, Appendix G).  Further, as set forth in Paragraph IV(A) above, Berry added many substantial material terms to the "Formal Documentation" that were not contained in the "Letter of Agreement" nor ever discussed.   The inclusion of such material, non-agreed or discussed evidences that there was "no meeting of the minds."   Additionally, the "Formal Documentation" constituted an unacceptable counteroffer and/or was an attempt to exercise an option that was not in strict compliance with the terms of the option.   Based on the foregoing, and the evidence and authority set forth in WPS August 1, 2006, Motion for Summary Judgment, it is clear that there was no "meeting of the minds" between the parties and WPS re-urges its Motion for Summary Judgment on same.

> 2. Defendant is Entitled to Summary Judgment under the Defense of Mistake.

A unilateral mistake is sufficient to set aside a contract if the mistake is induced by the acts of another party.  *Interfirst Bank of Abilene, N.A. v. Lull Manufacturing*, 778 F2d 228, 232 (5th Cir. 1985).  Additionally, a unilateral mistake is sufficient to set aside a contract where the following elements are met:  1) the mistake is of so great a consequence to make the enforcement of the contract unconscionable 2) the mistake relates to a material element of the contract; and 3) the mistake is made regardless of the exercise of ordinary care.  *Id.*

In the instant case, the Affidavit of Scott Thomas, set forth in Appendix O, proves that the alleged transaction could not go forward in the manner alleged by the Plaintiff.  Thomas stated he analyzed the effect on WPS if it consummated a proposed transaction under the "Letter of Agreement" as now interpreted by Plaintiffs.  It would have resulted in negative cash flow as

the sale price of $10,580,000.00 less the commission purportedly due to Reid of $1,650,000.00, less the outstanding debt on the units of $9,580,000.00, would have netted proceeds to WPS of negative $650,000.  Further, it would have resulted in negative cash flow to WPS of at least $480,000 annually.   (Affidavit of Scott Thomas, Appendix O). Williamson added that his company would have failed completely if the deal as now interpreted by Berry would have closed.  (Deposition of Seth Williamson, Pages 101-102, Appendix E).  Certainly this constitutes a great consequence to WPS that would make the enforcement of this "Letter of Agreement" unconscionable.

Williamson was under the reasonable belief that the terms in the "Letter of Agreement" were not the final terms, but instead, the final terms would be in the Formal Documentation, as stated in Paragraph 4 of the "Letter of Agreement." (Deposition of Seth Williamson, Pages 102-103, Appendix E).  Following the failed deal with the trust managed by Merrill Lynch, Plaintiffs misled WPS regarding the creation of a new $2.8 billion trust for which Reid was now acting as financial advisor.  (Affidavit of Brian Engle, Pages 2-3, Appendix P).  Then by use of the term "trustee" in the "Letter of Agreement," which also appears to allow for further negotiation on material terms, Plaintiffs clearly induced the Defendant's mistake.   Because Defendant has proven its defense of mistake, and there is no genuine issue of material fact with respect to this issue, Defendant is entitled to summary judgment.  *Buttry v. General Signal Corp.,* 68 F3d 1488, 1492 (2d Cir. 1995).

3.    Defendant is Entitled to a Summary Judgment Because the Alleged "Purchaser" In the Document Entitled Letter of Agreement Did Not Exist.

Berry signed the "Letter of Agreement" in the purported "representative" capacity of "trustee."  The mere fact that a party is designated "as trustee" does not in itself create a trust. *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264 (Tex. App. Houston [14[th] Dist] 1995).  Texas Property Code § 114.084 provides that:  "The addition of 'trustee' or 'as trustee' after the

signature of a trustee who is party to a contract is prima facie evidence of an intent to exclude the trustee from personal liability."

When responding to Defendant's request for production for any documents that formed the basis for the Plaintiff's declared representative capacity of "trustee," Plaintiff produced a document entitled "Affidavit of Beneficial Ownership of John B. Berry also known as TAISC, Inc." (Appendix Q) in which John B. Berry as trustee "acknowledges record title to the ownership of the assets described on the attached Letter of Agreement…." This document was undated, but the notarial acknowledgement attached to it shows it was executed on January 19, 2005.  Berry testified that this document was developed as a result of a meeting in his attorney's office, with Reid present, a few days prior to its execution.  That was the first time Berry and Reid had discussed the structure of the deal or the percentages of ownership.  (Deposition of John Berry, Page190, Line 11 – Page 192, Line 15, Appendix I).

This document does not create a trust.  At most it constitutes a declaration of who Berry contends would have received certain items had the proposed transaction closed, as it is alleged, it purportedly allocates an ownership interest in the "assets" and **not** in the "Letter of Agreement."   Because this agreement was not even discussed until long after the "Letter of Agreement" was signed by John Berry, as Trustee, and, Berry acknowledged that he signed "as trustee" because he didn't know who was going to be involved or what the "structure" would be, there is no factual dispute that John B. Berry executed the "Letter of Agreement" as "trustee" of a non-existent trust with the intent to later substitute a party unknown and/or unformed and non-existent at the date of the "Letter of Agreement."   From the Defendant's perspective, the use of the word "trustee" was consistent with, and confirmed that, Defendant was dealing with a substantial trust that had the wherewithal to quickly fund this proposed $10.5 Million transaction.  (See Affidavit of Bryan Engle, Pages 2-3, Appendix P).  Whether the term "trustee" was used to intentionally deceive Defendant or was used to allow the Plaintiffs to use a fictitious "person" as the buyer so that Plaintiffs could later substitute the buyer with an entity to be formed, does not alter, negate or diminish Defendant's mistake of fact defense or the Plaintiffs'

inducement of all or some of the mistakes of fact.  Nowhere do the Plaintiffs or the evidence contradict Defendant's documented lack of knowledge that Defendant believed it was dealing with a well funded trust or that Defendant knew that John Berry did not represent a trust.

The Texas Trust Code provides that "a trust cannot be created unless there is trust property."  TEXAS PROPERTY CODE §112.005 (Vernon 2007).  "A trust is created only if the settlor manifests an intention to create a trust."  Texas Property Code §112.02 (Vernon 2007).  Accordingly, on the date that Berry purportedly signed the "Letter of Agreement," on December 20, 2004, as trustee, there was no trust in existence, no settlor, no trust property, and no beneficiaries.  Accordingly, Berry executed this "Letter of Agreement" on behalf of, or as representative of, a non-existent party.

Texas has a statute dealing with the use of Assumed Business or Professional Names.  TEX. BUS. & COM. CODE §36.01, *et seq.* That statute provides that any action filed by a party under an assumed name will be abated by the Court until the name is registered and the principals disclosed.  Here, if "John Berry, Trustee" is an assumed name, it is undisputed from Berry's deposition testimony that there were and are no principals in existence to disclose.  Therefore, this action would be "abated" forever.

V.

MOTION FOR SUMMARY JUDGMENT ON
CLAIMS ASSERTED BY GEORGE REID INVESTMETNS, INC.

A.      WPS Is Entitled to a Summary Judgment Because The Document Entitled "Letter of Agreement" is Not an Enforceable Contract.

Plaintiff George Reid Investments, Inc. (sometimes "Reid") contends it is entitled to a commission because it contends the parties signed the "Letter of Agreement."  Plaintiff contends that said commission is referenced in a document entitled "Consulting Services Agreement" and is also referenced in Paragraph 18 of the "Letter of Agreement."  Among the allegations made by George H. Reid Investments, Inc. in this case include but are not limited to the following:[6]

---

[6]  Defendant has denied these allegations, and is merely quoting them to show that the allegations in the *Berry Case* overlap with the allegations in the *Reid Case*.

5.      ….      WPS, Inc retained the services of Plaintiff for the specific purposes of assisting it to locate potential financing/lending for WPS, Inc. on any acquisition, asset sale, exchange, funding transaction, merger or disposition of WPS, Inc.'s assets rights or any portion thereof.
* * *

7.      George H. Reid Investments, Inc. …. presented **John B. Berry, Trustee** as a source of funds to WPS, Inc. pursuant to the Consulting Services Agreement. (emphasis supplied)

8.      On December 28, 2004, Defendant, WPS, Inc. by and through it [sic] authorized officers, President Seth Williamson and Secretary Scott Thomas and **John Berry**, Trustee and Plaintiff, **George H. Reid Investments, Inc**. agreed, accepted and executed the **Letter of Agreement**, wherein **John Berry, Trustee** agreed to purchase and WPS, Inc. agreed to sell and leaseback the Equipment Property  (i.e. oil and gas compressor equipment listed and attached to Ex. A.) (emphasis supplied)

9.      WPS, Inc. accepted **John B. Berry, Trustee** as the source for its funding requirements by accepting the terms of ***the Letter Agreement*** outlining the material terms of the sale and leaseback transaction.  (emphasis supplied).

10.     The terms of the **Letter of Agreement**, as agreed and accepted by WPS, Inc. show that Plaintiff's [sic] has [sic] performed its obligations to WPS, Inc. (emphasis added).

Plaintiff George Reid Investments, Inc.'s pleading also contains extensive quotes from the "Letter of Agreement."  (*See* Paragraph 11 of Plaintiff, George Reid's Original Petition attached hereto as Appendix C.)   Based on the way Reid's case is plead, it is clear that any recovery sought by Plaintiff Reid is contingent on whether the "Letter of Agreement" is an enforceable agreement.  The foregoing sections of this motion prove that the "Letter of Agreement" is not enforceable.  As such, Plaintiff, Reid's claims must similarly fail.

>  B.      <u>WPS Is Entitled to a Summary Judgment Because George Reid Did not Perform Under the Consulting Services Agreement.</u>

Plaintiff George Reid Investments, Inc. is seeking recovery under the "Consulting Services Agreement," a copy of which is attached as Appendix H.  The "Consulting Services Agreement" states that, among other things, the following is required by Reid:

WPS, Inc. and Consultant desire to set forth in writing the terms and conditions of their agreement and understanding concerning a twenty-four month consulting

agreement; in consideration of the promises, mutual covenants, agreements and considerations herein contained, the parties hereto agree as follows 1) the Consultant hereof will insert _____ the name of the lending institution being presented to WPS, Inc. by Consultant as considered financer/lender, for a loan, which is being contemplated by WPS, Inc. hereof.

Subsequently, Reid inserted "John B. Berry, Trustee – Purchaser" into the blank in the paragraph above.  (Deposition of George Reid, Page 145, attached as Appendix G).  Additionally, under the "Consulting Services Agreement" it was stated that George H. Reid Investments, Inc. was also "to find and locate potential financing/lending from Banking Companies for WPS, Inc."

The summary judgment evidence before this Court shows that Reid never located a "Banking Company" for WPS, but instead contends he located "John Berry, Trustee." The summary judgment evidence before this Court shows that Berry stated that he signed the "Letter of Agreement" in the capacity of a trustee because he "hadn't decided into what structure to close the transaction."  (Deposition of John Berry, Page 84, Lines 17-20, Appendix I).  On the date the "Letter of Agreement" was signed, John Berry, Trustee, was not a "source for funding…" WPS's "funding requirements," had no pre-arranged sources from which to fund the alleged proposed transaction, and he did not know how it would be funded.  (Deposition of John Berry, Page 92, Lines 3-10, Appendix I).  Neither Berry nor his companies had the $10,850,000 to fund the transaction.  (Deposition of John Berry, Page 83, Lines 20-24, Appendix I.)  "John Berry, Trustee" didn't have any accounts. (Deposition of John Berry, Page 83; Lines 12-13, Appendix I).

A party to an indivisible contract cannot enforce it or recover damages for its breach unless he shows that he has performed the obligations imposed on him, or that he offered to perform them and was able to do so.  *Carr v. Norstok Building Systems, Inc.,*  767 S.W.2d 936 (Tex. App. – Beaumont 1989, *no writ*); *ACME Pest Control v. Youngman,* 216 S.W.2d 259 (Tex. App. – Waco 1948, *no writ*); Based on the summary judgment evidence, it is clear that Reid never located financing or lending from "Banking Companies" for WPS, Inc."  As such, WPS is entitled to a summary judgment on Plaintiff George Reid's claims.

C.   <u>WPS Is Entitled to a Summary Judgment Because Plaintiff, George Reid, No Transaction Ever Funded.</u>

The "Consulting Services Agreement" on which Plaintiff sues states that compensation for George Reid Investments, Inc. shall be as follows:

> WPS, Inc. will pay a "Success Fee" to Consultant of not less than $1,675.000.00 (One million Six Hundred seventy Five Thousand dollars) cash <u>Or</u> five percent (5%) of the total funded and committed financing to WPS, Inc. as referred herein as Customer and the name being inserted by Consultant herein above as the lender and financer, then the "Success Fee" shall be payable in cash by WPS, Inc. at closing of this Loan Transaction to Consultant.

In the instant case it is undisputed that no transaction ever closed between WPS, Inc. and John Berry, Trustee.  (Deposition of John Berry, Page 170, Appendix I).  Therefore, five percent of zero is zero. Assuming that the "Consulting Services Agreement" is enforceable, which is denied, then Plaintiff George Reid is not entitled to a "success fee" and has no damages.  As such, WPS is entitled to a judgment as a matter of law and a summary judgment.

V.<br><u>CONCLUSION</u>

Based on the foregoing, it is clear that even in evaluating Plaintiffs' allegations in a light most favorable to Plaintiffs, there is no issue as to material fact on a number of issues which Plaintiffs must prove to prevail.   Further, on several of Defendant's affirmative defenses, Defendant has proven there is no genuine issue of material fact.  Defendant is therefore entitled to a judgment as a matter of law.  The grounds include the fact that if the "Letter of Agreement" constitutes an "option contract," Berry failed to comply with the option.  Further, Defendant is entitled to summary judgment on the other claims it has asserted. WPS is also entitled to summary judgment against Reid in that 1) his claims rely on the enforceability of the document entitled "Letter of Agreement; 2) if the "Consulting Services Agreement" is a valid and enforceable contract, he did not comply with it; and 3) the terms of the "Consulting Services Agreement" provide that Reid is not entitled to payment if a transaction is not closed.

WHEREFORE, PREMISES CONSIDERED, Defendant, WPS, INC. prays that its motion for summary judgment is granted and that judgment be entered in favor of Defendant WPS, Inc. for all claims asserted herein, including those asserted by Plaintiff, John Berry, Trustee and those asserted by Plaintiff, George Reid Investments Inc.  Defendant, WPS, INC. also prays for such other further relief, general and special, at law and at equity to which it may show itself justly entitled.

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
Post Office Box 4915
Beaumont, Texas 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Telecopier

**James W. Henges**
State Bar No. 00790860
Southern Dist. No. 433426
**ATTORNEY FOR DEFENDANT, WPS, INC.**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the 14th day of June, 2007.

Mr. Thomas G. Bousquet                    **VIA CERTIFIED MAIL, RRR**
BOUSQUET & JACKSON, P.C.
Buckley Building
9225 Katy Freeway, Suite 103
Houston, Texas  77024

**James W. Henges**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7(d), Defendant is not required to submit a certificate of conference on a motion for summary judgment.

**James W. Henges**